# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SPANSION INC., *et al.*,[1] | Case No.: 09-10690 (KJC) |
| Debtors. | Jointly Administered |

## DECLARATION OF JOHN P. BRINCKO IN SUPPORT OF DEBTORS' OBJECTION TO THE MOTION OF PHILIP MATHERS FOR THE APPOINTMENT OF AN EQUITY SECURITY HOLDERS COMMITTEE

I, John P. Brincko, state the following under penalty of perjury:

1. I am the founder and president of Brincko Associates, Inc. ("**Brincko Associates**"), an international management consulting firm with its principal office located at 7000 Indiana Avenue Suite 108, Riverside, California 92506. I have more than 30 years of experience in rendering financing, management and operational advisory services to financially distressed companies. I have successfully served as chief executive officer or chief restructuring officer for companies similar to the above-captioned debtors and debtors-in-possession (the "**Debtors**").[2]

2. I have been employed as the Chief Restructuring Consultant to the Debtors in these proceedings. My duties in this role include (i) assisting in the management of the Debtors' banking relationships and dealings with secured and unsecured creditors; (ii) assisting in efforts

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Spansion Inc., a Delaware corporation (8239); Spansion Technology LLC, a Delaware limited liability company (3982); Spansion LLC, a Delaware limited liability company (0482); Cerium Laboratories LLC, a Delaware limited liability company (0482), and Spansion International, Inc., a Delaware corporation (7542). The mailing address for each Debtor is 915 DeGuigne Dr., Sunnyvale, CA 94085.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Objection.

LA\1999815.3

to evaluate and, as appropriate, effectuate one or more strategic transactions involving the Debtors or their assets; (ii) assisting in efforts to develop, and, as appropriate, implement a stand-alone business plan to serve as the basis for a plan of reorganization; and (iv) assisting in coordination of all activities necessary for the expeditious and efficient resolution of these Chapter 11 Cases. I am, as a result, generally familiar with the day-to-day operations, business and financial affairs of Spansion.

3. I am in all respects competent to make this declaration (the "**Declaration**") in support of the *Debtors' Objection To The Motion Of Philip Mathers For The Appointment Of An Equity Security Holders Committee* (the "**Objection**")[3] filed by the Debtors. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge or information supplied to me by the Debtors' employees or their professional advisors, or were learned from my review of relevant documents. The facts set forth in this Declaration are true and correct to the best of my knowledge and if called as a witness I could and would testify competently thereto.

4. Spansion Inc. is a public holding company. I understand and believe that its stock was traded on the NASDAQ stock exchange until May 7, 2009, when it was delisted.

5. As a public company, Spansion Inc. must file periodic and other reports with the Securities and Exchange Commission ("**SEC**"). Its annual financial statements are audited by a public accounting firm, Ernst & Young LLP, which must adhere to generally accepted accounting practices ("**GAAP**") and the rules and requirements of the SEC. The Debtors also have an internal audit department that reports directly to the Audit Committee of Spansion Inc.'s Board of Directors (the "**Board**") Among other things, this internal audit department conducts

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Objection.

financial, operational and legal compliance audits as well as investigations of alleged misconduct, illegal activity, abuse and fraud. Collectively, the foregoing help to ensure that significant financial, managerial and operating information is accurate and reliable and the actions of the Debtors' employees are in compliance with the Debtors' policies, standards and procedures as well as applicable laws and regulations.

6. The Board continues actively to direct the affairs of the Debtors consistent with its fiduciary duties. It generally meets on a weekly basis to keep itself apprised of developments in the Debtors' businesses and the Chapter 11 Cases and to make necessary decisions that are in the best interest of all economic stakeholders.

7. The Debtors have experienced significant turnover in their senior management since the beginning of this year. In February 2009, Dr. Bertrand F. Cambou resigned as the Debtors' president and chief executive officer and John H. Kispert was appointed as his successor. In April 2009, the Debtors' chief financial officer and chief legal officer resigned, and were replaced on an interim basis. In late June 2009, Randy W. Furr was appointed as the Debtors' permanent chief financial officer. Both Mr. Kispert and Mr. Furr have significant experience in senior managerial positions at public companies, and are well aware of their fiduciary duties.

