### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | CHAPTER 11 |
| | : | |
| **SPANSION, INC.,** *et al.* [1] | : | |
| Debtors | : | Case No. 09-10690 (KJC) |

| | | |
|---|---|---|
| In re | : | CHAPTER 15 |
| | : | |
| **SPANSION JAPAN LIMITED** | : | |
| Debtor in a Foreign Proceeding | : | Case No. 09-11480 (KJC) |
| | : | |

## MEMORANDUM[2]

On August 25, 2009, the Motion of the *Ad Hoc* Consortium Of Floating Rate Noteholders

For Standing To Enforce The Automatic Stay Against Samsung Electronics Co., Ltd. (D.I. 1031)

(the "FRN Stay Motion") was filed in the Chapter 11 Debtors' bankruptcy case. On the same

date, the Motion of the Foreign Representative For The Entry Of An Order (i) Determining The

Automatic Stay Applies, and (ii) Enforcing The Automatic Stay (D.I. 41)(the "Foreign Debtor's

Stay Motion") was filed in the chapter 15 case of Spansion Japan Limited (the "Foreign

Debtor"). Although the motions were filed in two separate bankruptcy cases, both motions seek

---

[1]The Debtors being jointly administered in the above-captioned chapter 11 case pursuant to an Order dated March 4, 2009, are: Spansion, Inc., a Delaware corporation; Spansion Technology, LLC, a Delaware limited liability company; Spansion LLC, a Delaware limited liability company; Cerium Laboratories, LLC, as Delaware limited liability company; and Spansion International, Inc., a Delaware corporation (the "Chapter 11 Debtors" or "Spansion").

[2]This Memorandum constitutes the findings of fact and conclusions of law, as required by Fed.R.Bankr.P. 7052. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and §157(a). Venue is proper pursuant to 28 U.S.C. § 1409. These contested matters involve core proceedings pursuant to 28 U.S.C. §§ 157(b)(1) and (2)(A), (G), and (P). *See also Halper v. Halper,* 164 F.3d 830, 836 (3d Cir. 1999).

to enforce the automatic stay to prevent further action in a proceeding filed on July 31, 2009, by

Samsung Electronics Co., Ltd. ("Samsung") under 337 of the Tariff Act of 1930, 19 U.S.C.

§1337 (the "Tariff Act"), entitled *In the Matter of Certain Flash Memory and Products*

*Containing Same*, Inv. No. 337-2676 (the "Samsung Action") before the United States

International Trade Commission (the "ITC") against the Chapter 11 Debtors and the Foreign

Debtor.[3]  Samsung filed an objection opposing the relief sought in the Motions.[4]  On September

10, 2009, upon agreement of the parties in both bankruptcy cases, the motions were argued

together before this Court.[5]  The Chapter 11 Debtors did not participate in the argument, but

stated on the record that they did not object to the FRN Stay Motion.

For the reasons set forth below, I will grant the motions and stay the Samsung Action.

## BACKGROUND

The facts underlying the motions are not in dispute.

---

[3]Samsung also named ten other "proposed respondents" in its complaint before the ITC. The FRN Stay Motion seeks to enforce the stay against Samsung to "protect, not only the estates, but also the Customers, whose continued business dealings are critical to the Debtors and their plan prospects." *See* FRN Stay Motion, p. 7.

[4]As part of its objection, Samsung, alternatively, asks the Court for relief from the automatic stay pursuant to §362(d) if the Court determines that the automatic stay applies to the Samsung Action. Although Samsung should seek such relief by a separately filed motion (*see* Fed.R.Bankr.P. 4001 and 9013), the parties did not oppose hearing Samsung's request for relief from the automatic stay as part of these proceedings.

[5]The FRN Stay Motion asks the Court to authorize them to commence an adversary proceeding against Samsung to enjoin prosecution of the Samsung Action. The Ad Hoc Consortium argued that it had direct standing to enforce the automatic stay or, in the alternative, could be granted derivative standing to do so pursuant to the Third Circuit Court of Appeals' decision in *Official Comm. Of Unsecured Creditors of Cybergenics v. Chinery*, 330 F.3d 548 (3d Cir. 2003), *cert. dismissed*, 124 S.Ct. 530 (2003). No one objected to the Ad Hoc Consortium's standing to enforce the automatic stay, and the parties agreed that the underlying stay matter should be heard on the merits at the September 10, 2009 hearing.

