# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SPANSION INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-10690 (KJC)<br><br>Jointly Administered<br><br>Hearing Date: October 27, 2009, at 10:00 a.m. (ET)<br>Objection Deadline: October 20, 2009, at 4:00 p.m. (ET) |

### MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 365 AND FED. R. BANKR. P. 6006 AUTHORIZING THE REJECTION OF SECOND AMENDED AND RESTATED FOUNDRY AGREEMENT WITH SPANSION JAPAN LIMITED

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") hereby file this motion (the "**Motion**") pursuant to 11 U.S.C. § 365 for entry of an order (the "**Order**"), in substantially the form attached hereto as Exhibit A, authorizing the rejection of that certain Second Amended and Restated Foundry Agreement, dated as of March 2007 (as amended and modified through the date of this Motion, the "**Foundry Agreement**"), between the Debtors and Spansion Japan Limited ("**Spansion Japan**"), with such rejection being effective as of the date of this Motion. In support of this Motion, the Debtors submit the Declaration of James Ashby, a copy of which is attached hereto as Exhibit B (the "**Ashby Declaration**"), and respectfully state as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Spansion Inc., a Delaware corporation (8239); Spansion Technology LLC, a Delaware limited liability company (3982); Spansion LLC, a Delaware limited liability company (0482); Cerium Laboratories LLC, a Delaware limited liability company (0482), and Spansion International, Inc., a Delaware corporation (7542). The mailing address for each Debtor is 915 DeGuigne Dr., Sunnyvale, CA 94085.

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**").

## BACKGROUND

A. Procedural Background

3. On March 1, 2009 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On March 4, 2009, the Court entered an Order directing the joint administration of these chapter 11 cases under the case of Spansion Inc., Case No. 09-10690 [D.I. 58].

B. The Debtors' Business

4. The Debtors design, develop, manufacture, market, license and sell flash memory solutions ("**Flash Memory**"). The Debtors sell Flash Memory to leading equipment manufacturers in the mobile phone, consumer electronics and automotive electronics markets. The Debtors sell Flash Memory directly to customers and through distributors. The Debtors and the foreign subsidiaries of Spansion LLC have facilities in the United States, the United Kingdom, Japan, China, Thailand, Malaysia, Singapore, Finland, France, Germany, Italy, Israel, Korea, the Netherlands, Sweden, and Taiwan.

2

C.  The Spansion Japan Foundry Agreement

5. Spansion LLC and Spansion Japan are parties to the Foundry Agreement pursuant to which Spansion Japan manufacturers integrated Flash Memory circuits for the Debtors. The pricing under the Foundry Agreement was based on a "cost plus" formula that resulted in a price per unit well in excess of the prevailing prices in the market. For example, invoices for product from SP1 in March 2009 reflect an implied fab wafer cost of $8,000, or 370% more than the competitive benchmark cost. Similarly, JV3 implied fab wafer cost was $695, 40% more than the competitive cost. Historically, Spansion Japan, which is 100% owned by Spansion LLC, was centrally managed with Spansion LLC and its affiliates. Consequently, so long as Spansion Japan was solvent and part of the Debtors' consolidated global operations, the above-market pricing was not an issue for Spansion LLC because any excess amounts paid to Japan would increase the value of Spansion LLC's equity interest and could be used to support and sustain Spansion Japan's business operations.

6. On February 10, 2009, Spansion Japan filed a proceeding under the Corporate Reorganization Law (Kaisha Kosei Ho) of Japan to obtain protection from Spansion Japan's creditors (the "**Spansion Japan Proceeding**"). The Spansion Japan Proceeding was formally commenced on March 3, 2009, when the Tokyo District Court entered the commencement order and appointed the incumbent represented director of Spansion Japan as trustee. As a result of the Spansion Japan Proceeding, Spansion Japan is no longer centrally managed with the Debtors' global operations. In addition, due to Spansion Japan's insolvency, any above-market amounts that would be paid by Spansion LLC to Spansion Japan under the Foundry Agreement would effectively become trapped in Spansion Japan's bankruptcy estate

3

and would not inure, whether directly or indirectly, to the Debtors' benefit as had been the case prior to the Spansion Japan Proceeding.

7. Since the commencement of the Spansion Japan Proceeding, the Debtors have engaged in numerous discussions with Spansion Japan and those administering its bankruptcy estate concerning the terms under which Spansion LLC would be willing to continue its commercial relationships with Spansion Japan. In these discussions, the Debtors have consistently stressed that they could not and would not continue such relationship on the original terms of the Foundry Agreement due to, among other things, the above-market pricing. Thus, the Debtors have insisted that the Foundry Agreement be amended to make it commercially justifiable for Spansion LLC as a condition to maintaining their commercial arrangements with Spansion Japan.

