## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SPANSION INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-10690 (KJC)<br><br>Jointly Administered<br><br>**Hearing Date: October 27, 2009 at 10:00 a.m. (ET)**<br>**Objection Deadline: October 20, 2009 at 4:00 p.m. (ET)** |

### MOTION OF THE DEBTORS FOR AN ORDER PURSUANT TO 11 U.S.C. § 365 AUTHORIZING THE ASSUMPTION OF EXECUTORY CONTRACT WITH SAS INSTITUTE INC.

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") hereby file this motion (the "**Motion**") pursuant to 11 U.S.C. § 365 for entry of an order (the "**Order**"), in substantially the form attached hereto as Exhibit A, authorizing the assumption of the Licensing Agreements (as defined herein), by and between Spansion LLC ("**Spansion**") and SAS Institute Inc. ("**SAS**"). In support of this Motion, the Debtors submit the Declaration of Ajay Changaran, attached hereto as Exhibit B, and respectfully state as follows:

### JURISDICTION

1. The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Spansion Inc., a Delaware corporation (8239); Spansion Technology LLC, a Delaware limited liability company (3982); Spansion LLC, a Delaware limited liability company (0482); Cerium Laboratories LLC, a Delaware limited liability company (0482), and Spansion International, Inc., a Delaware corporation (7542). The mailing address for each Debtor is 915 DeGuigne Dr., Sunnyvale, CA 94085.

2. The statutory bases for the relief requested herein are sections 105(a) and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**").

### BACKGROUND

**A. Introduction**

3. On March 1, 2009 (the "**Petition Date**"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**") with the Court. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On March 4, 2009, the Court entered an Order directing the joint administration of the Chapter 11 Cases under the case of Spansion Inc., Case No. 09-10690 [D.I. 58]. On March 12, 2009, the Office of the United States Trustee appointed an official committee of unsecured creditors for the Chapter 11 Cases (the "**Creditors Committee**") [D.I. 106].

**B. The Debtors' Business**

5. The Debtors design, develop, manufacture, market, license and sell flash memory solutions ("**Flash Memory**"). The Debtors sell Flash Memory to leading equipment manufacturers in the mobile phone, consumer electronics and automotive electronics markets. The Debtors sell Flash Memory directly to customers and through distributors. The Debtors and the foreign subsidiaries of Spansion have facilities in the United States, the United Kingdom, Japan, China, Thailand, Malaysia, Finland, Germany, Italy, Korea, the Netherlands, Sweden, and Taiwan.

**C. The SAS Licensing Agreements**

6. On or about July 6, 2006, SAS and Spansion entered into a Master License Agreement (together with supplements and amendments, the "**Licensing Agreement**") for the

use of SAS's software applications (the "**SAS Software**") routinely employed in the operation of Spansion's business. The Licensing Agreement is comprised of (i) the initial Master License Agreement No. 53243 signed by Spansion on July 6, 2006 and signed by SAS on July 20, 2006; (ii) Supplement Number 1 signed by Spansion on July 30, 2006 and signed by SAS on July 20, 2006; (iii) Amendment No. 1 to Supplement Number 1 signed by Spansion on September 12, 2006 and signed by SAS on September 28, 2006; (iv) Supplement Number 2 signed by Spansion on July 17, 2006 and signed by SAS on August 16, 2006; and (v) Supplement Number 3 signed by Spansion on January 22, 2007 and signed by SAS on January 24, 2007.

7. The SAS Software is used in the Debtors' manufacturing factory in Austin Texas (the "**FAB**") and essential to the Debtors' business. The Debtors' or their predecessors in interest have used SAS Software since at least as early as 1991. The Debtors' entered into the new Licensing Agreement in 2006 with SAS after having used the SAS Software for more than 15 years. The SAS Software is a programming language that allows the Debtors to create software tools (the "**Software Tools**") to assist in the manufacturing process. The Software Tools enable the Debtors to gather data from all across the FAB as the product is created. Thousands of points of data are collected and then analyzed in order to manufacture a better product. The SAS Software is imbedded in the operations of the FAB, so that the transition to any other software would result in significant time and expense. With a new software provider, the Debtors would have to incorporate the new software language throughout the FAB, and perhaps more importantly, rewrite over 15 years of Software Tools specific to the Debtors' manufacturing process. The Debtors estimate that this would take at least two man years of labor as well a large financial investment significantly more than the cure amount of $10,426.85 and the annual licensing fee associated with this software.

8. While all postpetition obligations due to SAS are current, by assuming the Licensing Agreements, the Debtors will be required to pay a cure amount of $10,426.85, which was listed in the Debtors' schedule No. 692119890. However, when compared to the amount needed to secure new software, plus the time and expense required to rewrite the Software Tools, the Debtors assert that assumption of the Licensing Agreements is in the best interest of their estates.

### RELIEF REQUESTED

9. By this Motion, pursuant to section 365 of the Bankruptcy Code, the Debtors seek authority to assume the Licensing Agreements, which, in the Debtors' business judgment, provide benefits to the Debtors' estates of greater value than the costs to the Debtors under those agreements, and which benefits are necessary for the Debtors' business operations.

### BASIS FOR RELIEF REQUESTED

**A. Assumption Of The Licensing Agreements Is A Sound Exercise Of The Debtors' Business Judgment And Is In The Best Interests Of Their Estates**

10. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor, "subject to the court's approval, may assume or reject any unexpired lease or executory contract of the debtor."

