# Exhibit A

# Stipulation

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SPANSION INC., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No.: 09-10690 (KJC)<br><br>Jointly Administered<br><br>Related to D.I. 738, 867, 926, 932, 933, 934, 942, and 1012 |

## STIPULATION BETWEEN THE DEBTORS AND CHIPMOS TECHNOLOGIES, INC. REGARDING LIMITED RELIEF FROM THE AUTOMATIC STAY

This stipulation (the "**Stipulation**") is entered into by and between the above-captioned debtors and debtors-in-possession (the "**Debtors**") and ChipMOS TECHNOLOGIES, INC. ("**ChipMOS**"), by and through their undersigned counsel.[2]

### RECITALS

A. On March 1, 2009 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (as hereafter amended, modified or supplemented, the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), commencing the above-captioned bankruptcy cases (collectively, the "**Chapter 11 Cases**"). The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B. On February 19, 2009, ChipMOS terminated the Assembly and Test Services

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Spansion Inc., a Delaware corporation (8239); Spansion Technology LLC, a Delaware limited liability company (3982); Spansion LLC, a Delaware limited liability company (0482); Cerium Laboratories LLC, a Delaware limited liability company (0482), and Spansion International, Inc., a Delaware corporation (7542). The mailing address for each Debtor is 915 DeGuigne Dr., Sunnyvale, CA 94085.

1

Agreement entered into by and between Spansion LLC and ChipMOS on September 15, 2005 (the "**Testing Agreement**") and thereafter alleged that (i) Spansion LLC's unpaid and outstanding balance totaled approximately $73,000,000 and (ii) pursuant to Paragraph 18 of the Testing Agreement, Spansion LLC was further liable for approximately $233,764,860 in contract termination damages. ChipMOS asserted a possessory lien pursuant to the laws of the Republic of China in certain semiconductor wafers owned by Spansion.

C. On March 6 and 13, 2009, ChipMOS filed two proofs of claim [Claim Nos. 5, 15] (the "**Proofs of Claim**") asserting that it is owed $305,620,348.79 by the Debtors. The Proofs of Claim assert that (i) ChipMOS is entitled to a general unsecured claim in the amount of $71,855,488.68 for the Debtors' unpaid and outstanding balance for services provided under the Testing Agreement (the "**Receivables Claim**"); and (ii) ChipMOS is entitled to a general unsecured claim in the amount of $233,764,860.11 in contract termination damages (the "**Damages Claim**").

D. The Debtors have calculated, and ChipMOS now agrees, that the actual amount of the Receivables Claim is $71,676,682.03 (the "**Agreed Receivables Value**").

E. On or about April 5, 2009, ChipMOS released 2,700 of the Debtors' tested wafers, on which ChipMOS asserted its statutory lien, in exchange for a payment by the Debtors in the sum of $1,894,065.00 (the "**April Purchase**" and the "April Purchase Price"). The April Purchase Price should be applied to reduce the Agreed Receivables Value.

F. On July 2, 2009, ChipMOS filed a Motion for Relief from the Automatic Stay [D.I. 738] (the "**Motion**") to proceed with foreclosure, in satisfaction of the Debtors' unpaid debts, on those certain 20,327 wafers (the "**Wafers**") owned by the Debtors, that are in

---

[2] A copy of the Proposed Order Approving the Stipulation is attached hereto as Exhibit A.

ChipMOS's possession pursuant to the Testing Agreement and against which ChipMOS asserts a statutory possessory lien (the "**ChipMOS lien**") pursuant to Section 1, Articles 928 and 936 of the Civil Code of the Republic of China.

G. On July 23, 2009 and August 3, 2009, the Court entered an Order and Amended Order Approving Stipulation Between the Debtors and ChipMOS Regarding Hearing Continuance [Docket Nos. 867 and 926], continuing the hearing on the Motion (the "**Hearing**") to September 1, 2009 and the objection deadline to August 5, 2009, so as to allow ChipMOS and the Debtors (collectively, the "**Parties**") additional time to meet and confer regarding a consensual resolution of the matters presented by the Motion.

