# Exhibit B

# Proposed Order

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SPANSION INC., *et al.*,[4] | Case No.: 09-10690 (KJC) |
| Debtors. | Jointly Administered |
| | Related to D.I. 738, 867, 926, 932, 933, 934, 942, and 1012 |

## ORDER APPROVING STIPULATION BETWEEN THE DEBTORS AND CHIPMOS TECHNOLOGIES, INC. REGARDING LIMITED RELIEF FROM THE AUTOMATIC STAY

Upon consideration of the Stipulation Between the Debtors and ChipMOS TECHNOLOGIES, INC. Regarding Limited Relief from the Automatic Stay (the "**Stipulation**"),[5] and the Court having found that notice of the Stipulation is proper; and it further appearing that the relief requested in the Stipulation is in the best interests of the Debtors and their estates, creditors and other parties-in-interest; and after due deliberation and sufficient cause appearing thereof, it is hereby

1. **ORDERED**, that the Stipulation is approved; and it is further

2. **ORDERED**, that ChipMOS, and its designated broker or representative, shall have limited relief from the automatic stay created by the Chapter 11 Cases to solicit bids for the sale of the Wafers, and to sell the Wafers, to a bidder (the "**Buyer**"), subject to the following conditions:

---

[4] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Spansion Inc., a Delaware corporation (8239); Spansion Technology LLC, a Delaware limited liability company (3982); Spansion LLC, a Delaware limited liability company (0482); Cerium Laboratories LLC, a Delaware limited liability company (0482), and Spansion International, Inc., a Delaware corporation (7542). The mailing address for each Debtor is 915 DeGuigne Dr., Sunnyvale, CA 94085.

1

a. The Wafers[6] shall be sold (the "**Sale**") according to procedures established under the laws of the Republic of China.

b. Because the Wafers have not undergone Final Testing and Assembly, and will not undergo Final Testing and Assembly prior to the Sale, the Debtors have not made, and, by reason of the Motion, the Stipulation and this Order, are not making, any representation or warranty or extending any guaranties, in each case of any kind or character, express or implied, oral or written, past, present or future, to ChipMOS or any potential Buyer with respect to the Wafers or the Chips, including with respect to their merchantability or fitness for any Buyer's intended use or purpose, or any other representation or warranty. The Debtors' disclaimer of any and all such representations, warranties and guaranties is approved by this Court. ChipMOS will sell, and will advertise the Sale and advise any potential Buyer that such Buyer is purchasing, the Wafers in their present condition, "AS IS," "WHERE IS" and "WITH ALL FAULTS," and that no patent or latent defect or deficiency in the condition or functionality of the Wafers, whether or not known or when discovered shall create any rights in favor of the Buyer, ChipMOS, or any downstream user.

c. As a condition precedent to the Sale of the Wafers, ChipMOS will notify any potential Buyer that (i) the Wafers have not undergone Final Testing and Assembly; (ii) Final Testing historically discloses a certain percentage

---

[5] Capitalized terms used but not defined herein shall have the same meanings ascribed to them in the Stipulation.

of Wafers and Chips that contain defects or are otherwise unfit for use; (iii) the Debtors cannot and do not know of any patent or latent defects in the Wafers nor of the Wafers' general merchantability or fitness for a particular use; (iv) only the Debtors have the capability to perform Final Testing and Assembly; and (v) there are no representations or warranties being made with respect to the Wafers by any party other than ChipMOS, should ChipMOS choose to make any such representations or warranties, specifically including that there are no manufacturer representations or warranties of any kind, as described herein.

d. To the extent that the Wafers are, as of the time of the Sale, marked as, branded as, or in any other way designated as being manufactured by, designed by, or otherwise associated with the Debtors ("**Preexisting Spansion Branding**") such Preexisting Spansion Branding shall not constitute any representation or warranty on behalf of the Debtors, including, without limitation, with respect to the merchantability or fitness for any Buyer's intended use or purpose, of the Wafers or Chips. Furthermore, neither ChipMOS, the Buyer, nor any downstream user may otherwise use any branding, advertising or markings identifying the Wafers, or the Chips, as manufactured by, designed by, or otherwise associated with the Debtors.

e. The Debtors will not be required to provide any services or assistance to Buyer prior to or following the Sale of the Wafers including, but not

