# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SPANSION INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-10690 (KJC)<br><br>Jointly Administered<br><br>Hearing Date: November 24, 2009 at 10:00 a.m. (ET)<br>Objection Deadline: November 17, 2009 at 4:00 p.m. (ET) |

## MOTION OF THE DEBTORS FOR AN ORDER ENFORCING THE COURT'S ORDER, PURSUANT TO 11 U.S.C. § 365, AUTHORIZING THE REJECTION OF AN EXECUTORY CONTRACT BETWEEN SPANSION INC. AND APPLE, INC. [D.I. 1092]

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") hereby file this motion (the "**Motion**") for entry of an order, in substantially the form attached hereto as Exhibit A, enforcing the Court's order, dated September 1, 2009, pursuant to 11 U.S.C. § 365, which authorized the rejection of and terminated an executory contract, by and between Spansion Inc. ("**Spansion**") and Apple, Inc. ("**Apple**") [D.I. 1092]. In support of the Motion, the Debtors respectfully state as follows:

### JURISDICTION

1.  The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334 and pursuant to the Order. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.  The statutory basis for the relief requested herein is section 365 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**").

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Spansion Inc., a Delaware corporation (8239); Spansion Technology LLC, a Delaware limited liability company (3982); Spansion LLC, a Delaware limited liability company (0482); Cerium Laboratories LLC, a Delaware limited liability company (0482), and Spansion International, Inc., a Delaware corporation (7542). The mailing address for each Debtor is 915 DeGuigne Dr., Sunnyvale, CA 94085.

DM3\1174284.6

## BACKGROUND

### A. Introduction

3. On March 1, 2009 (the "**Petition Date**"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"). The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On March 4, 2009, the Court entered an Order directing the joint administration of the Chapter 11 Cases under the case of Spansion Inc., Case No. 09-10690 [D.I. 58].

5. On March 12, 2009, the Office of the United States Trustee appointed an official committee of unsecured creditors for the Chapter 11 Cases (the "**Creditors Committee**") [D.I. 106].

### B. The Debtors' Business

6. The Debtors design, develop, manufacture, market, license and sell flash memory solutions ("**Flash Memory**"). The Debtors sell Flash Memory to leading equipment manufacturers in the mobile phone, consumer electronics and automotive electronics markets. The Debtors sell Flash Memory directly to customers and through distributors. The Debtors and the foreign subsidiaries of Spansion LLC have facilities in the United States, the United Kingdom, Japan, China, Thailand, Malaysia, Finland, Germany, Italy, Korea, the Netherlands, Sweden, and Taiwan.

7. The Debtors are indebted under the following prepetition credit arrangements: (1) Spansion LLC is a borrower under a secured credit facility with Bank of America; (2) Spansion LLC is the issuer of the Senior Secured Floating Rate Notes Due 2013; (3) Spansion LLC is the issuer of 11.25% Senior Notes Due 2016, which are unsecured; (4)

Spansion LLC is the issuer of the 2.25% Exchangeable Senior Subordinated Debentures Due 2016, which are unsecured; and (5) Spansion LLC is a borrower on an uncommitted revolving line of credit with UBS Bank USA which is secured by auction rate securities owned by Spansion LLC.

## THE SAMSUNG LITIGATIONS[2]

8. As of the end of 2008, the Debtors were the third largest provider of Flash Memory in the world, behind Samsung Electronics Co., Ltd. ("**Samsung**") and Toshiba. To attain that market share, the Debtors have invested approximately $2 billion in research and development. The Debtors currently hold approximately 4,000 patents and patent applications. Among other things, the Debtors' patents include those which they believe are fundamental to so-called "floating gate" technology, which is the foundation for approximately 90 percent of the current Flash Memory market.

9. In November 2008, the Debtors filed a patent infringement complaint against Samsung with the International Trade Commission (the "**ITC**") seeking the exclusion from the United States market of well over one hundred million mp3 players, cell phones, digital cameras and other consumer electronic devices containing Samsung's flash memory components. The Debtors' action against Samsung in the ITC is referred to as International Trade Commission Investigation No. 337-TA-664 (the "**ITC Action**"). The Debtors allege in

---

[2] The factual statements made herein are supported by the Declaration of Ali Pourkeramati which is attached as Exhibit C to the Motion Of The Debtors For An Order Pursuant To 11 U.S.C. §§ 105(a) and 363(b) And Bankruptcy Rule 9019 Authorizing Settlement Of Litigation With, And License Of Intellectual Property To, Samsung Electronics Co., Ltd. [D.I. 225] (the "**Samsung Rule 9019 Motion**").

the ITC Action that these components infringe on four of the Debtors' patents relating to "floating gate" technology.[3]

10. In the ITC Action, the Debtors were also required to name, and did name, the downstream users of Samsung's infringing devices, including Apple.

