

RICHARDS
LAYTON &
FINGER

Jason M. Madron
302-651-7595
Madron@rlf.com

March 8, 2010

**VIA HAND DELIVERY**

The Honorable Kevin J. Carey
United States Bankruptcy Court
 for the District of Delaware
824 North Market Street
5th Floor
Wilmington, DE 19801

      Re:    **Spansion Inc., *et al.*, Case No. 09-10690 (KJC)**

Dear Judge Carey:

      On behalf of Bank of America, N.A. ("Bank of America"), we submit this letter in support of confirmation of the *Second Amended Joint Plan of Reorganization Dated February 28, 2010 (as Amended)* (the "Plan") filed by Spansion, Inc. and its affiliated debtors in possession (collectively, the "Debtors"). Although Bank of America appreciates that the Court is faced with complex valuation and other Plan related disputes, for the reasons set out below, Bank of America nevertheless asserts that it is in the best interest of the Debtors' estates that the Plan be confirmed as quickly as possible and that the process not be further impeded or delayed. To not confirm the Plan would upset a delicate and valuable series of agreements and waivers that benefit the Debtors and all creditor constituencies.

      Given that Bank of America has not been one of the more active parties in the Debtors' bankruptcy cases, some background information may be helpful. Bank of America, the sole member of Class 1 of the Plan, was the Debtors' pre-petition revolving loan secured lender. Bank of America shared collateral (albeit with different priorities) with the Floating Rate Noteholders (the "FRNs") and were parties with them to an Intercreditor Agreement.

      Prior to the commencement of the Debtors' bankruptcy cases, in response to their significant financial problems, Bank of America had ceased making advances. As a result, by the time the petitions were filed, the Debtors' obligations to Bank of America had been reduced primarily to a contingent claim of approximately $2.5 million for outstanding letters of credit and, more significantly, a contingent claim of approximately $26 million on account of Bank of America's indemnification of losses that might be suffered by its affiliate Banc of America Leasing & Capital, LLC ("BALC"), which had leased a substantial amount of technical equipment to the Debtors (the "Indemnification Obligation").

■ ■ ■

Even during the relatively short pendency of the Debtors' bankruptcy cases, the obligations due to Bank of America were substantially reduced as letters of credit expired and the Debtors performed under the terms of their equipment leases with BALC, thereby reducing the Indemnification Obligations. In fact, as of the record date for voting on the Plan, the maximum amount of Bank of America's claim had been more than halved to $12.3 million.

Late last year, due to the improvements in the Debtors' operations and management, Bank of America entered into negotiations with the Debtors to revive post-confirmation the revolving loan facility it had provided pre-petition. Conditioned on confirmation of the Plan and certain other matters, Bank of America has now agreed to provide the Debtors with a $65 million revolving loan facility as part of the exit financing package under which Barclays Bank PLC will provide a $450 million term loan. The Barclays' Bank PLC's term loan is conditioned on the existence of Bank of America's revolving loan.

In connection with the new loan and as expressly required by the Plan, Bank of America has also entered into an agreement with the Debtors conditioned on the Plan becoming effective that provides, among other things, for the payment or transition of its pre-petition claims into the exit revolving financing and the assumption of the leases, thereby eliminating the Indemnification Obligation (*see Stipulation for Treatment of Class 1 Claims In Aid of Confirmation of Second Amended Plan of Reorganization*, Docket No. 2944, filed on February 24, 2010) (the "Plan Stipulation"). In accordance with the requirements of the Plan, the Plan Stipulation was approved by the Senior Noteholders and, more importantly for purposes of the discussion below, the Official Committee of Unsecured Creditors (the "Committee").

The only proverbial fly in the ointment of these beneficial arrangements is that, on November 16, 2009, the Committee filed its *Motion for an Order Authorizing Official Committee of Unsecured Creditors Pursuant to Sections 1103 and 1109 of the Bankruptcy Code to Commence and Prosecute Certain Claims of Debtors' Estates* [Docket No. 1662] (the "Committee's Motion"). The Committee's Motion is directed at Bank of America and BALC and seeks to assert a preference claim against them related to the Indemnification Obligation.

On January 13, 2010, Bank of America and BALC filed their *Objection of Bank of America, N.A. and Banc of America Leasing & Capital, LCC to Motion for an Order Authorizing Official Committee of Unsecured Creditors Pursuant to Sections 1103 and 1109 of the Bankruptcy Code to Commence and Prosecute Certain Claims of Debtors' Estates* [Docket No. 2281], asserting that the claim the Committee sought to assert was waived by it in the *Stipulation and Order By and Among the Official Committee of Unsecured Creditors, Bank of America, N.A., as Agent and Lender, and the Debtors* [Docket No. 1126], that in any event the Committee has not met the standards set by *Official Comm. Of Unsecured Creditors of Cybergenics Corp. ex rel Cybergenics Corp. v. Chineryl (In re Cybergenics Corp.)* 530 F.3d 548 (3rd Cir. 2003), and that the Committee's analysis that a recoverable preference existed was in error.

Bank of America also asserted in its Objection to the Committee's Motion, and reasserts here, that allowing the Committee's Motion to proceed would prevent confirmation. As long as

the Committee's Motion is pending, there is no effective Plan Stipulation. If there is no Plan Stipulation, an express condition precedent for confirmation of the Plan is not met. (*See Plan*, § 10.1(4)).

Further, without the Plan Stipulation, Bank of America will not provide the exit revolving financing, which is a condition precedent to Barclays Bank PLC providing the exit term financing, which in turn is necessary to retire the FRN obligations. Even complicating the situation further, if the Committee's Motion proceeds, Bank of America has the right to make demand for indemnification on the FRNs under the Intercreditor Agreement. It is unreasonable to assume the FRNs would be prepared to release their liens in the face of such a claim. While the failure to repay the FRNs in full might not in of itself defeat confirmation, it would certainly defeat the expectations of the unsecured creditors and the rights offering participants.

Finally, if there is no Plan Stipulation, the Committee and Bank of America will proceed with the hearing on the Committee's Motion and, if it is granted, will embark on protracted and expensive litigation.

On the other hand, the Plan Stipulation, which as noted has been approved by the Committee, provides for an exchange of releases between the parties resulting is the termination of the Committee's Motion. In fact, the Committee has expressly agreed that if the Plan is confirmed and becomes effective, the Committee' Motion will be deemed **automatically** withdrawn.[1] Thus, under the Plan Stipulation, which requires that the Plan be confirmed, all issues between the Debtors and Bank of America, between Bank of America and the Committee, and between Bank of America and the FRNs will be neatly, economically, and beneficially resolved in a fully consensual manner. Whatever problems may still persist, at least these issues in the Debtors' contentious bankruptcy case can be put to rest.

For these reasons, Bank of America again urges the Court to confirm the Plan so that the Plan Stipulation can take effect.

Respectfully,

Jason M. Madron

JMM/lma
Enclosures

cc: All counsel of record pursuant to Fed. R. Bankr. P. 2002 (via U.S. first class mail)

---

[1] Even if the Committee had not so agreed, confirmation of the Plan will render the Committee's Motion moot. *In re Exide Technologies*, 303 B.R. 48, 67 (Bankr. D. Del. 2003).