# IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7974
FACSIMILE (310) 556-5273
hsteinberg@irell.com

March 8, 2010

Hon. Kevin J. Carey, Chief Judge
United States Bankruptcy Court
824 N. Market Street, 5th Floor
Wilmington, DE 19801

Re: In the Matter of Spansion Inc., et al., No. 09-10690(KJC)

Your Honor:

Tessera, Inc. ("Tessera") submits this post-confirmation hearing letter brief in accordance with the Court's ruling at the March 2, 2010 Confirmation Hearing in the above-referenced matter. Tessera raises two issues with respect to the Debtors' request to confirm their plan:

1. Should the amount of Tessera's estimated administrative claim be paid on the effective date of the plan or reserved for in conjunction with the plan confirmation process?; and

2. Were there irregularities with respect to the voting solicitation and tabulation process, and if so, does that require re-solicitation of votes?

## A reserve should be set aside in the amount of Tessera's estimated administrative claim

The facts pertaining to Tessera's estimated administrative claim are not in dispute. Tessera filed an administrative claim for the entire post-petition period of $96,765,070. Following an estimation hearing, the Court estimated Tessera's administrative claim at $4,232,986.13 for the period of March 1, 2009 to July 20, 2009 (the "Estimated Claim").

Section 1129(a)(9)(A) of the Code requires that as a condition of confirmation, all allowed administrative claims must be paid on the effective date of the plan absent the consent of the administrative claimants to different treatment. This section does not address the manner in which disputed administrative claims must be treated under a plan. Some courts have noted that even disputed administrative claims must be paid on the effective date of the plan. *In re TI Acquisitions, LLC*, 410 B.R. 742, 750 n. 5 (Bankr. N.D. Ga. 2009). Absent consent of the creditor, it has been held that payment of an administrative expense claim in the ordinary course of the debtor's business – as this plan proposes in Article IV, § 4.2(1)(a) – is improper. *In re Valley Park Group, Inc.*, 96 B.R. 16, 22 (Bankr. S.D. N.Y. 1989). Where an administrative claim is disputed, still other courts have required that a reserve be set aside for the claim. *In re Adelphia Business Solutions, Inc.*, 341 B.R. 415,

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Hon. Kevin J. Carey, Chief Judge
March 8, 2010
Page 2

419 (Bankr. S.D. N.Y. 2003). Tessera is not aware of any decision that holds that a debtor need not make any provision for payment of a disputed administrative claim, let alone one that has been the subject of an estimation proceeding. Yet, that is precisely what the Debtors ask this Court to approve.

At the conclusion of the confirmation hearing, during oral argument, the Court stated that it was not going to order payment of a disputed administrative claim. That said, the Court should at least order that a reserve be set aside for the Estimated Claim. In the Debtors' Reply to Tessera's objection to the Plan, they failed to cite a single case or authority that suggests that an administrative claim, disputed or otherwise, need not be paid on the effective date or be the subject of a reserve. Rather, they argue that because the Debtors will have significant assets post-confirmation, there is no need to set aside a reserve for the Estimated Claim.

As the Court is well aware, the bankruptcy dockets in this district are replete with companies that have or had significant assets and there have been a number of instances of recidivism among chapter 11 debtors. Ergo, the bar has coined the terminology of "chapter 22" to refer to companies that file a second chapter 11 case. It may take several years for the Estimated Claim to be liquidated and so, the issue is, given the Code's provisions, who should most properly bear the risk of non-payment of the Estimated Claim, the Debtors or Tessera?

The Debtors' position would be more colorable had there not been an estimation hearing. While the Debtors sought an estimation hearing to demonstrate the feasibility of their plan, that it not the sole function of an estimation hearing and the benefits of the proceeding should not be interpreted in a manner that solely redounds to the benefit of the Debtors. Having undertaken the time and expense to go through the estimation process, the Court's ruling should have application for other matters pertaining to the plan, namely, serving as a basis to set aside a reserve for the Estimated Claim. *See In re Ralph Lauren Womenswear, Inc.*, 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996) (estimation constitutes "temporary allowance for plan purposes.").

Given the statutory mandate for administrative claims to be paid, establishing a reserve for the Estimated Claim is consistent with furthering that purpose. While the Debtors do not want to set aside a reserve since it will constrain their use of capital to the extent of the amount need to pay the Estimated Claim, they can point to no authority which supports such an outcome. If the Debtors' resources are as expansive as they claim, this will not be a burden. If it is a burden, it underscores the need to protect the rights of administrative claimants such as Tessera.

During oral argument, the Debtors noted that Tessera did not contest feasibility of the plan. That is of no moment. The requirement to satisfy administrative claims in full is a

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Hon. Kevin J. Carey, Chief Judge
March 8, 2010
Page 3

separate confirmation standard than feasibility, and administrative claimants need not be put to the expense of addressing this issue, particularly in large cases, as a precondition of being paid or having steps taken to adequately assure that their claims will be paid. The Debtors have provided reserves for other classes of creditors, and Tessera should not be subjected to discriminatory treatment.

