**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SPANSION INC., *et al.*,[1] | Case No.: 09-10690 (KJC) |
| Debtors. | Jointly Administered<br>Related to Docket No. 3066<br>**Hearing Date: April 16, 2010 @ 10:00 a.m.** |

**THE AD HOC COMMITTEE OF CONVERTIBLE NOTEHOLDERS' AND THE AD
HOC EQUITY COMMITTEE'S (I) JOINT OBJECTION TO DEBTORS' MOTION
FOR AN ORDER EXTENDING EXCLUSIVE PERIOD, (II) JOINT MOTION
TO TERMINATE EXCLUSIVE PERIOD, AND (III) JOINT OBJECTION
TO CONFIRMATION OF DEBTORS' SECOND AMENDED JOINT
PLAN OF REORGANIZATION DATED APRIL 7, 2010**

TO:    THE HONORABLE KEVIN J. CAREY
       UNITED STATES BANKRUPTCY JUDGE

The Ad Hoc Committee of Convertible Noteholders (the "Convert Committee"),

consisting of certain holders of 2.25% Exchangeable Senior Subordinated Debentures due 2016

issued by Spansion LLC ("Convertible Notes"), and the Ad Hoc Equity Committee (whose

members also own Convertible Notes) (the "AHEC", and, together with the Convert Committee,

the "Ad Hoc Committees") for their (I) Joint Objection (the "Objection") to the Debtors' Motion

for an Order Extending Exclusive Period (the "Exclusivity Motion"), (II) Joint Motion to

Terminate Exclusive Period, and (III) Joint Objection to Confirmation of Debtors' Second

Amended Joint Plan of Reorganization dated April 7, 2010, respectfully represents:

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification
number, are: Spansion Inc., a Delaware corporation (8239); Spansion Technology LLC, a Delaware limited
liability company (3982); Spansion LLC, a Delaware limited liability company (0482); Cerium
Laboratories LLC, a Delaware limited liability company (0482), and Spansion International, Inc. a
Delaware corporation (7542). The mailing address for each of the Debtors is 915 DeGuigne Dr.,
Sunnyvale, CA 94085.

## INTRODUCTION

1.      Spansion Inc. and certain of its subsidiaries (collectively, the "Debtors") have not demonstrated the existence of "cause" to warrant the extension of their exclusive periods under Section 1121(d) of the Bankruptcy Code.  To the contrary, the Debtors' lack of good faith in proposing a chapter 11 plan that provided excessive equity compensation to members of senior management provides a sound basis for denying the Debtors' any additional time to solicit acceptances for their plan.  While the Debtors claim to have revised their equity inventive plan to address concerns raised by the Court in its opinion denying confirmation, such revision does not justify extending exclusivity – particularly where a host of creditors vociferously challenged the equity plan prior to the confirmation hearing, but the Debtors refused to make *any* modification to the plan, apparently figuring they would simply run roughshod over dissenting voices.

2.      Moreover, "cause" exists to terminate exclusivity because the Ad Hoc Committees are prepared to file a Chapter 11 plan (the "Convert Holders' Plan") that in most respects is virtually identical to the Debtors' Second Amended Joint Plan of Reorganization, dated April 7, 2010 (the "Debtors' Plan").  Significantly, however, unlike the Debtors' Plan, the Convert Holders' Plan would (a) be fully consensual as to all impaired classes of creditors, and (b) resolve all material open issues in these cases, including (i) valuation issues, (ii) subordination issues between the Convertible Notes and the existing holders of the 11.25% Senior Notes due 2016 (the "Senior Noteholders"), (iii) management incentive plan issues, and (iv) third party releases.  The Convert Holders' Plan needs no resolicitation of any creditor claim.