8. The differences between the amounts reported in the Debtors' Schedules of Assets and Liabilities (the "**Schedules**") and Spansion Inc.'s Annual Report on Form 10-K for the fiscal year ended December 28, 2008, which it filed with the Securities and Exchange Commission (the "**2008 10-K**"), are attributable to different reporting requirements, GAAP requirements, the different reporting dates and the inclusion or non-inclusion of the Debtors' foreign subsidiaries (most notably Spansion Japan Limited).

9. The Schedules do not include amounts for liabilities arising from the rejection of executory contracts and unexpired leases, which are likely to be significant, claims arising out of certain pending patent and other litigations against the Debtors and certain other disputed and unliquidated claims. The Schedules also do not reflect the significant administrative costs that have been and are continuing to be incurred in the Chapter 11 Cases or the significant costs that will be incurred by the Debtors in restructuring their business operations.

10. Prior to the commencement of the Chapter 11 Cases, the holders of Spansion LLC's Floating Rate Notes (the "**FRNs**") formed an ad hoc consortium (the "**Ad Hoc Consortium**").

11. Both the Ad Hoc Consortium and the Official Creditors Committee appointed in the Chapter 11 Cases (the "**Committee**") have been very active participants in the Chapter 11 Cases. The Debtors have had numerous calls and meetings with the Creditors Committee and the Ad Hoc Consortium and their professional advisors, and have responded to significant requests for documents and information. Both the Creditors Committee and the Ad Hoc Consortium have been vigilant in monitoring the Debtors' activities to ensure that the Debtors are making sound business judgments and complying with their obligations as debtors-in-possession under the Bankruptcy Code. Both the Creditors Committee and the Ad Hoc Consortium have formally or informally challenged certain of the Debtors' business decisions, and have done significant due diligence of the Debtors' current and historic financial condition.

12. During the first few months of this year, a growing number of creditors commenced lawsuits or other collection actions against the Debtors, including actions seeking provisional remedies, such as attachment of the Debtors' bank accounts. As a result of these and

other circumstances, the Debtors had no choice but to commence the Chapter 11 Cases in order to preserve the value of their assets and continue their business operations.

13. I am informed and believe that under GAAP (and specifically FASB 142 and 144), a public company must perform an impairment analysis in certain circumstances, but at least annually in connection with its audited financial statements. For a healthy company, this impairment analysis can be relatively simple and straightforward. However, given a number of factors, including, among others, the Debtors' overall financial condition at the end of fiscal year 2008, the disparity between their market capitalization and the book value of their assets, and the impact of the global economic recession on their operations and results, the Debtors' independent auditors required a more thorough and involved impairment analysis. As is typical in these circumstances, the Debtors retained a large accounting firm, KPMG LLP ("**KPMG**"), to perform this analysis. KPMG's valuation experts performed the analysis, and KPMG's findings were ultimately reviewed by the Debtors' internal audit department as well as its independent auditors, Ernst & Young LLP. This impairment analysis was reflected in the Debtors' audited financial statements and referenced in the 2008 10-K. The impact of this impairment analysis was a total long-lived asset impairment charge of approximately $1.6 billion for the fourth fiscal quarter ended December 28, 2008. The impairment charge is reflected in the estimated asset values included in the Schedules.

14. In its March Monthly Operating Report, Spansion Inc. used the cost basis of accounting for its investment in its subsidiaries. In its April Monthly Operating Report, Spansion Inc. changed the accounting for its investment in its subsidiaries from the cost basis to the equity method of accounting in order to comply with GAAP. In accordance with GAAP, when using the equity method of accounting, the carrying value of an investment needs to be

adjusted for the investor's share of the investee's net gains/losses. An investor should discontinue recognizing its share of equity method losses when the losses equal or exceed the investor's interest in the investee and the investor should not recognize its share of the investee's subsequent profits until the amount of unrecognized profit equals the amount of any previously unrecognized losses. Spansion LLC's balance sheet was also adjusted to reflect the equity method of accounting. Spansion LLC also adjusted its operating results and balance sheet as the result of deconsolidation with Spansion Japan. These adjustments explain the changes between the figures included in the April Monthly Operating Report, which was filed on July 10, 2009, and the March Monthly Operating Report.

**[Remainder of Page Intentionally Left Blank]**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 17th day of July 2009 in Los Angeles, California.

John P. Brincko
Spansion Inc.
915 DeGuigne Dr.
Sunnyvale, CA 94085

7