Prior to its bankruptcy filing, Spansion initiated two lawsuits against Samsung alleging patent infringement. On November 18, 2008, Spansion filed a patent infringement action against Samsung with the ITC, seeking the exclusion from the United States market of well over one hundred million mp3 players, cell phones, digital cameras and other consumer electronic devises containing Samsung's flash memory components (the "Spansion Action"). At or about the same time, Spansion commenced an action against Samsung and related entities in the United States District Court for the District of Delaware (the "District Court Action") alleging patent infringement and seeking both an injunction and damages for alleged patent violations relating to Samsung flash memory technology. On January 16, 2009, Samsung asserted counterclaims against Spansion, alleging that Spansion had infringed on five of its U.S. Patents. Two of the five patents initially included in Samsung's counterclaims, U.S. Patent Nos. 6,930,050 and 5,740,065, which were issued on August 16, 2005 and April 14, 1998, respectively ("Patents 050 and 065"), are material here.

In January 2009, Samsung filed an action against the Foreign Debtor in Tokyo District Court (the "Japanese IP Action") seeking (i) an injunction against the Foreign Debtor from manufacturing certain products that allegedly infringe on Samsung's intellectual property and (ii) destruction of all such products.

On February 10, 2009, the Foreign Debtor, a Japanese corporation, voluntarily entered into a proceeding under the Corporate Reorganization Law of Japan to obtain protection from its creditors while it continues its restructuring efforts.

On March 1, 2009, the Chapter 11 Debtors filed their voluntary chapter 11 petitions and on April 30, 2009 the Foreign Debtor filed its chapter 15 petition.

On April 3, 2009, the Chapter 11 Debtors filed a motion under Fed.R.Bankr.P. 9019 for approval of a settlement of litigation with, and license of intellectual property to, Samsung (the "Settlement Motion"). The *Ad Hoc* Consortium of certain Senior Secured Floating Rate Notes Due 2013 (the "Ad Hoc Consortium") and the Official Committee of Unsecured Creditors (the "Creditors' Committee") filed objections to the proposed settlement with Samsung. An evidentiary hearing on the Settlement Motion was held on May 18, 2009. On June 2, 2009, the Court entered a Memorandum and Order denying the Settlement Motion. *In re Spansion, Inc.*, 2009 WL 1531788 (Bankr.D.Del. June 2, 2009). As a result, the parties continued to litigate the Spansion Action and the District Court Action.

On June 8, 2009, Samsung filed a motion in the chapter 11 case for relief from the automatic stay imposed by Bankruptcy Code §362 to, *inter alia*, pursue prepetition counterclaims and postpetition claims and counterclaims against the Chapter 11 Debtors (D.I. 603)(the "Samsung Relief Motion"). The Samsung Relief Motion was resolved by stipulation, which was approved by this Court by Order dated June 23, 2009 (D.I. 694). The parties agreed to modify the automatic stay to allow Samsung to pursue counterclaims in the District Court Action and to set off any prepetition damage awards. This result provided an appropriate forum for resolution of their dispute; however, the Stipulation also provided that "Samsung is currently evaluating additional Postpetition Claims and Counterclaims and both Parties reserve all rights with respect thereto."

Apparently unsatisfied with the Court-approved agreement it had reached with the Chapter 11 Debtors, on July 31, 2009, Samsung filed the Samsung Action before the ITC against, among others, the Chapter 11 Debtors and the Foreign Debtor. The complaint in the Samsung

4

Action alleges claims based on the importation into the United States, and sale within the United States (after importation) of certain flash memory products that infringe on Samsung's Patents 050 and 065, two of the five patents that were the subject of Samsung's counterclaims in the District Court Action. On August 3, 2009, Samsung then withdrew its claims from the District Court Action related to Patents 050 and 065 via its answer and first amended counterclaims.

On July 31, 2009, Samsung also commenced a patent infringement suit against Chapter 11 Debtor, Spansion International, Inc., in Dusseldorf Regional Court, Germany (the "German Action") opening yet another front, across yet another ocean, in the ever-escalating dispute between Spansion and Samsung. Patents 050 and 065 are not at issue in the German Action.