8. On or around May 20, 2009, Spansion LLC and Spansion Japan negotiated the terms of an amendment to the Foundry Agreement (the "**Amendment**"). These terms included, among other things, (i) a modification of the pricing terms of the Foundry Agreement, retroactive to March 3, 2009, so that they more closely conform to market prices, (ii) the establishment of production levels that are more in line with the Debtors' global needs and (iii) shortened payment terms for Spansion LLC. Spansion Japan verbally agreed to these terms on several occasions and confirmed the proposed commercial terms in an e-mail from Mikio Suetake, the Deputy Trustee of Spansion Japan, to John Kispert, the CEO of Spansion LLC, and other employees of Spansion LLC on May 20, 2009. It was in reliance on the Amendment that the Debtors continued their commercial relationship with Spansion Japan. Drafts of the Amendment were circulated between the parties though the Amendment was not formally executed by Spansion Japan or approved by the Tokyo District Court.

9.  After reaching agreement on the terms of the Amendment, Spansion Japan and Spansion LLC operated in accordance with these terms. In late May 2009, after the parties had agreed upon the terms of the Amendment, Spansion Japan netted the amounts it owed Spansion LLC for the month of March under the FASL Japan Distribution Agreement against the amounts Spansion LLC owed Spansion Japan for the month of March under the Foundry Agreement based on the pricing terms agreed to in the Amendment, and remitted the difference to Spansion LLC as the "March Settlement Payment". This same process was subsequently followed to settle payments due between the parties for activity in the month of April. Again, Spansion Japan used the new terms, as agreed upon in the Amendment, to perform the netting procedure and pay the resulting Settlement Payment.

10. However, after the Settlement Payment for April 2009 activity, which was made during the week of June 29, 2009, Spansion Japan has taken a number of steps that indicate that it might not honor the terms of the Amendment, but instead might seek to enforce the pre-Amendment terms of the Foundry Agreement. For example, no Settlement Payment has been made for activity in May or thereafter. Spansion Japan continues to delay making that payment, while balking at executing the Amendment, making statements questioning the validity of the Amendment and threatening to enforce the pre-Amendment pricing terms of the Foundry Agreement. The difference between the pricing terms originally set forth in the Foundry Agreement and those set forth in the Amendment would equate to tens of millions of dollars in additional post-petition costs for Spansion LLC.

11. On September 24, 2009, GE Financial Services Corporation, on its own behalf and on behalf of Spansion Japan's secured creditors, filed a motion in the Debtors' chapter 11 cases, which, among other things, (i) challenges the effectiveness of the Amendment,
5

(ii) asserts that the pricing for wafers shipped since the Petition Date should be governed by the Foundry Agreement (without giving effect to the Amendment) and (iii) asserts an undetermined administrative expense claim. On September 28, 2009, Masao Taguchi, the trustee of Spansion Japan, sent the Debtors a letter in which he too challenged the effectiveness of the Amendment and asserted that the Foundry Agreement (without giving effect to the Amendment) governed the pricing for wafers shipped to Spansion LLC since the Petition Date.

12. In light of the ongoing assertions by Spansion Japan and GE Financial Services Corporation that the pricing under the Foundry Agreement (without giving effect to the Amendment) is still binding on the Debtors, the Debtors have determined in their business judgment that rejection of the Foundry Agreement is in the best interests of their estates.[2] Notwithstanding this rejection, the Debtors will continue to try to reach a new supply agreement with Spansion Japan that is in their mutual best interests and that is premised on market pricing.

### RELIEF REQUESTED

13. By this Motion, the Debtors seek the rejection of the Foundry Agreement, in accordance with section 365 of the Bankruptcy Code effective as of the date of this Motion. As set forth in this Motion, the Debtors believe that the rejection of the Foundry Agreement represents the exercise of the Debtors' sound business judgment.

---

[2] The Debtors reserve all of their rights, claims, causes of action and defenses against Spansion Japan, GE Financial Services Corporation or any other person or entity with respect to or arising our of the Foundry Agreement, the Amendment and/or any arrangement, understanding or relationship that they might have or have had with Spansion Japan, GE Financial Services Corporation and/or any such person or entity, including, without limitation, any claim, motion, request for payment, application or cause of action that Spansion Japan, GE financial Services Corporation or any such person or entity might bring or assert in these chapter 11 cases. In furtherance, and not in limitation of the foregoing, the Debtors reserve the right to, *inter alia*, (i) assert that Spansion Japan's apparent repudiation of the Amendment resulted in a termination of the Foundry Agreement, (ii) assert that the Foundry Agreement previously terminated due to Spansion Japan's breach or otherwise, and (ii) object to or otherwise challenge or dispute any claim, motion, application, request for payment, or cause of action that Spansion Japan or GE Financial Services Corporation might file or assert in these chapter 11 cases seeking any rejection damages, administrative expense claims, whether based on the original terms of the Foundry Agreement (without giving effect to the Amendment) or otherwise, or any other amounts.