11. A debtor's decision to assume a lease or executory contract is an exercise of "business judgment" as to whether assumption is in the best interests of the debtor's estate. *See Group of Inst. Investors v. Chi., Milw., St. Paul & Pac. R.R. Co.*, 318 U.S. 523, 550, *reh'g denied sub nom, Group of Inst. Investors v. Abrams*, 318 U.S. 803 (1943); *In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992); *In re Trans World Airlines, Inc.*, 261 B.R. 103, 120-23 (Bankr. D. Del. 2001).

12.     Courts will generally approve the assumption or rejection of an executory contract or unexpired lease, unless evidence is presented that the debtor's decision to assume or reject was "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, whim or caprice." *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.),* 756 F.2d 1043, 1047 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057 (1986). "More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

13.     The Debtors have determined that assumption of the Licensing Agreements is in the best interests of their estates. The Licensing Agreement provides a fair price for the use of software that is essential to the operation of the Debtors' business and is used throughout the FAB. As discussed above, the only alternative to the assumption of the Licensing Agreements is to enter into new agreements with a different software provider, and rewrite over 15 years worth of Software Tools that are specific to the Debtors' manufacturing process. Assumption of the Licensing Agreements is the most cost-effective way to obtain essential licenses and maintenance going forward.

14.     In light of the foregoing, the Debtors respectfully submit that their decision to assume the Licensing Agreements is supported by their sound business judgment and is in the best interests of their estates.

B.      **The Debtors Will Pay The Cure Amount And Have Provided Adequate Assurance Of Future Performance.**

15.     When assuming an executory contract, section 365(b) of the Bankruptcy Code requires that the debtor cure any defaults under the contract or provide adequate assurance

that it will promptly cure such defaults. 11 U.S.C. § 365(b)(1)(A). If there has been a default, the debtor must also provide adequate assurance of future performance under the contract. 11 U.S.C. § 365(b)(1)(C).

16. The Debtors acknowledge that they owe SAS $10,426.85 (the "**Cure Amount**") for prepetion amounts owed to SAS. As discussed above, assumption of the Licensing Agreements results in substantial savings to the Debtors. The Debtors assert that there are no other existing defaults under the Licensing Agreements. Upon entry of a final Order approving this Motion, the Debtors will pay the Cure Amount to SAS.

17. The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D. N.J. 1989). *See also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean an absolute assurance that the debtor will thrive and pay rent).

18. The Debtors currently have sufficient cash resources to pay the Cure Amount. SAS, therefore, has adequate assurance of future performance.

19. Accordingly, with payment of the Cure Amount the Debtors assert that they: (i) will have cured all defaults existing under the Licensing Agreements and (ii) will have provided adequate assurance of future performance, thereby satisfying the requirements of section 365(b) of the Bankruptcy Code.

**RESERVATION OF RIGHTS**

20. Nothing contained herein should be construed as a waiver of any of the Debtors' rights, defenses or counterclaims with respect to the Licensing Agreements.

## NOTICE

21.  No trustee or examiner has been appointed in the Chapter 11 Cases. The Debtors will provide notice of this Motion to: (a) the United States Trustee; (b) SAS; (c) counsel to the administrative agent for the Debtors' prepetition lenders; (d) counsel to the *ad-hoc* committee of holders of Spansion LLC's Senior Secured Floating Rate Notes due 2013, Robert J. Stark, Brown Rudnick LLP, Seven Times Square, New York, NY 10036; (e) the Trustee for Spansion LLC's Senior Secured Floating Rate Notes due 2013; (f) UBS Bank USA; (g) counsel for the Creditors Committee; (h) the Internal Revenue Service; (i) SAS and (j) any party in interest that has requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested, the Debtors submit that no further notice is required or needed under the circumstances.

22.  A copy of the Motion is available on the Court's website at www.deb.uscourts.gov and at http://chapter11.epiqsystems.com/spansion.

## NO PRIOR APPLICATION

23.  No prior motion for the relief requested herein has been made to this Court or any other court.

**[Remainder of Page Intentionally Left Blank]**

WHEREFORE, the Debtors respectfully request that the Court enter the proposed Order, substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: October 9, 2009  
Wilmington, Delaware

Respectfully Submitted,

*[signature]*

Michael R. Lastowski (No. 3892)  
Richard W. Riley (No. 4052)  
Sommer L. Ross (No. 4598)  
DUANE MORRIS, LLP  
1100 North Market Street, Suite 1200  
Wilmington, Delaware 19801  
Telephone: (302) 657-4900  
Facsimile: (302) 657-4901  
E-mail: mlastowski@duanemorris.com  
        rwriley@duanemorris.com  
        slross@duanemorris.com

and

Michael S. Lurey (Admitted *Pro Hac Vice*)  
Gregory O. Lunt (Admitted *Pro Hac Vice*)  
Kimberly A. Posin (Admitted *Pro Hac Vice*)  
LATHAM & WATKINS LLP  
355 South Grand Avenue  
Los Angeles, California 90071-1560  
Telephone: (213) 485-1234  
Facsimile: (213) 891-8763  
E-mail: Michael.Lurey@lw.com  
       Gregory.Lunt@lw.com  
       Kim.Posin@lw.com  
ATTORNEYS FOR THE DEBTORS AND DEBTORS-IN-POSSESSION