H. On August 5, 2009, the Debtors filed their objection to the Motion [Docket No. 932] (the "**Debtors' Objection**").

I. Thereafter, on August 5, 2009, the Official Committee of Unsecured Creditors (the "**Committee**") filed its Joinder to the Debtors' Objection [Docket No. 933] (the "**Committee Objection**") and the *Ad Hoc* Consortium of Floating Rate Noteholders (the "**FRNs**") filed a Limited Joinder to the Debtors' Objection [Docket No. 934] (the "**FRN Objection**"). On August 7, 2009, HSBC Bank USA, National Association ("**HSBC**") filed a Joinder to the FRN Objection [Docket No. 942] (the "**HSBC Objection**," and collectively, the "**Other Parties**" and the "**Other Objections**").

J. On August 24, 2009, ChipMOS filed its Reply to the Debtors' Objection [Docket No. 1012] (the "**ChipMOS Reply**").

K. In addition to the Wafers, ChipMOS is in possession of approximately seventeen (17) engineering wafers (the "**Foundry Wafers**") owned by Wuhan XinXin Semiconductory Manufacturing Corp. ("**WXIC**"). The Foundry Wafers were manufactured by WXIC pursuant to

a contract with Semiconductor Manufacturing International Corporation ("**SMIC**"), a foundry supplier for the Debtors.

L. ChipMOS also has possession of 291 probe cards owned by the Debtors (the "**Probe Cards**"). The Probe Cards are pieces of machinery which test the functionality and capacity of the Debtors' wafers, and are necessary components of the Debtors' testing processes. The Debtors' ability to manufacture and test its devices and products, a critical feature of its reorganization, relies on maintaining control of the Probe Cards.

M. ChipMOS and the Debtors remain valued business partners, and ChipMOS continues to provide testing services to Spansion LLC post-petition.

N. ChipMOS and the Debtors have reached an agreement to allow ChipMOS limited relief from the automatic stay in order to sell the Wafers under the conditions stipulated to below. The parties believe that the conditions described protect the interests of ChipMOS and of the Debtors and their creditors.

O. The functionality, condition, proper assembly, general merchantability, and fitness for particular use of the Wafers can only be determined and verified by the Debtors' confidential and proprietary final testing and assembly processes ("**Final Testing and Assembly**"). The Debtors are aware, and hereby represent, that Final Testing and Assembly historically yields a certain percentage of embedded chips and Wafers that contain defects or are otherwise unfit for use. The Wafers have not undergone Final Testing and Assembly, and will not undergo Final Testing and Assembly prior to the Sale. Therefore, the Debtors hereby disclose that an indeterminate amount of the embedded chips and Wafers may not perform as intended and may be unfit for use.

4

P. Notwithstanding the above, the Debtors do not presently know of any specific patent or latent defects existing in any of the Chips or Wafers.

Q. ChipMOS also has an additional approximately 9,000 wafers in its possession (the "**Additional Wafers**"), but the Motion does not seek relief from the stay to foreclose on the Additional Wafers. Indeed, the Debtors believe the Additional Wafers were delivered to ChipMOS after these Chapter 11 Cases were commenced, in which case no pre-petition statutory lien would attach to the Additional Wafers.

Now therefore, in consideration of the foregoing recitals, the two Parties hereto stipulate and agree as follows:

## STIPULATION

1. Subject to the approval of the Court, ChipMOS, and its designated broker or representative, shall have limited relief from the automatic stay created by the Chapter 11 Cases to solicit bids for the sale of the Wafers, and to sell the Wafers, to a bidder (the "**Buyer**"), subject to the following conditions:

   a. The Wafers[3] shall be sold (the "**Sale**") according to procedures established under the laws of the Republic of China.

   b. Because the Wafers have not undergone Final Testing and Assembly, and will not undergo Final Testing and Assembly prior to the Sale, the Debtors have not made, and are not now making, any representation or warranty or extending any guaranties, in each case of any kind or character, express or implied, oral or written, past, present or future, to ChipMOS or any potential Buyer with respect to the Wafers or the Chips, including with

respect to their merchantability or fitness for any Buyer's intended use or purpose, or any other representation or warranty. The Debtors specifically disclaim any and all such representations, warranties and guaranties. ChipMOS acknowledges and agrees that it is selling, and will advertise the Sale and advise any potential Buyer that such Buyer is purchasing, the Wafers in their present condition, "AS IS," "WHERE IS" and "WITH ALL FAULTS," and that no patent or latent defect or deficiency in the condition or functionality of the Wafers, whether or not known or when discovered shall create any rights in favor of the Buyer, ChipMOS, or any downstream user.