---

[6] Any reference to the Wafers in this Stipulation shall be deemed to include a reference to the chips

limited to, (i) technical support, (ii) general information, (iii) wafer assembly, (iv) wafer testing, including the sort test program (the "**Sort Test Program**"), and (v) any other products, programs or processes involving the Debtors' intellectual property.

f.  ChipMOS shall not provide any services or assistance to Buyer prior to or following the Sale of the Wafers involving (i) wafer testing, including the Sort Test Program, or (ii) any other products, programs or processes involving the Debtors' intellectual property.

g.  If the Sale is to a Buyer other than the Debtors, the Wafers shall be sold free and clear of any and all liens, claims and interests in and to the Wafers pursuant to 11 U.S.C. § 363(f), and all such liens, claims and interests shall attach to the proceeds of the Sale with the same priority as they existed on the Wafers prior to the Sale.

h.  If the Debtors are not the Buyer, the Debtors are not granting to the Buyer any license to use any of the Debtors' intellectual property which is used in the manufacture of the Wafers or embedded in the Wafers; provided, however, the Debtors shall not to maintain any action against the Buyer for infringement of any of the Debtors intellectual property with respect to the Wafers so long as the Buyer or any assignee from the Buyer limits its use of the Wafers to their intended purpose in the ordinary course of the Buyer or such assignee's business.

---

embedded therein (the "**Chips**"), to the extent the context of this Stipulation requires.

        i.        ChipMOS, as well as any designated brokers or representatives, shall provide all prospective Buyers with written notice of the above conditions to the Sale; and it is further

3.     **ORDERED**, that the Debtors are entitled to participate in the Sale as a Buyer. ChipMOS shall not behave in any manner, or take any action, that has or could have the effect of excluding the Debtors from the Sale or from being a potential Buyer; and it is further

4.     **ORDERED**, that the Debtors have the authority to purchase the Wafers from ChipMOS and in so doing, to redeem the Wafers from the ChipMOS Lien, and any such purchase by the Debtors shall be deemed in the ordinary course of the Debtors' business, notwithstanding that pre-petition debt is being satisfied by the Debtors' purchase of the Wafers. If the Debtors purchase the Wafers as Buyer, such Sale shall be free and clear of the ChipMOS Lien, but subject to any other liens, claims or interests in or to the Wafers; and it is further

5.     **ORDERED,** that ChipMOS will, promptly upon entry of this Order, release the Foundry Wafers to SMIC; and it is further

6.     **ORDERED,** that ChipMOS shall have an allowed general unsecured claim on account of its Receivables Claim in the amount of $69,782,617 less the proceeds of the Sale; and it is further

7.     **ORDERED,** that the Receivables Claim shall be deemed finally adjudicated and resolved with prejudice. Notwithstanding the foregoing, nothing contained in the Stipulation or this Order shall be deemed to be an admission by the Debtors or their estates as to any of the allegations or claims set forth in the Proofs of Claim, and nothing contained herein shall have any precedential, res judicata or other effect on, or with respect to, any claims asserted by any person or entity (other than ChipMOS) against the Debtors; and it is further

LA\2007912.6

8. **ORDERED,** that nothing herein is intended to be or shall be construed as a waiver of the Debtors' rights to dispute any claim or an approval or assumption of any executory agreement, contract or lease under 11 U.S.C. § 365. Further, nothing herein shall be construed as a consent by the Debtors to grant ChipMOS relief from the automatic stay with respect to the Probe Cards or the Additional Wafers. The Debtors reserve all of their rights to (i) bring actions arising out of the Testing Agreement; and (ii) take any and all necessary action to preserve their intellectual property rights to the fullest extent possible; <u>provided</u> the Debtors will take no action inconsistent with the express terms of the Stipulation or this Order; and it is further

9. **ORDERED,** that the Stipulation, and the terms and conditions contained therein, and this Order, and the terms and conditions contained herein, shall inure to the benefit of ChipMOS and its successors and assigns and to the benefit of the Debtors and their successors and assigns; and it is further

10. **ORDERED,** that this Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

Dated: _____, 2009
       Wilmington, Delaware

                                                    _____
                                                    Kevin J. Carey
                                                    Chief United States Bankruptcy Judge