### THE AGREEMENT

11. On or about February 10, 2009, Spansion and Apple entered into a letter agreement (the "**Agreement**"), a copy of which is attached hereto as Exhibit B. Under the Agreement, Spansion agreed to dismiss the ITC Action against Apple. In exchange, Apple agreed that:

> Spansion will remain primary supplier on current platforms where Spansion is qualified for the life-time of the product and will also be considered for future platforms given the following:
> - Spansion possess (sic) or develops the products Apple requests to meet design, qualification, and production schedules
> - Spansion provides best commercial terms (Quality, Delivery, Pricing, etc.)

Agreement, Exhibit B at 1.

12. The Debtors determined, in the exercise of their sound business judgment, that the Agreement is no longer in the best interests of the Debtors' estates and should be rejected. The reasons underlying the Debtors' business judgment included the fact that Spansion's business relationship with Apple is not sufficiently profitable to justify Spansion's

---

[3] Simultaneously with the ITC Action, the Debtors filed a patent infringement lawsuit against Samsung in the United States District Court for the District of Delaware, designated as Civil Action No. 08-855-SLR (the "**Delaware Action**"), seeking both an injunction and damages for alleged patent violations relating to Samsung Flash Memory. Spansion has asserted six patents in the Delaware Action, all of which are different from those at issue in the ITC Action. Samsung has filed counter-claims against the Debtors in the Delaware Action alleging that the Debtors are infringing on five Samsung patents and seeking an injunction and damages for such alleged violations. In addition, in January 2009, Samsung filed a patent infringement action against the Debtors' Japanese subsidiary, Spansion Japan Limited ("**Spansion Japan**"), in Tokyo District Court, entitled H21(WA) 1989 and H21(WA) 1986 (the "**Japanese Action**," and together with the ITC Action and the Delaware Action, the "**Actions**"), seeking (i) an injunction against Spansion Japan from manufacturing and selling certain products that allegedly infringe on Samsung's intellectual property as well as (ii) the destruction of all such products.

4

dismissing Apple from the ITC Action. The Debtors concluded that the rejection of the Agreement is in the best interest of the Debtors' creditors because the Agreement provides no continuing benefit to the Debtors' estates.

13. On July 20, 2009, the Debtors filed a motion (the "**Motion to Reject**") to reject the Agreement [D.I. 839], to which Apple objected (the "**Objection**") [D.I. 1024].

14. On September 1, 2009, the Court conducted a hearing (the "**Hearing**") on the Motion to Reject, at the conclusion of which, the Court entered the Order, which stated:

> 1. **ORDERED**, that the Motion is GRANTED; and it is further
>
> 2. **ORDERED**, that the Objection is OVERRULED; and it is further
>
> 3. **ORDERED**, that the Agreement, to the extent it is an executory contract, is hereby rejected; and it is further
>
> 4. **ORDERED, that the filing and service of the Motion and this Order upon Apple, Inc. shall constitute adequate written notice of termination thereof**; and it is further
>
> 5. **ORDERED, that Apple must file claims (if any) for damages arising as a result of the rejection of the Agreement within thirty (30) days of the entry of this Order**; and it is further
>
> 6. **ORDERED**, that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Order at 2 (emphasis added).

15. Despite the clear language of the Order, Apple has taken the position that the Agreement is not terminated. Apple contends that the Agreement is a covenant not to sue, which Apple argues is tantamount to a license. Apple further contends that, as a "licensee" of intellectual property from a debtor in possession, Apple may elect not to treat this "license" as

5

terminated and may, instead, elect to retain its rights under the license pursuant to 11 U.S.C. §365(n). Apple has gone so far as to file in this Court a "Notice of Election Under 11 U.S.C. §365(n)" [D.I. 1240] (the "**Notice of Election**"), a copy of which is attached hereto as Exhibit C, and to seek to amend its answer in the ITC Action to allege a defense of an express license.[4] A copy of Apple, Inc.'s Motion for Leave to Amend its Response to the Complaint and Notice of Investigation (the "**Motion to Amend**"), filed with the ITC, is attached hereto as Exhibit D. The Debtors have objected to Apple's Motion to Amend, a copy of which is attached hereto as Exhibit E.