The failure to provide for a reserve for the Estimated Claim may frustrate the requirements of § 1129(e)(9)(A), is certainly not consistent with the policy behind that statute, renders the estimation process that took place a useless exercise for all but the Debtors, and does not protect the rights of Tessera, a creditor whose interests must also be taken into account under the Code.

**Irregularities in the Voting Solicitation and Tabulation Process**

In connection with the voting solicitation and tabulation process, there does not appear to be a dispute that as to claims that the Debtors deemed to be duplicative, they failed to send ballots to creditors who held those claims, and failed to count the ballots that creditors submitted if the Debtors deemed that the claims referenced in those ballots were duplicative. There is no Order of this Court authorizing such actions, and this procedure violated the Bankruptcy Rules.

In an effort to justify their actions, the Debtors point to the Solicitation Procedures Order, Exhibit D-76. The Order provides, in relevant part, at page 11 paragraph 9:

> If a party that is entitled to vote has more than one Claim against one or more of the Debtors based upon different transactions, said party shall be entitled to one vote for numerosity purposes in the aggregate dollar amount of all of said Claims. A creditor which holds multiple Claims that are deemed to be "allowed" for voting purposes against a single Debtor or multiple Claims against multiple Debtors, all of which Claims are based upon or relate to the same or similar indebtedness or obligations, whether by reasons of guarantee, indemnity agreement, joint and several obligation or otherwise, shall be entitled to vote only the largest of all such similar Claims.

This Order does not authorize the Debtors to make the determination that claims are based upon the same indebtedness. Such an interpretation would cede judicial authority to the Debtors. Nor are these facts self evident from the face of proofs of claim that are filed such that it is a matter amenable to judicial notice. Given that there are multiple debtors, it does not follow that claims asserted by a creditor against each of the debtor entities is necessarily duplicative. No such conclusion is properly drawn with respect to Tessera's claims. While Tessera has asserted patent infringement claims against each of the Debtors, the fact that each entity engaged in wrongful acts does not mean that the claims are the

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Hon. Kevin J. Carey, Chief Judge
March 8, 2010
Page 4

same, or that there will necessarily be joint and several liability as a consequence of all of the improper acts.

Materials sent to creditors were materially misleading because creditors were not given notice as to how claims the Debtors deemed duplicative were being treated for voting purposes. For instance, the ballot sent to Tessera, attached as Exhibit B to the Steinberg Declaration (Exhibit TESS-1):

- does not identify the proof of claim to which the ballot relates[1]

- does not state that Tessera must seek relief from the Court if it wishes to vote the dollar amount of all of its claims

- does not state that the Debtors will not count more than one ballot for all of Tessera's claims.

In the supplemental declaration of Jane Sullivan, she admits that these steps were taken not only with respect to Tessera, but to other creditors as well. (See Exhibit B to Exhibit D-72) Thus, creditors holding well over $100 million in claims were not allowed to vote and were not given any meaningful notice that such was the case. In her supplemental declaration, Ms. Sullivan makes reference to a Solicitation Notice which is attached thereto as Exhibit A. That notice advices creditors of steps they should take if they do not receive *any* ballot. In this instance, creditors were given a ballot but were not advised that they should have received a ballot for each of their claims, nor were they advised that the ballot would be only counted for one of their claims. Even the claim to which the ballot corresponded was not identified.

Further, creditors were affirmatively misled by the Debtors' actions. Prior to soliciting votes, the Debtors filed an omnibus objection to claims on the grounds that claims were duplicative, yet later withdrew these objections (Exhibits TES-2, TES-3). Bankruptcy Rule 3018(a) places the onus on a creditor to seek relief to be allowed to vote on a plan if, and only if, an objection to the claim is filed. It does not permit a debtor to act as judge and make a determination that a claim is ineligible to vote. In addition to violations of the Bankruptcy Rules, given the lack of information that was provided, there was clearly a deprivation of due process rights for claimants.

The Debtors argue, in essence, no harm, no foul, and that they still have enough votes to carry the day. The Court commented that Tessera is the only creditor to have raised this issue, which presupposes that other creditors were even aware of what transpired with respect to their claims. At issue is the integrity of the process. Tessera objects to actions by

---

[1] There is no dispute that Tessera was assigned claim numbers 387, 388 and 389.

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Hon. Kevin J. Carey, Chief Judge
March 8, 2010
Page 5

the Debtors which were taken for the express purpose of improperly disenfranchising it. The Debtors are required to comply with the Bankruptcy Rules, and should not be allowed to simply make up their own rules. These acts should not be countenanced by the Court.

Tessera recognizes the Court's reluctance to derail the confirmation process. This said, the Debtors' have, at least for a portion of the post petition period, continued to infringe the Tessera patents, have failed and refused to pay for same, and seek to have a plan confirmed that could result in a scenario where they are never held accountable for their actions. Such a result is inequitable and should not be approved by this Court.

Sincerely,

Howard J. Steinberg

HJS:mam