3.      The Convert Holders' Plan is relatively simple.  Under the Convert Holders' Plan, participating holders of Convertible Notes (the "Convert Holders") would fund the payment in full of the Senior Notes in cash such that existing Senior Noteholders would be unimpaired, and the participating Convert Holders which funded such cash-out unimpairment would "step into

2

the shoes" of the Senior Noteholders. This mechanism is necessary to uphold the corollary to the absolute priority rule that creditors may not receive more than payment in full. Any objection to the Convert Holders' Plan by the Senior Noteholders would be very telling. Why would the Senior Noteholders object to payment in full, including all post-petition interest, in cash? Because they stand to receive more value under the Debtors' plan, at the expense of the Convert Holders. The Bankruptcy Code does not permit this result, and the Court should not permit the Debtors to proceed with a plan to accomplish such end.

4. The Ad Hoc Committees have requested that the Debtors adopt the Convert Holders' Plan as their own, given that it resolves the highly contentious open issues in these cases and, at the very least, avoids litigation, potential appeals and the like, that arise from the Debtors' Plan. Under the circumstances, if the Debtors do not adopt the Convert Holders' Plan, exclusivity should be terminated so that the Ad Hoc Committees can pursue a plan that pays Senior Noteholders in full, in cash, utilizing funds provided by Convert Holders, and avoids granting the Senior Noteholders a windfall at the expense of the Convert Holders.

5. In addition, for these same reasons (as well as the reasons set forth in the confirmation objections previously filed by the Convert Committee and the Ad Hoc Equity Committee, which are hereby incorporated herein by reference) the Court should deny confirmation of the Debtors' Plan. The Convert Holders' Plan, quite simply, is a superior plan as it (a) distributes value in a fair and equitable manner, and resolves all subordination issues between the Senior Notes and the Convert Holders by paying the Senior Notes in full, in cash, with funds provided by the Convert Holders and (b) avoids unnecessary litigation by providing a consensual path to reorganization. Faced with a choice between (x) the contentious and inequitable plan the Debtors continue to pursue and (y) the reasonable, fair and equitable plan

3

proposed by the Ad Hoc Committees, the Court should deny confirmation of the Debtors' Plan and confirm the Convert Holders' Plan.

## RELEVANT FACTUAL BACKGROUND

6.    On February 18, 2010, the Court entered an Order [D.I. 2811] establishing March 8, 2010 as the deadline for the period during which only the Debtors may solicit votes to accept or reject a proposed plan of reorganization in these Chapter 11 Cases. On February 24, 25 and 26, 2010 and March 1 and 2, 2010, a hearing (the "Confirmation Hearing") was held before the Court with respect to, *inter alia*, confirmation of the Debtors' Plan.

7.    On March 8, 2010, the Debtors filed the Exclusivity Motion seeking a fourth order extending their exclusive periods. The Debtors predicate their Exclusivity Motion on the fact that good cause exists to extend the exclusivity in order to prevent the filing of any competing plan and provide a cooling-off period in the event a plan is not confirmed. No "bridge order" was entered by this Court as the Debtors relied on Local Rule 9006-2 to have the effect of a bridge order extending exclusivity. The Debtors now also seek confirmation of the Debtors' Plan.

8.    On April 1, 2010, the Court filed its Opinion on Confirmation (the "Confirmation Opinion") and Order Regarding Opinion on Confirmation (the "Confirmation Order" and together with the Confirmation Opinion, the "Confirmation Orders"). In the Confirmation Orders, the Court held, *inter alia*, that the Debtors' prior proposed plan could not be confirmed.

9.    Since the entry of the Confirmation Orders, the Convert Committee has worked diligently to formulate and obtain funding for the Convert Holders' Plan. The Convert Committee has obtained funding commitments in excess of $350 million and is in the process of confirming receipt of such funds in escrow. Such amount constitutes more than sufficient funds to permit payment in full, in cash, of the Senior Noteholders, including funding of the Senior

4

Notes' commitment to the Silver Lake Rights Offering. Any further disputes about valuation and subordination issues would cease to exist. Upon termination of the Debtors' exclusive period, the Ad Hoc Committee would propose to file its alternative plan, a copy of which is attached to this Objection as **Exhibit "A"**.[2] A redlined version of the alternative plan, showing the changes from the Debtors' Plan filed on April 7, 2010, is attached to this Objection as **Exhibit "B"**.