On August 25, 2009, the FRN Stay Motion and the Foreign Debtor's Stay Motion were filed. The Creditors' Committee and HSBC Bank USA, National Association filed joinders to the FRN Stay Motion (D.I. 1108 and D.I. 1102, respectively). The ITC filed a response (D.I. 51) and an amended response (D.I. 54) to the Foreign Debtor's Stay Motion. Samsung filed one objection to both the FRN Stay Motion and the Foreign Debtor's Stay Motion (D.I. 1110 in the chapter 11 case and D.I. 52 in the chapter 15 case).

As stated earlier, both the FRN Stay Motion and the Foreign Debtor's Stay Motion seek to enforce the automatic stay of Bankruptcy Code §362(a) against Samsung for its July 31, 2009 filing of the Samsung Action before the ITC against the Chapter 11 Debtors and the Foreign Debtor. In response, Samsung argues that the automatic stay does not apply to the Samsung Action because it seeks relief only for *post-petition* patent infringement actions. Samsung also argues that 28 U.S.C. §959(a) permits the filing of lawsuits against debtors-in-possession with respect to their post-petition actions.

5

Further, Samsung and the ITC argue that the Samsung Action falls within an exception to the automatic stay provided in Bankruptcy Code §362(b)(4), because it involves enforcement of the police and regulatory powers of the ITC.  Alternatively, Samsung argues that it should be granted relief from the stay for "cause" under Bankruptcy Code §362(d)(1), asserting that the equities weigh in favor of granting relief because, among other things, the harm caused by the Debtors' post-petition patent infringement is continuous and is causing an increasingly large administrative claim against the estate.  Moreover, Samsung argues that the ITC is the best forum to provide expeditious resolution of the patent dispute, which is in the best interest of all parties involved.

## DISCUSSION

1.    The automatic stay of §362(a) applies to both the chapter 11 and chapter 15 cases.

Bankruptcy Code Section 362(a) provides, in pertinent part, that the filing of the voluntary chapter 11 bankruptcy petitions in the chapter 11 case:

> operates as a stay, applicable to all entities, of - -
>
> (1)    the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; [and]
>
> . . . .
>
> (3)    any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

11 U.S.C. §362(a)(1) and (3).  While it is without dispute that Section 362(a) applies in the Chapter 11 Debtors' case, the automatic stay also applies to protect the Foreign Debtor.  On May 28, 2009, this Court entered an Order granting recognition of the foreign main proceeding

6

pursuant to Bankruptcy Code §§ 1515 and 1517 and granted relief pursuant to Bankruptcy Code §§1520 and 1521 (the "Recognition Order").[6] Pursuant to Bankruptcy Code §1520(a), the entry of the Recognition Order caused the automatic stay of §362 to apply to the Foreign Debtor and its property located within the territorial jurisdiction of the United States. 11 U.S.C. §1520(a)(1). *See also In re Pro-Fit Int'l Ltd*, 391 B.R. 850, 864 (Bankr.C.D.Cal. 2008) ("If a foreign proceeding is recognized as a main proceeding, the stay comes into effect automatically upon the issuance of the order for recognition.").

Samsung argued that the automatic stay was not applicable to the July 31, 2009 filing of the Samsung Action, because the Foreign Debtor did not provide Samsung with notice of the Chapter 15 filing or the Recognition Order until August 24, 2009. However, notice of the stay is not required for its effectiveness. The stay of §362 is "'automatic' because it is triggered upon the filing of a bankruptcy petition regardless of whether the other parties to the stayed proceeding are aware that a petition has been filed." *Constitution Bank v. Tubbs*, 68 F.3d 685, 691 (3d Cir. 1995). In a chapter 15 case, the stay is triggered automatically, not by the filing of a petition, but upon entry of a recognition order under §1520. *Pro-Fit Int'l*, 391 B.R. at 864. "Due process is satisfied because creditors have an opportunity to obtain relief from the automatic stay in the bankruptcy court." *In re Singer*, 205 B.R. 355, 357 (S.D.N.Y. 1997). On the date that the Samsung Action was filed, the automatic stay was in full force and effect in both the chapter 11 and chapter 15 bankruptcy cases.

---

[6]The May 28, 2009 order determined, among other things, that Japan is the center of main interests of the Foreign Debtor, and that the Foreign Proceeding (which was defined in that Order as the proceeding of the Foreign Debtor before the Tokyo District Court) was a "foreign main proceeding" pursuant to §1502(4) and was entitled to recognition as a foreign main proceeding pursuant to §1517(b)(1).