## BASIS FOR RELIEF REQUESTED

14. Section 365(a) of the Bankruptcy Code provides, in pertinent part, as follows: "[T]he trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

15. Under Section 365(a), a debtor is authorized, subject to the court's approval, to reject any executory contract or unexpired lease if rejection is a reasonable exercise of its business judgment. *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (*citing Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 318 U.S. 523, 500 (1943)); *Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 40 (3d. Cir. 1989); *In re Federal-Mogul Global Inc.*, 293 B.R. 124, 126 (Bankr. D. Del. 2003) ("motions to reject executory contracts are evaluated under the business judgment test"). Under the business judgment test, the debtor need only demonstrate that the rejection of the unexpired lease or executory contract will benefit the estate. *See Sharon Steel Corp.*, 872 F.2d at 39-40; *Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 492 (3d Cir. 1998). Generally in such situations, "absent a showing of bad faith, or an abuse of business discretion, the debtor's business judgment will not be altered." *In re G. Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994) (*citing In re Bildisco*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd sub nom. N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513).

16. Maximization of the value of the Debtors' estates depends in large measure on the Debtors' ability to relieve the estates from, among other things, burdensome contracts and unnecessary operating costs, and to keep their post-petition costs of administration to a minimum. As discussed above, the pre-Amendment pricing terms under the Foundry Agreement, which Spansion Japan apparently will seek to enforce, are well-above market. As a

result, in the absence of the Amendment (or other market pricing terms), the costs which the Debtors would incur by accepting the benefits under the Foundry Agreement far exceed the reasonable value of such benefits to the Debtors. As discussed above, these above-market costs would, if allowed, total in the tens of millions of dollars of additional costs for the estates from the Petition Date to the present. In short, the pricing structure of the Foundry Agreement is simply not sustainable.

17. For these reasons, the Debtors have determined, in the exercise of sound business judgment, to reject the Foundry Agreement.

## REJECTION DAMAGES

18. The Debtors request that the Court direct that claims (if any) for damages arising as a result of the rejection of the Foundry Agreement must be filed no later than the first Business Day that is thirty (30) days after entry of the Order.

## RESERVATION OF RIGHTS

19. Nothing contained herein should be construed as a waiver of any of the Debtors' rights, defenses or counterclaims with respect to the Foundry Agreement rejected hereby.

## NOTICE

20. No trustee or examiner has been appointed in these chapter 11 cases. The Debtors will provide notice of this Motion to: (a) the United States Trustee; (b) Spansion Japan; (c) counsel to the administrative agent for the Debtors' prepetition lenders; (d) counsel to the *ad-hoc* committee of holders of Spansion LLC's Senior Secured Floating Rate Notes due 2013, Robert J. Stark, Brown Rudnick LLP, Seven Times Square, New York, NY 10036; (e) the Trustee for Spansion LLC's Senior Secured Floating Rate Notes due 2013; (f) UBS Bank USA;

8

(g) counsel for the Official Creditors Committee appointed in these chapter 11 cases; (h) the Internal Revenue Service; (i) local taxing authorities; and (j) any party in interest that has requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested, the Debtors submit that no further notice is required or needed under the circumstances.

21. A copy of the Motion is available on the Court's website at www.deb.uscourts.gov and at http://chapter11.epiqsystems.com/spansion.

## NO PRIOR APPLICATION

22. No prior motion for the relief requested herein has been made to this Court or any other court.

**[Remainder of Page Intentionally Left Blank]**

WHEREFORE, the Debtors respectfully request that the Court enter the proposed Order, substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: October 9, 2009
      Wilmington, Delaware

Respectfully Submitted,

*/s/ Sommer L. Ross*

Michael R. Lastowski (No. 3892)
Richard W. Riley (No. 4052)
Sommer L. Ross (No. 4598)
DUANE MORRIS, LLP
1100 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
E-mail: mlastowski@duanemorris.com
        rwriley@duanemorris.com
        slross@duanemorris.com

and

Michael S. Lurey (Admitted *Pro Hac Vice*)
Gregory O. Lunt (Admitted *Pro Hac Vice*)
Kimberly A. Posin (Admitted *Pro Hac Vice*)
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, California 90071-1560
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
E-mail: Michael.Lurey@lw.com
       Gregory.Lunt@lw.com
       Kim.Posin@lw.com

ATTORNEYS FOR THE DEBTORS AND
DEBTORS-IN-POSSESSION