c. As a condition precedent to the Sale of the Wafers, ChipMOS agrees to notify any potential Buyer that (i) the Wafers have not undergone Final Testing and Assembly; (ii) Final Testing historically discloses a certain percentage of Wafers and Chips that contain defects or are otherwise unfit for use; (iii) the Debtors cannot and do not know of any patent or latent defects in the Wafers nor of the Wafers' general merchantability or fitness for a particular use; (iv) only the Debtors have the capability to perform Final Testing and Assembly; and (v) there are no representations or warranties being made with respect to the Wafers by any party other than ChipMOS, should it choose to make any such representations or warranties, specifically including that there are no manufacturer representations or warranties of any kind, as described herein.

---

[3] Any reference to the Wafers in this Stipulation shall be deemed to include a reference to the chips

d. To the extent that the Wafers are, as of the time of the Sale, marked as, branded as, or in any other way designated as being manufactured by, designed by, or otherwise associated with the Debtors ("**Preexisting Spansion Branding**") such Preexisting Spansion Branding shall not constitute any representation or warranty on behalf of the Debtors, including, without limitation, with respect to the merchantability or fitness for any Buyer's intended use or purpose, of the Wafers or Chips. Furthermore, neither ChipMOS, the Buyer, nor any downstream user may otherwise use any branding, advertising or markings identifying the Wafers, or the Chips, as manufactured by, designed by, or otherwise associated with the Debtors.

e. The Debtors will not be required to provide any services or assistance to Buyer prior to or following the Sale of the Wafers including, but not limited to, (i) technical support, (ii) general information, (iii) wafer assembly, (iv) wafer testing, including the sort test program (the "**Sort Test Program**"), and (v) any other products, programs or processes involving the Debtors' intellectual property.

f. ChipMOS shall not provide any services or assistance to Buyer prior to or following the Sale of the Wafers involving (i) wafer testing, including the Sort Test Program, or (ii) any other products, programs or processes involving the Debtors' intellectual property.

g. If the Sale is to a Buyer other than the Debtors, the Wafers shall be sold free and clear of any and all liens, claims and interests in and to the

---

embedded therein (the "**Chips**"), to the extent the context of this Stipulation requires.

7

LA\2007912.6

Wafers pursuant to 11 U.S.C. § 363(f), and all such liens, claims and interests shall attach to the proceeds of the Sale with the same priority as they existed on the Wafers prior to the Sale.

h.  If the Debtors are not the Buyer, the Debtors do not grant to the Buyer any license to use any of the Debtors' intellectual property which is used in the manufacture of the Wafers or embedded in the Wafers; provided, however, the Debtors hereby agree not to maintain any action against the Buyer for infringement of any of the Debtors intellectual property with respect to the Wafers so long as the Buyer or any assignee from the Buyer limits its use of the Wafers to their intended purpose in the ordinary course of the Buyer or such assignee's business.

i.  ChipMOS, as well as any designated brokers or representatives, agree to provide all prospective Buyers with written notice of the above conditions to the Sale.

2.  The Debtors are entitled to participate in the Sale as a Buyer. ChipMOS agrees not to behave in any manner, or take any action, that has or could have the effect of excluding the Debtors from the Sale or from being a potential Buyer.

3.  The Order approving the Stipulation shall certify that the Debtors have the authority to purchase the Wafers from ChipMOS and in so doing, to redeem the Wafers from the ChipMOS Lien, and any such purchase by the Debtors shall be deemed in the ordinary course of the Debtors' business, notwithstanding that pre-petition debt is being satisfied by the Debtors' purchase of the Wafers. If the Debtors purchase the Wafers as Buyer, such Sale shall be free and clear of the ChipMOS Lien, but subject to any other liens, claims or interests in or to the Wafers.

4. ChipMOS agrees that is has no right to retain or otherwise possess the Foundry Wafers, and will, promptly upon Court approval of this Stipulation, release the Foundry Wafers to SMIC.