### RELIEF REQUESTED

16. The filing of the "election," as well as the Motion to Amend are violations of the Order[5] because the Order expressively provides that the Agreement is "terminat[ed]". Apple did not appeal the Order and did not move to alter or amend the Order. Apple no longer can do so. Fed. R. Bankr. P. 8002, 9023. The Court should strike Apple's "election" under 11 U.S.C. § 365(n).

### BASIS FOR RELIEF REQUESTED

17. Section 365(n) of the Bankruptcy Code provides, in pertinent part, as follows:

> (n)(1) If the trustee rejects an executory contract under which the debtor is a licensor of a right to intellectual property, the licensee under such contract may elect—
>
> (a) **to treat such contract as terminated** by such rejection if such rejection by the trustee amounts to such a breach as

---

[4] The Rejection Order provides that the Court retains jurisdiction over all matters arising from or relating to the Order. By moving in the ITC Action to amend its pleadings to assert the existence of an express license, Apple is attempting an end-run around the Order in order to assert a position inconsistent with the Order (*i.e.*, that the terms of the Agreement include an existing license for the benefit of Apple).

[5] The Debtors reserve the right to seek appropriate sanctions for Apple's violation of the Order.

would entitle the licensee to treat such contract as terminated by virtue of its own terms, applicable nonbankruptcy law, or an agreement made by the licensee with another entity; **or**

(b) **to retain its rights** (including a right to enforce any exclusivity provision of such contract, but excluding any other right under applicable nonbankruptcy law to specific performance of such contract) under such contract and under any agreement supplementary to such contract, to such intellectual property (including any embodiment of such intellectual property to the extent protected by applicable nonbankruptcy law), as such existed immediately before the case commenced, for—

(i) the duration of such contract; and

(ii) any period for which such contract may be extended by the licensee as of right under applicable nonbankruptcy law.

11 U.S.C. § 356(n) (emphasis added).

18. In the Motion to Reject and at the Hearing, the Debtors presented evidence that, in the exercise of their reasonable business judgment, it was in the Debtors' best interest to "reject" the Agreement so as to be able to continue to pursue claims against Apple before the ITC. In the Objection, Apple never argued that it was a licensee of the technology at issue in the ITC Action.[6] Instead, Apple argued that the "benefits" provided to Spansion under the

---

[6] In fact, in the Objection, Apple attempted to explain why Apple was *not* a licensee:

> The dispute here is entirely between Spansion and Samsung and, more specifically, Spansion's patents and the internal implementation of Samsung's Flash memory chips - the technical details of which Apple has no specialized knowledge. This is evidenced, for example, by the fact that the basis of the now-rejected settlement of the ITC Action was an agreement between Spansion and Samsung in which Samsung agreed to pay $70 million to Spansion – no money was sought or obtained from Apple in the Settlement Agreement. See, e.g., Spansion Press Release. **This is entirely consistent with licensing arrangements in the semiconductor memory business. Patent holders in the memory business seek licenses from the manufacturers and sellers of the memory chips themselves (including DRAM and Flash memory) and not from downstream customers [*e.g.*, Apple]**. Indeed, despite the robust patent licensing activity at the manufacturer level in the memory business, Apple has

7

Agreement outweighed any advantage of pursuing Apple before the ITC. The Court rejected this argument and the other arguments set forth in the Objection and entered the Order. It was both the Debtors' and Apple's expectation that the Debtors would continue to pursue Apple before the ITC. Indeed, Apple recognized that the Courts granting of the Rejection Motion would result in "maintaining Apple in the ITC action." Objection at 4

19. The Order does not authorize Apple to make an "election" under 11 U.S.C. § 365(n). Indeed, the Order provides that the Agreement is "terminat[ed]" and requires Apple to file any damage claim within thirty (30) days. Nevertheless, Apple has filed the Notice of Election, in which Apple implies that rejection of the Agreement was a futility and this Court's Order has no effect on the ITC Action because the Agreement purportedly was a covenant not to sue, which is, according to Apple, tantamount of a license to use the Debtors' intellectual property. In short, after a full hearing on the merits, Apple now contends that the Motion to Reject was a futility because any rejection of the Agreement will still leave the Apple "license" in place so long as Apple elects to retain its rights in accordance with 11 U.S.C. § 365(n).

20. However, Apple ignores the clear language of the Order (which Apple's counsel approved during the Hearing and prior to its being entered), which provides that the Agreement is "terminat[ed]" and that any claim for damages be filed within thirty (30) days of the entry of the order. The express language of the Order evidences the parties' intention to treat the rejected Agreement as "terminat[ed]". The express terms of the Order, which is final and non-appealable, preclude Apple's subsequent attempted election under 11 U.S.C. § 365(n)(1)(b).