## DISCUSSION

**A.     The Debtors Cannot Demonstrate
          "Cause" Exists to Extend Exclusivity**

10.     It is well settled that a "debtor seeking to extend the 120-day exclusive period bears the burden of proof and must show that cause exists for granting an extension." *In re Southwest Oil Company of Jourdanton, Inc.*, 84 B.R. 448, 450 (Bankr. W.D. Texas 1987). *See also In re Gen. Bearing Corp.*, 136 B.R. 361, 367 (Bankr. S.D.N.Y. 1992) (same); *In re Curry Corporation*, 148 B.R. 754, 756 (Bankr. S.D.N.Y. 1992) (stating that a debtor must make a clear showing of "cause" to support an extension of the exclusivity period); *In re McLean Industries, Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (stating that a debtor bears burden of proof that cause exists for extending exclusivity). Considering the history and purpose of section 1121 of the Bankruptcy Code, specifically to limit the delay that makes creditors the hostages of Chapter 11 debtors,[3] a "request to extend . . . exclusivity is a serious matter." *In re Matter of All Seasons*

---

2     The Ad Hoc Committees' plan is based upon the Debtors' Plan, and pursuant to Bankruptcy Code section 1125, a new disclosure statement is not required. In addition, the inclusion of the alternative plan as an exhibit to this Objection does not constitute, and shall not be deemed to constitute, a solicitation of any vote in respect of such plan. *First American Bank v. Century Glove, Inc.,* 81 B.R. 274, 280 (D. Del. 1988) (holding "solicit" and "solicitation" as used in section 1125(b) of the Bankruptcy Code refer "only to a specific request for an official vote either accepting or rejecting a plan of reorganization"), *aff'd in part Century Glove, Inc. v. First American Bank of New York,* 860 F.2d 94 (3rd Cir. 1988). The Ad Hoc Committees are not soliciting votes in respect of the alternative plan.

3     *See In re Timbers of Inwood Forest Assocs., Ltd.* 808 F.2d 363, 372 (5th Cir. 1987) ("Section 1121 was designed, and should be faithfully interpreted, to limit the delay that makes creditors the hostages of

*Indus., Inc.* 121 B.R. 1002, 1004 (Bankr. N.D. Ind. 1990). Such a motion must not "be granted routinely" or without a compelling reason. *McLean Industries, Inc.*, 87 B.R. at 834; *Matter of All Seasons,* 121 B.R. at 1004.

11. When determining whether a debtor has demonstrated that "cause" exists to extend exclusivity, courts look to the facts of each specific case. Among the "factors" that courts have considered in assessing whether "cause" exists include, but are not limited to, the following:

(i)   the size and complexity of the case;

(ii)  the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

(iii) the existence of good faith progress toward reorganization;

(iv)  the fact that the debtor is paying its bills as they become due;

(v)   whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(vi)  whether the debtor has made progress in negotiations with its creditors;

(vii) the amount of time which has elapsed in the case;

(viii) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

(ix)  whether an unresolved contingency exists.

*In re Adelphia Communications Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006). *See also In re Tripodi*, No. 04-30793, 2005 WL 2589185, at *1-2 (Bankr. D. Conn., Oct. 9, 2005); *In re Service Merchandise Company, Inc.*, 256 B.R. 744, 751 (Bankr. M.D. Tenn. 2000); *McLean Industries, Inc.*, 87 B.R. at 834.

---

Chapter 11 debtors"); *In re Curry Corp.,* 148 B.R. at 755 (same); *In re Gen. Bearing Corp.*, 136 B.R. at 367 (same).