2.    The Samsung Action for postpetition patent infringement claims is stayed by §362(a)(1).

Samsung argues that the Samsung Action is not subject to the automatic stay because it seeks only to prevent the Debtors' post-petition patent infringement activities. The patents at issue in the Samsung Action (Patents 050 and 065) were part of Samsung's counterclaims asserted in the District Court Litigation, which were first asserted prepetition. Samsung's later withdrawal of the counterclaims and commencement of the Samsung Action before the ITC was an apparent attempt to bifurcate the patent infringement claims into prepetition and postpetition components.

A similar attempt to bifurcate ongoing patent infringement claims was rejected by the Court in the decision *Matter of Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation*, 140 B.R. 969 (N.D. Ill. 1992). In that case, one party (Mahurkar) sought a ruling that the automatic stay arising from an opponent's bankruptcy filing would not prevent Mahurkar from pressing its injunction claim to prevent postpetition patent infringement activities. The Court held that the litigation was stayed by the bankruptcy filing, writing:

> [T]he continuation during bankruptcy of conduct (such as the sale of catheters) begun beforehand is most certainly one in which an action "was or could have been commenced before the commencement of a case under this title." *This* action could have been, and was, commenced before [the debtor] filed its petition in bankruptcy.

*Mahurkar*, 140 B.R. at 976 (emphasis in original). The *Mahurkar* Court reasoned that this literal interpretation of §362(a)(1) makes sense, because it prevents an action by a single creditor that "may depress the collective value of the [debtor's] assets." *Id.* However, that Court further observed:

> None of this implies that debtors in bankruptcy may violate federal law with impunity, selling patented products or, say, going into the cocaine distribution

8

business. Damages for wrongs done during the bankruptcy proceeding are administrative claims, and thus paid in full most of the time. The bankruptcy judge may enjoin ongoing wrongs, or release the automatic stay to allow another court to consider claims that debtors are violating the law. Public agencies may seek redress under §362(b)(4). *But the bankruptcy court is the clearinghouse for private actions . . . .*

*Id.* at 977 (citations omitted) (emphasis added). *See also Advanced Computer Services of Michigan, Inc. v. MAI Sys. Corp.*, 161 B.R. 771 (E.D.Va. 1993) (holding that the automatic stay barred a suit for injunctive relief to prevent post-petition antitrust violations).

The patent infringement claims asserted in the Samsung Action could have been, and were, asserted prepetition. Thus, those claims are stayed under §362(a)(1). I am aware of decisions which hold that each act of patent infringement gives rise to a separate cause of action. *See, e.g., Hazelquist v. Guchi Moochie Tackle Co., Inc.*, 437 F.3d 1178, 1180-81 (Fed. Cir. 2006). However, the continuous nature of a patent infringement tort does not override a paramount function of the bankruptcy court: to serve as the clearinghouse for attempted enforcement of prepetition claims or continuation of prepetition litigation against the debtor. "The automatic stay is one of the most fundamental protections granted the debtor under the Bankruptcy Code." *Izzarelli v. Rexene Products Co. (In re Rexene Products Co.)*, 141 B.R. 574, 576 (Bankr.D.Del. 1992)(citing *Midlantic Nat'l Bank v. New Jersey Dept. Of Envtl. Protection*, 474 U.S. 494, 503, 106 S.Ct 755, 760, 88 L.Ed. 2d 859 (1986) *reh'g denied* 475 U.S. 1090). The *Rexene* Court noted that the purpose of the automatic stay is three-fold:

to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor. *Borman v. Raymark Ind., Inc.* 946 F.2d 1031, 1036 (3d Cir. 1991)(*quoting St. Croix Condominium Owners v. St. Croix Hotel*, 682 F.2d 446, 448 (3d Cir. 1982)).

9

*Rexene,* 141 B.R. at 576. All of these considerations are present here.