5. It is the Debtors' understanding that the FRNs, the Committee and the remaining Other Parties consent to the Sale of the Wafers in accordance with the conditions set forth in this Stipulation. If the FRNs, the Committee or any Other Party does not consent to the terms of the Sale as proposed above, the Debtors shall promptly prepare and submit to the Court a motion seeking approval of this Stipulation (the "Approval Motion") and use their best efforts to have the Approval Motion heard at the earliest date, and to obtain the approval of this Court to such motion and the entry of an Order approving this Stipulation.

6. The parties agree that ChipMOS shall have an allowed general unsecured claim on account of its Receivables Claim in the amount of $69,782,617 less the proceeds of the Sale. The Receivables Claim shall be deemed finally adjudicated and resolved with prejudice by the Court's Order approving this Stipulation. Notwithstanding the foregoing, nothing contained in this Stipulation shall be deemed to be an admission by the Debtors or their estates as to any of the allegations or claims set forth in the Proofs of Claim, and nothing contained herein shall have any precedential, res judicata or other effect on, or with respect to, any claims asserted by any person or entity (other than ChipMOS) against the Debtors. In signing this Stipulation, ChipMOS represents that it owns the Receivables Claim, and that (i) none of such claim has been assigned to a third party and (ii) no other party has any rights thereunder or related thereto.

7. Nothing herein is intended to be or shall be construed as a waiver of the Debtors' rights to dispute any claim or an approval or assumption of any executory agreement, contract or lease under 11 U.S.C. § 365. Further, nothing herein shall be construed as a consent by the

LA\2007912.6

Debtors to grant ChipMOS relief from the automatic stay with respect to the Probe Cards or the Additional Wafers. The Debtors reserve all of their rights to (i) bring actions arising out of the Testing Agreement; and (ii) take any and all necessary action to preserve their intellectual property rights to the fullest extent possible; provided the Debtors will take no action inconsistent with the express terms of this Stipulation, if this Stipulation is approved by the entry of the Court's Approval Order.

8. Each person who executes this Stipulation represents that he or she is duly authorized to execute this Stipulation on behalf of the respective parties hereto and that each such party has full knowledge of and has consented to this Stipulation.

9. This Stipulation may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument and it shall constitute sufficient proof of this Stipulation to present any copy, copies or facsimiles signed by the parties hereto to be charged.

10. This Stipulation, and the terms and conditions contained herein shall inure to the benefit of ChipMOS and its successors and assigns and to the benefit of the Debtors and their successors and assigns.

**[Remainder of Page Intentionally Left Blank]**

11. The Bankruptcy Court shall have exclusive jurisdiction over any action or proceeding with respect to the interpretation or enforcement of this Stipulation or Order.

**IT IS SO STIPULATED**

Dated: _____, 2009

*/s/ Rafael X. Zahralddin-Aravena*

Rafael X. Zahralddin-Aravena (No. 4166)
1105 Market Street, Suite 1700
Wilmington, DE 19801
Telephone: (302) 384-9400
Facsimile: (302) 384-9399
Email: rxza@elliottgreenleaf.com
        and
Sblend A. Sblendorio (Admitted *Pro Hac Vice*)
HOGE, FENTON, JONES & APPEL, INC.
4309 Hacienda Drive, Suite 350
Pleasanton, CA 94588
Telephone: (925) 224-7780
Facsimile: (925) 224-7782
E-mail: sas@hogefenton.com


COUNSEL TO CHIPMOS TECHNOLOGIES, INC

Dated: 10/9, 2009

*/s/ Michael R. Lastowski*

Michael R. Lastowski (No. 3892)
Richard W. Riley (No. 4052)
Sommer L. Ross (No. 4598)
DUANE MORRIS, LLP
1100 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
E-mail: rwriley@duanemorris.com
        slross@duanemorris.com         and
Michael S. Lurey (Admitted *Pro Hac Vice*)
Gregory O. Lunt (Admitted *Pro Hac Vice*)
Kimberly A. Posin (Admitted *Pro Hac Vice*)
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, California 90071-1560
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email: michael.lurey@lw.com
        gregory.lunt@lw.com
        kim.posin@lw.com
COUNSEL TO THE DEBTORS AND
DEBTORS-IN-POSSESSION