---

> never been named as a party in a patent infringement action brought by any other memory manufacturer. Spansion's naming of Apple in its ITC Action against Samsung is simply unconventional and counter-productive.

Objection at 11 (emphasis added).

21. Further, the doctrine of claim preclusion bar precludes Apple's attempted election under 11 U.S.C. § 365(n)(b). After participating in the Hearing on the Motion to Reject, in which all parties argued that the Court should assume that rejection of the Agreement would result in Spansion being able to pursue claims against Apple in the ITC Action, Apple should not be permitted to raise an argument that should have been raised at the Hearing (*i.e.*, that rejection of the Agreement was not a reasonable exercise of business judgment since a rejection for the purpose of pursuing claims against Apple was a futility).

22. In *Ahl v. Mahan (In re Eastern Minerals & Chemicals Co.)*, 225 F.3d 330, 337 (3d Cir. 2000), the court described the parameters of claim preclusion as follows:

> Claim preclusion doctrine must be properly tailored to the unique circumstances that arise when the previous litigation took place in the context of a bankruptcy case. Difficult as it may be to define the contours of a cause of action in a bankruptcy setting, we conclude that a claim should not be barred unless the factual underpinnings, theory of the case, and relief sought against the parties to the proceeding are so close to a claim actually litigated in the bankruptcy that it would be unreasonable not to have brought them both at the same time in the bankruptcy forum.

225 F.3d at 370. *See also Alary Corp. v. Sims (In re Associated Vintage Group, Inc.)*, 283 B.R. 549, 559 (9th Cir. B.A.P. 2002) (citing *Eastern Minerals & Chemicals*, 225 F. 3d at 337).

23. Here, the factual underpinnings, legal theory and requested relief in the Motion to Reject all revolved around the issue of whether the Debtors reasonably exercised their business judgment in deciding to reject the Agreement in order to continue to pursue litigation against Apple. Through its "election," Apple for the first time raises an argument that it could have raised in connection with the Motion to Reject, the Objection, and the Hearing, asserting that rejection is a futility because Apple purportedly is a licensee of the technology at issue in the ITC Action. The doctrine of claim preclusion bars Apple from asserting its improper "election." *Cf. LaRoche Industries, Inc. v. General Am. Transp. Corp. (In re LaRoche Indus., Inc.)*, 284 B.R.

406, 410 (Bankr. D. Del. 2002) (holding that, where the debtor succeeded in its partial objection to a claim, the debtor was thereafter precluded from pursuing the creditor under 11 U.S.C. § 547 to avoid and recover an alleged preference, since "[a] preference action is part and parcel of the claims allowance process.")

24. The Court should therefore enforce the Order and strike the Notice of Election.

### RESERVATION OF RIGHTS

25. Nothing contained herein should be construed as a waiver of any of the Debtors' rights, claims, defenses or counterclaims with respect to the rejected and terminated Agreement including, without limitation, the right to assert that the Agreement does not constitute a license, the Agreement is voidable as a fraudulent conveyance and the Agreement fails for lack of consideration.

### NOTICE

26. No trustee or examiner has been appointed in the Chapter 11 Cases. The Debtors will provide notice of this Motion to: (a) the United States Trustee; (b) Apple; (c) counsel to the administrative agent for the Debtors' prepetition lenders; (d) counsel to the *ad-hoc* committee of holders of Spansion LLC's Senior Secured Floating Rate Notes due 2013, Robert J. Stark, Brown Rudnick LLP, Seven Times Square, New York, NY 10036; (e) the Trustee for Spansion LLC's Senior Secured Floating Rate Notes due 2013; (f) UBS Bank USA; (g) counsel for the Creditors Committee; (h) the Internal Revenue Service; and (i) any party in interest that has requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested, the Debtors submit that no further notice is required or needed under the circumstances.

27. A copy of the Motion is available on the Court's website at www.deb.uscourts.gov and at http://chapter11.epiqsystems.com/spansion.

### NO PRIOR APPLICATION

28. No prior motion for the relief requested herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the proposed Order, substantially in the form attached hereto as Exhibit A, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: October 16, 2009  Respectfully Submitted,
Wilmington, Delaware

/s/ *Michael R. Lastowski*
Michael R. Lastowski (No. 3892)
Richard W. Riley (No. 4052)
Sommer L. Ross (No. 4598)
DUANE MORRIS, LLP
1100 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
E-mail: mlastowski@duanemorris.com
rwriley@duanemorris.com
slross@duanemorris.com

ATTORNEYS FOR THE DEBTORS AND
DEBTORS-IN-POSSESSION