6

12.     Here, the Debtors have not made any factual showing in the Exclusivity Motion that cause exists to extend exclusivity. This may be attributable to the fact that the Exclusivity Motion likely was filed as a mere afterthought, prior to the issuance of the Court's Confirmation Orders and the determination that the Debtors' Plan had not been proposed in good faith. Accordingly, the Debtors fail to offer any reason as to why they should be given a second chance to confirm a plan, or why the Court should look the other way with respect to senior management's ill-fated attempt at self-enrichment under the original plan. Simply, the Debtors offer no sound justification for extending exclusivity. Instead, the Debtors continue to ask the Court for further extensions of the exclusivity period, without moving closer towards a plan that is both confirmable and consensual. Under these circumstances, the Debtors have failed to show "cause" for an extension, and the Exclusivity Motion must be denied.

**B.     Debtors Have Already Had Their
First And Only Shot at Exclusivity,
And The Proposed Plan Will Not
Result in a Successful Reorganization**

13.     The Court indicated in the hearing on December 14, 2009, that the Debtors were entitled to exclusivity only during their first attempt at proposing a plan. *See* Transcript of Oral Argument at 111, *In re Spansion Inc., et al.* (Dec. 14, 2009) ("the debtor's [sic] entitled to its first shot, but given the circumstances, that's all it's going to get."). The Debtors have now had more than one opportunity and more than sufficient time to propose a plan that is fair and equitable and confirmable. However, the Debtors' Plan remains one that is not consensual. The potential for a protracted litigation and potential appeals relating to the Debtors' Plan is highly likely, particularly where the Debtors have been offered -- but have turned their backs on – an alternative proposal that will pay the Senior Noteholders in full, in cash, while leaving the excess

7

value to flow to junior creditors, namely the Convert Holders, as required by the absolute priority rule.

14.     A Chapter 11 debtor must demonstrate that there is a reasonable probability that it will be able to propose a plan that will result in a successful reorganization. *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D.Pa. 1986). A "reasonable probability cannot be grounded solely on speculation. The Code requires the debtor to prove that an effective reorganization is possible." *In re Craghead*, 57 B.R. 366, 370 (W.D. Mo. 1985). The lingering valuation dispute and related intercreditor issue in connection with the Confirmation Orders will likely mire the Debtors' Plan in a long and protracted litigation. In addition, the Debtors' refusal to pursue the alternative structure set forth in the Convert Holders' Plan – a structure that is necessary to protect the rights of Convert Holders – could well lead to additional litigation. Any plan that does not resolve the valuation and intercreditor issues would not succeed, and as such should not be confirmed. *See In re Pine Run Trust*, 67 B.R. 432, 435 (Bankr. E.D.Pa. 1986).

15.     The Debtors have had repeated opportunities to propose a plan that might be confirmable and lead to a successful reorganization. The Debtors have previously filed three motions to extend one or both of the "Exclusive Periods" during which only the Debtors may file a plan of reorganization or solicit acceptances or rejections of a plan. The Debtors have not been able to resolve the substantial issues with the Ad Hoc Committees which would prevent any plan from being successful.

**C.     The Debtors Have Not: (I) Used Exclusivity to Attempt to Negotiate a Consensual Plan; or (II) Made Progress Negotiating with Creditors**

16.     One of the most important reasons for extending a debtor's period of exclusivity is "to give the Chapter 11 process of negotiation and compromise an opportunity to be fulfilled,

8

so that a consensual plan can be proposed and confirmed without opposition." *See In re Southwest Oil Co. of Jourdanton,* 84 B.R. at 452; *Matter of All Seasons,* 121 B.R. at 1006.

17.     Since the Confirmation Hearing, the Debtors have not engaged in any negotiations with the Ad Hoc Committees that is likely to result in a more consensual plan and one likely to succeed upon confirmation. Rather, the Debtors inexplicably continue to pursue the Debtors' Plan, which does not move any closer towards being a consensual plan. In light of the potential for ongoing protracted litigation and appeals, it is in the best interests of the Debtors' estates and all of their creditors that exclusivity be terminated so that the Convert Holders' Plan, which should likewise be adopted by the Debtors, can proceed to confirmation on a fully consensual basis.