Moreover, as recognized in *Mahurkar,* applying the automatic stay to the continuous tort of patent infringement does not leave the complaining party without recourse. The party may seek relief from the automatic stay under Bankruptcy Code §362(d) to continue the litigation or seek an administrative claim for post-petition damages. If an injury continues after the stay is no longer in effect, courts have recognized a cause of action for post-discharge or post-confirmation acts of infringement. *See Hazelquist,* 437 F.3d at 1181 (Although the patent infringement action was stayed during the chapter 7 case, to the extent the chapter 7 debtor engaged in infringing activities after the discharge of his debts, each of those infringing activities gave rise to a cause of action, or multiple causes of action, that were not enjoined by the discharge injunction of Bankruptcy Code §524); and *Baldwin Tech. Corp v. Dahlgren Int'l, Inc. (In re Dahlgren Int'l, Inc.),* 147 B.R. 393, (N.D.Tex. 1992) (A provision in a chapter 11 plan regarding treatment of administrative claims did not prevent the claimant from asserting patent infringement claims arising post-confirmation).

Even though the alleged patent infringement is ongoing, the automatic stay applies to the Samsung Action because the claims asserted therein "could have been brought" and were, in fact, brought, prepetition, by way of counterclaim in the District Court Action.

3.   The Samsung Action cannot proceed under the "police and regulatory power" exception to the automatic stay set forth in Bankruptcy Code §362(b)(4).

Samsung and the ITC contend that the "police and regulatory power" exception to the automatic stay applies to the Samsung Action. The exception, set forth in Bankruptcy Code §362(b)(4), provides, in pertinent part, that the automatic stay does not apply to:

10

the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police or regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power.

11 U.S.C. §362(b)(4). Samsung asserts that the Samsung Action, although initiated by Samsung's filing of a complaint with the ITC, is an investigation by the ITC under its police and regulatory powers to prevent unfair methods of competition, such as the importation or sale of imported goods that infringe a valid and enforceable United States patent. *See* 19 U.S.C. §1337(a)(1)(B). The ITC filed a response to the Foreign Debtor's Stay Motion, which also seeks a finding by this Court that the Samsung Action is exempt form the automatic stay under §362(b)(4)(D.I. 54)(the "ITC Response"). The ITC's Response explains that a Section 337 investigation (such as the Samsung Action) typically involves three parties: the complainant that alleges a Section 337 violation, the respondent that is alleged to have violated Section 337, and a staff investigative attorney from the ITC's Office of Unfair Import Investigations, whose function is to represent the public interest, to investigate allegations in the complaint, and to present evidence and argument on the issue of whether Section 337 has been violated. (ITC Response, p. 2). The investigation is referred to an administrative law judge, who presides over evidentiary proceedings and renders an initial determination (the "ID") on whether Section 337 has been violated. (*Id.*)

The ID is certified to the ITC along with the evidentiary record. (*Id.* at 3 citing 19 C.F.R. §210.42). Any party may petition the ITC to review the ID to reverse or modify it. (*Id.* citing 19 C.F.R. §210.43). If the ITC declines to review the ID, the ID become the final determination of the agency. (*Id.* citing 19 C.F.R. §210.42(b). If it is determined that Section 337 has been

11

violated, the ITC determines the appropriate remedy, which is described as follows:

> The remedy is always prospective in nature, and may include an order excluding the subject articles from entry into the United States or an order directing respondents to cease and desist from the unfair practices, or both. 19 U.S.C. §1337(b) and (f). Before issuing a remedial order, the ITC is required to consider whether the remedy is precluded because of the impact it may have on the "public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States and the United States consumers." 19 U.S.C. §1337(d) and (f). The allowable remedies do not, however, include monetary damages of any sort.

(ITC Response, p. 3).

Courts have applied two tests (perhaps, more accurately, a two-part analysis) in determining whether an action qualifies as a governmental unit's enforcement of a police or regulatory power: the pecuniary purpose test and the public policy test.

> Under the pecuniary purpose test, reviewing courts focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property and not to matters of public safety. Those proceedings which relate primarily to matters of public safety are excepted from the stay. Under the public policy test, reviewing courts must distinguish between proceedings that adjudicate private rights and those that effectuate public policy. Those proceedings that effectuate a public policy are excepted from the stay.