# Exhibit A

## Proposed Order Approving Stipulation

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SPANSION INC., et al.,[4] | Case No.: 09-10690 (KJC) |
| Debtors. | Jointly Administered |
| | Related to D.I. 738, 867, 926, 932, 933, 934, 942, and 1012 |

## ORDER APPROVING STIPULATION BETWEEN THE DEBTORS AND CHIPMOS TECHNOLOGIES, INC. REGARDING LIMITED RELIEF FROM THE AUTOMATIC STAY

Upon consideration of the Stipulation Between the Debtors and ChipMOS TECHNOLOGIES, INC. Regarding Limited Relief from the Automatic Stay (the "**Stipulation**"),[5] and the Court having found that notice of the Stipulation is proper; and it further appearing that the relief requested in the Stipulation is in the best interests of the Debtors and their estates, creditors and other parties-in-interest; and after due deliberation and sufficient cause appearing thereof, it is hereby

1. **ORDERED**, that the Stipulation is approved; and it is further

2. **ORDERED**, that ChipMOS, and its designated broker or representative, shall have limited relief from the automatic stay created by the Chapter 11 Cases to solicit bids for the sale of the Wafers, and to sell the Wafers, to a bidder (the "**Buyer**"), subject to the following conditions:

---

[4] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Spansion Inc., a Delaware corporation (8239); Spansion Technology LLC, a Delaware limited liability company (3982); Spansion LLC, a Delaware limited liability company (0482); Cerium Laboratories LLC, a Delaware limited liability company (0482), and Spansion International, Inc., a Delaware corporation (7542). The mailing address for each Debtor is 915 DeGuigne Dr., Sunnyvale, CA 94085.

1

a.  The Wafers[6] shall be sold (the "**Sale**") according to procedures established under the laws of the Republic of China.

b.  Because the Wafers have not undergone Final Testing and Assembly, and will not undergo Final Testing and Assembly prior to the Sale, the Debtors have not made, and, by reason of the Motion, the Stipulation and this Order, are not making, any representation or warranty or extending any guaranties, in each case of any kind or character, express or implied, oral or written, past, present or future, to ChipMOS or any potential Buyer with respect to the Wafers or the Chips, including with respect to their merchantability or fitness for any Buyer's intended use or purpose, or any other representation or warranty. The Debtors' disclaimer of any and all such representations, warranties and guaranties is approved by this Court. ChipMOS will sell, and will advertise the Sale and advise any potential Buyer that such Buyer is purchasing, the Wafers in their present condition, "AS IS," "WHERE IS" and "WITH ALL FAULTS," and that no patent or latent defect or deficiency in the condition or functionality of the Wafers, whether or not known or when discovered shall create any rights in favor of the Buyer, ChipMOS, or any downstream user.

c.  As a condition precedent to the Sale of the Wafers, ChipMOS will notify any potential Buyer that (i) the Wafers have not undergone Final Testing and Assembly; (ii) Final Testing historically discloses a certain percentage

---

[5] Capitalized terms used but not defined herein shall have the same meanings ascribed to them in the Stipulation.

of Wafers and Chips that contain defects or are otherwise unfit for use; (iii) the Debtors cannot and do not know of any patent or latent defects in the Wafers nor of the Wafers' general merchantability or fitness for a particular use; (iv) only the Debtors have the capability to perform Final Testing and Assembly; and (v) there are no representations or warranties being made with respect to the Wafers by any party other than ChipMOS, should ChipMOS choose to make any such representations or warranties, specifically including that there are no manufacturer representations or warranties of any kind, as described herein.

    d.    To the extent that the Wafers are, as of the time of the Sale, marked as, branded as, or in any other way designated as being manufactured by, designed by, or otherwise associated with the Debtors ("**Preexisting Spansion Branding**") such Preexisting Spansion Branding shall not constitute any representation or warranty on behalf of the Debtors, including, without limitation, with respect to the merchantability or fitness for any Buyer's intended use or purpose, of the Wafers or Chips. Furthermore, neither ChipMOS, the Buyer, nor any downstream user may otherwise use any branding, advertising or markings identifying the Wafers, or the Chips, as manufactured by, designed by, or otherwise associated with the Debtors.