## D.     The Ad Hoc Committees Propose a Plan that is Consensual and in the Best Interests of the Debtors' Estate and All Creditors

18.     As announced in open Court on Tuesday, April 2, 2010, the Ad Hoc Committees have a plan proposal that would resolve the material disputed issues in these cases. The Convert Holders' Plan resolves the most important outstanding issues in the Debtors' Plan: the valuation and intercreditor disputes that exist under the Debtors' Plan.

19.     The only material difference between the Convert Holders' Plan and the Debtors' Plan is the manner in which the existing Senior Noteholders will be satisfied. The Convert Holders' Plan provides that the Senior Noteholders will have their claims paid in full, in cash with the Convert Holders stepping into the shoes of the Senior Noteholders. The consideration to "unimpair" and pay in full, in cash, the Senior Noteholders is provided by the Convert Holders. Such treatment is consistent with the subordination provisions of the Convertible Note Indenture, which provides, "[u]pon any payment or distribution of the assets of the Issuer to creditors...in a bankruptcy, reorganization...holdings for Senior Indebtedness are entitled to

receive payment in full in cash of all obligations in respect of Senior Indebtedness…before holders will be entitled to receive any payment….” Convertible Indenture, at § 11.2. The Convertible Indenture goes on to say at § 11.5 that, “[a]fter all Senior Indebtedness is paid in full…Holders of [Convertible Notes] will be subrogated to the rights of holders of Senior Indebtedness….”

20.     That is precisely what is occurring under the proposed Convert Holders' Plan. Convert Holders will provide funding to pay the Senior Noteholders in full, in cash, and will become subrogated to their rights, including the Senior Noteholders' rights under the Convert Holders' Plan. The Ad Hoc Committees have put their “money where their mouth is,” and stand ready, willing and able to consummate the alternative plan. The Court thus should terminate exclusivity so that these cases may come to an expeditious resolution that is fair and equitable to all parties.

### E.     The Court Should Deny Confirmation of the Debtors' Plan

21.     The Court should deny confirmation of the Debtors' Plan, both for the reasons set forth in this Objection and for the reasons set forth in the prior confirmation objections lodged against the Debtors' Plan. Although the Debtors have modified the equity incentive program provided for under the plan, the Debtors have failed to (i) achieve a consensus as to the terms of the equity incentive plan or to (ii) establish that the terms of the equity incentive plan are reasonable and within market parameters. Moreover, in light of the fact that a superior plan has been proposed by the Ad Hoc Committees that avoids unnecessary litigation and promotes an expeditious exit from chapter 11, confirmation of the Debtors' Plan cannot be justified.

10

## CONCLUSION

22.    Based on the foregoing and in Ad Hoc Committees' submissions in support of this Objection, "cause" does not exist to extend the Debtors' exclusivity periods under Section 1121(d).    The Convert Holders' Plan would settle the valuation issue with the Convert Committee, address all subordination issues among the Convertible Notes and the Senior Notes in accordance with the Convertible Indenture, while not changing the treatment of creditors under the Debtors' existing plan. This is particularly compelling as the Convert Holders, not the Debtors, would provide the consideration for resolution of the subordination issue.

WHEREFORE, the Ad Hoc Committees respectfully request that the Court deny the Debtors' motion to extend exclusivity, terminate the Debtors' exclusivity, deny confirmation of the Debtors' Plan and grant the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: Wilmington, Delaware
      April 13, 2010

COZEN O'CONNER

*/s/ Mark E. Felger*
Mark E. Felger (No. 3919)
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013

-and-

ANDREWS KURTH LLP
Paul N. Silverstein (NYS Bar. No. PS 5098)
Jonathan I. Levine (NYS Bar. No. JL 9674)
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 850-2800
Facsimile: (212) 850-2929

*Co-counsel to Convert Committee*

- and -

SAUL EWING LLP

*/s/ Mark Minuti*
Mark Minuti (DE No. 2659)
Lucian B. Murley (DE No. 4892)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6840
Facsimile: (302) 421-5973

-and-

QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
Susheel Kirpalani (admitted *pro hac vice*)
Scott C. Shelley (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Co-counsel to Ad Hoc Equity Committee*

12