*Chao v. Hospital Staffing Serv., Inc.*, 270 F.3d 374, 385-86 (6th Cir. 2001). *See also Universal Life Church, Inc. v. United States,* 128 F.3d 1294, 1297 (9th Cir. 1997), *N.L.R.B. v. Edward Cooper Painting, Inc.,* 804 F.2d 934, 942 (6th Cir. 1986), *In re Bankruptcy Appeal of Allegheny Health, Education and Research Foundation,* 252 B.R. 309, 327 (W.D.Pa. 1999), *In re CVEO Corp.*, No. 01-223, 2002 WL 32332005, *2 (Bankr.D.Del. Feb.8, 2002).[7] Both Samsung and the

---

[7] *See also United States v. Nicolet, Inc.,* 857 F.2d 202, 209 (3d Cir. 1988)(The Third Circuit Court of Appeals discussed the "pecuniary interest/public policy analysis" used in the *Edward Cooper Painting* case and said that it was "another factor . . . sometimes added to the calculus [of whether a governmental unit's action is exempt from the automatic stay under §362(b)(4)].") In *Nicolet*, the court held that it was not a stay violation for the United States to reduce to judgment (but not enforce) its claim for response costs under the Comprehensive Environmental Response, Compensation, and Liability Act, better known

ITC argue that the Samsung Action does not satisfy either test because the action is undertaken to protect the United States' markets from unfair competition and there is no request for monetary damages.

The *Chao* Court recognized that "all acts of Congress by definition declare national policy, and lawsuits to enforce those acts necessarily effectuate the public policy of the United States." *Chao*, 270 F.3d at 389. The pecuniary purpose/public policy tests are "designed to sort out cases in which the government is bringing suit in furtherance of *either* its own or a certain private parties' interest in obtaining a pecuniary advantage over other creditors." *Id.* (emphasis in original).[8] The *Chao* Court further recognized that applying the public policy test is difficult and there are many close cases, writing:

> [C]ourts should examine the type of enforcement action brought and the relationship between a particular suit and Congress's (or a state's) declared public policy. When an action furthers both public and private interests and the private interests do not significantly outweigh the public benefit from enforcement, courts should defer to the legislature's decision to vest enforcement authority in the executive and recognize such actions as within "such governmental unit's police and regulatory power," as that term is used in §362(b)(4). However, when the action incidentally serves public interests but more substantially adjudicates private rights, courts should regard the suit as outside the police power exception, particularly when a successful suit would result in a pecuniary advantage to certain private parties vis-a-vis other creditors of the estate, contrary to the

as "CERCLA." *Id.* at 209. Here, a possible result of the ITC Action would not involve any monetary award against Spansion, but if Samsung's position is upheld, immediate injunctive relief directed against Spansion's ability to import its products would follow. Thus, the Samsung Action not only implicates the stay of §362(a)(1), but also the stay of §362(a)(3), which prevents any act to exercise control over property of the estate.

[8] *See also Koken v. Reliance Group Holdings, Inc. (In re Reliance Group Holdings, Inc.)*, 273 B.R. 374, 386 (Bankr.E.D.Pa. 2002) (holding that an emergency petition by an insurance commissioner, in her capacity as liquidator of an insurance company that was wholly-owned by the debtor holding company, was not an exercise of police and regulatory powers because it sought to take control of the debtor's assets to allow certain policyholders and creditors to "gain a pecuniary advantage over other creditors of the Debtor's estate.")

Bankruptcy Code's priorities.

*Chao*, 270 F.3d at 390. The Samsung Action was initiated upon Samsung's filing of a complaint

before the ITC, asking the ITC to provide relief in favor of Samsung by:

(i)    instituting an investigation regarding violations of section 337(b)(1) of the Tariff
       Act of 1930, 19 U.S.C. §1337 (the "Tariff Act"), caused by the importation or sale
       after importation of flash memory chips and products that infringe on or more of
       Samsung's patents,
(ii)   holding a public hearing to receive evidence and hear argument on the
       Respondents' alleged violations of the Tariff Act;
(iii)  upon finding a violation of the Tariff Act, issue a permanent exclusion order to
       forbid entry into the United States of Spansion's flash memory chips and products
       that infringe on Samsung's patents; and
(iv)   direct that Respondents cease and desist from importing, selling, promoting,
       marketing and/or advertising in the United States Spansion's flash memory chips
       and products that infringe one or more of Samsung's patents.