    e.    The Debtors will not be required to provide any services or assistance to Buyer prior to or following the Sale of the Wafers including, but not

---

[6] Any reference to the Wafers in this Stipulation shall be deemed to include a reference to the chips

limited to, (i) technical support, (ii) general information, (iii) wafer assembly, (iv) wafer testing, including the sort test program (the "**Sort Test Program**"), and (v) any other products, programs or processes involving the Debtors' intellectual property.

f.  ChipMOS shall not provide any services or assistance to Buyer prior to or following the Sale of the Wafers involving (i) wafer testing, including the Sort Test Program, or (ii) any other products, programs or processes involving the Debtors' intellectual property.

g.  If the Sale is to a Buyer other than the Debtors, the Wafers shall be sold free and clear of any and all liens, claims and interests in and to the Wafers pursuant to 11 U.S.C. § 363(f), and all such liens, claims and interests shall attach to the proceeds of the Sale with the same priority as they existed on the Wafers prior to the Sale.

h.  If the Debtors are not the Buyer, the Debtors are not granting to the Buyer any license to use any of the Debtors' intellectual property which is used in the manufacture of the Wafers or embedded in the Wafers; <u>provided</u>, however, the Debtors shall not to maintain any action against the Buyer for infringement of any of the Debtors intellectual property with respect to the Wafers so long as the Buyer or any assignee from the Buyer limits its use of the Wafers to their intended purpose in the ordinary course of the Buyer or such assignee's business.

---

embedded therein (the "**Chips**"), to the extent the context of this Stipulation requires.

i. ChipMOS, as well as any designated brokers or representatives, shall provide all prospective Buyers with written notice of the above conditions to the Sale; and it is further

3. **ORDERED**, that the Debtors are entitled to participate in the Sale as a Buyer. ChipMOS shall not behave in any manner, or take any action, that has or could have the effect of excluding the Debtors from the Sale or from being a potential Buyer; and it is further

4. **ORDERED**, that the Debtors have the authority to purchase the Wafers from ChipMOS and in so doing, to redeem the Wafers from the ChipMOS Lien, and any such purchase by the Debtors shall be deemed in the ordinary course of the Debtors' business, notwithstanding that pre-petition debt is being satisfied by the Debtors' purchase of the Wafers. If the Debtors purchase the Wafers as Buyer, such Sale shall be free and clear of the ChipMOS Lien, but subject to any other liens, claims or interests in or to the Wafers; and it is further

5. **ORDERED**, that ChipMOS will, promptly upon entry of this Order, release the Foundry Wafers to SMIC; and it is further

6. **ORDERED**, that ChipMOS shall have an allowed general unsecured claim on account of its Receivables Claim in the amount of $69,782,617 less the proceeds of the Sale; and it is further

7. **ORDERED**, that the Receivables Claim shall be deemed finally adjudicated and resolved with prejudice. Notwithstanding the foregoing, nothing contained in the Stipulation or this Order shall be deemed to be an admission by the Debtors or their estates as to any of the allegations or claims set forth in the Proofs of Claim, and nothing contained herein shall have any precedential, res judicata or other effect on, or with respect to, any claims asserted by any person or entity (other than ChipMOS) against the Debtors; and it is further

8. **ORDERED,** that nothing herein is intended to be or shall be construed as a waiver of the Debtors' rights to dispute any claim or an approval or assumption of any executory agreement, contract or lease under 11 U.S.C. § 365. Further, nothing herein shall be construed as a consent by the Debtors to grant ChipMOS relief from the automatic stay with respect to the Probe Cards or the Additional Wafers. The Debtors reserve all of their rights to (i) bring actions arising out of the Testing Agreement; and (ii) take any and all necessary action to preserve their intellectual property rights to the fullest extent possible; provided the Debtors will take no action inconsistent with the express terms of the Stipulation or this Order; and it is further

9. **ORDERED,** that the Stipulation, and the terms and conditions contained therein, and this Order, and the terms and conditions contained herein, shall inure to the benefit of ChipMOS and its successors and assigns and to the benefit of the Debtors and their successors and assigns; and it is further

10. **ORDERED,** that this Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.


Dated: _____, 2009
       Wilmington, Delaware

                                                            Kevin J. Carey
                                                            Chief United States Bankruptcy Judge