Thus, the primary thrust of the process initiated by Samsung - - and, from Samsung's standpoint,

the only purpose - - is to adjudicate patent infringement claims of private parties for the benefit

of Samsung. The Samsung Action serves only incidentally the goal of preventing unfair

competition. This conclusion is consistent with the decision of the bankruptcy court in *In re*

*Quimonda AG*, No. 09-14766, 2009 WL 2210771, *6 (Bankr.E.D. Va. July 16, 2009), which

also determined that the ITC was "acting in its judicial capacity, not its enforcement capacity" in

a patent infringement action that was "commenced by individual private parties against

individual private parties." *Id.* The *Quimonda* Court wrote:

The private parties are the real parties in interest; they have their own attorneys and are
litigating the case in their own interests. In its judicial capacity, the Commission itself
acts fairly, objectively and impartially. It is the forum for the litigation; the tribunal
before which the case is tried. It is not the instigator or the prosecutor.[9]

---

[9]The *Quimonda* Court also recognized that the ITC has an Office of Unfair Import Investigations,
which is separate from the Commission itself that participates in the each action by filing pleadings
before the Commission and its administrative law judges. The *Quimonda* Court decided that the Office

*Id.* Here, the ITC offered a public policy argument in broad strokes only, and presented no specific evidence that the public interest does and should outweigh the considerations involving adjudication of the private dispute between Spansion and Samsung. I conclude that the ITC is not exercising "police and regulatory power" in the Samsung Action and, therefore, the action is not exempt from the automatic stay under Bankruptcy Code §362(b)(4).

4.    The Samsung Action should not proceed under 28 U.S.C. §959.

Alternatively, Samsung relies upon 28 U.S.C. §959 for authority to file postpetition patent infringement claims without obtaining relief from the automatic stay. Section 959(a) provides:

(a)    Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

28 U.S.C. §959(a). Other courts considering similar issues have noted that the right to sue in §959(a) is tempered by a balancing of interests test. *See In re Telegroup, Inc.*, 237 B.R. 87, (Bankr.D.N.J. 1999); *In re Television Studio School of New York*, 77 B.R. 411 (Bankr.S.D.N.Y. 1987). In *Television Studio School*, the Court explained that the first sentence of §959(a) "is intended to render debtors-in-possession amenable to suit . . . on causes of action arising in the ordinary activities of the company in reorganization." *Id.* at 412. The Court further explained: "The policy behind the second sentence, however, is to limit the seemingly unfettered power to

---

of Unfair Import Investigations functions similarly to the United States Trustee in the bankruptcy court. Their participation does not alter the conclusion that, with respect to the Samsung Action, the ITC is acting in a judicial capacity. *Quimonda*, 2009 WL 2210771 at *6.

bring suit against the debtor-in-possession where to do so would significantly interfere with the orderly administration of the debtor's estate." *Id.* A bankruptcy court may enjoin the filing of an action in the exercise of its sound discretion if it finds that the action would embarrass, burden, delay or otherwise impede the reorganization proceedings."[10]  *Id.*

Both the *Telegroup* and *Television Studio School* Courts held that patent infringement claims for postpetition activities could be brought against a debtor-in-possession under §959, but both Courts also exercised their discretion to enjoin the lawsuits to prevent interference with the debtor's reorganization. *Telegroup*, 237 B.R. at 94-96, *Television Studio School*, 77 B.R. at 412-13. Here, Samsung argues that the equities weigh in favor of allowing the Samsung Action to proceed because (i) Samsung is being injured by the Debtors' continued patent infringement, (ii) the Samsung Action is not duplicative of the District Court Action because it involves separate patents, (iii) the ITC forum provides expertise and will resolve the claims expeditiously, and (iv) expeditious resolution of the patent infringement claims is in the best interests of all parties and the chapter 11 bankruptcy estate.

The Chapter 11 Debtors have filed their own patent infringement claims against Samsung, so both parties assert continuing injuries from on-going patent infringement. Although the patent claims in the Samsung Action were separated from the District Court Action and may not be duplicative, instituting separate lawsuits increases the expense and burden of litigating the claims between the two parties, which clearly interferes with the conduct of the chapter 11 case

---

[10]*But see  Voice Sys. and Serv., Inc. v. VMX, Inc.*, 1992 WL 510121 (N.D.Okla. 1992)(The Court noted that §959 is an exception to the §362 automatic stay and permitted the filing of a postpetition lawsuit seeking to enjoin only postpetition patent infringement claims without any discussion of the Court's ability to weigh the equities of the matter.)

by the Chapter 11 Debtors. Samsung argues that the patent litigation involves special counsel and individuals with special expertise that should not disrupt the reorganization efforts of Spansion's officers and directors and bankruptcy counsel. However, multiple actions in multiple fora inevitably disrupts and further burdens the Debtors' reorganization efforts. While expeditious resolution of the competing patent infringement claims and liquidation of any potential administrative claims are in the best interests of the Chapter 11 Debtors and their estate, as well as the Foreign Representative, the parties have an appropriate forum for doing so. The competing claims were being addressed in the District Court Action, until Samsung unilaterally withdrew certain patents and commenced the separate action in the ITC.[11]  The hardship of litigating the competing patent infringement claims in separate actions outweighs the hardship to Samsung in litigating its claims in the District Court Action. The filing of the Samsung Action created an undue (and unnecessary) burden on the Chapter 11 Debtors' and the Foreign Representative's efforts to reorganize. Therefore, although the postpetition infringement claims in the Samsung Action could be filed under 28 U.S.C. §959, the Samsung Action will be enjoined.

5.    Cause does not exist for granting relief from the automatic stay under Bankruptcy Code §362(d).

In its objection to the FRN Stay Motion and the Foreign Debtor's Stay Motion, Samsung argues, alternatively, that the Court should grant relief from the automatic stay under Bankruptcy

---

[11]From the record before me, the inference can easily be drawn that Samsung withdrew these counterclaims from the District Court Action as a litigation tactic, and, taken together with the filing of the German Action, reflects Samsung's intention to cause a continuing drain on Spansion's resources (financial, legal, and operational) and to create as much disruption to Spansion as it can to force Spansion back to the bargaining table to resurrect some form of settlement.

Code §362(d)(1) and allow the Samsung Action to proceed.

Bankruptcy Courts in this district generally rely upon a three-pronged balancing test to determine whether "cause" exists for granting relief from the stay to continue litigation:

(1) Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;

(2) Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor, and

(3) Whether the creditor has a probability of prevailing on the merits.

*Rexene*, 141 B.R. at 576 citing *Int'l Business Machines v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.)*, 938 F.2d 731, 734-37 (7th Cir. 1991). *See also American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 152 B.R. 420, 424 (D.Del. 1993) (also citing *Fernstrom*); *In re The SCO Group, Inc.*, 395 B.R. 852, 857 (Bankr.D.Del. 2007)(citing *Rexene*).

The hardship to the Debtors caused by litigating similar patent infringement issues in multiple locations selected by Samsung outweighs the hardship to Samsung in having the claims heard in the District Court Action, as was originally contemplated and approved by this Court. The parties have not presented any evidence to allow for a meaningful evaluation of Samsung's probability of success on the merits. However, because the other *Rexene* considerations weigh heavily in favor of staying the Samsung Action, the third factor is not crucial to my determination.

At its core, weighing the equities to determine whether an action may be filed under 28 U.S.C. §959 is similar to the analysis for deciding whether to lift the automatic stay for "cause" under Bankruptcy Code §362(d). For the reasons discussed above, related to 28 U.S.C. §959, I

conclude that the equities weigh in favor of staying the Samsung Action.  Samsung has failed to

demonstrate the necessary "cause" for relief from the automatic stay.


### CONCLUSION

For the reasons discussed above, I conclude that (i) Samsung violated the automatic stay

of §362(a)(1) by filing the Samsung Action to enforce postpetition patent infringement claims

against the Chapter 11 Debtors and the Foreign Debtor; (ii) the Samsung Action does not fall

within the police and regulatory powers exception to the automatic stay set forth in §362(b)(4);

(iii) although the Samsung Action could be filed under 28 U.S.C. §959, the action should be

enjoined as it is disruptive to the Debtors' reorganization efforts; and (iv) Samsung is not entitled

to relief from the automatic stay under §362(d) because the hardship to the Chapter 11 Debtors

and the Foreign Debtor in litigating the patent infringement action before different tribunals

outweighs any hardship to Samsung, which already had permission to litigate in the District

Court Action.

Accordingly, the FRN Stay Motion and the Foreign Debtor's Stay Motion will be granted,

and the Samsung Action will be stayed.  An order follows, directing the parties to confer and to

submit under certification a proposed form of order consistent with this Memorandum.

BY THE COURT:

KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: October 1, 2009

19