# AKIN GUMP
# STRAUSS HAUER & FELD LLP
## Attorneys at Law

SEAN E. O'DONNELL
2128721093/fax: 2128721002
sodonnell@akingump.com

April 15, 2010

**BY ECF**

The Honorable Kevin J. Carey
United States Bankruptcy Court
 for the District of Delaware
824 North Market Street
Wilmington, DE 19801

    Re:  *In re Spansion Inc., et al.* Case No. 09-10690 (KJC)

Your Honor:

On behalf of the Senior Noteholders Informal Group (the "Senior Noteholders"), we respectfully submit this letter (A) in support of confirmation of the Debtors' Second Amended Joint Plan of Reorganization Dated April 7, 2010 (the "Plan")[1] and (B) to request that the Court overrule the joint objection (the "Joint Objection") filed on the eve of the April 16, 2010 confirmation hearing by the Convert Committee and the Equity Committee (together, the "Ad Hoc Committees").

A.    The Plan Should be Confirmed

With regard to the Debtors' previous Second Amended Joint Plan of Reorganization Dated February 28, 2010, this Court's Opinion on Confirmation dated April 1, 2010 (the "Confirmation Opinion") identified three issues that needed to be resolved prior to confirmation: (1) the non-consensual Third Party Release; (2) the administrative claim by Tessera, Inc. ("Tessera"); and (3) the equity incentive plan. As described below, the Senior Noteholders believe that the amendments to the Plan resolve each of the issues raised in the Court's Confirmation Opinion.

First, the Plan removes the portion of the proposed non-consensual Third Party Release that the Court deemed problematic—specifically, the language making the Third Party Release applicable to all holders of Claims or Interests.[2] The current Plan replaces that language with a provision making the Third Party Release applicable to each entity that is a member of a class of creditors which receives a distribution pursuant to the Plan, if such entity has not exercised its right to opt out of the Third Party Release.[3] We understand that all creditor constituencies have

---

[1]  Unless otherwise defined, all capitalized terms shall have the meanings ascribed to such terms in the Plan.

[2]  Confirmation Opinion at 47-49.

[3]  *See* Plan §11.4.

agreed to the revised language and respectfully submit that this revision fully resolves the Court's concern regarding the Third Party Release.

Second, as the Confirmation Opinion requires,[4] the Plan creates a cash reserve account, free of liens or security interests, in the amount of $4,232,986.13 for Tessera's alleged administrative expense claim.[5] That account will hold the funds until such claim becomes an allowed or disallowed administrative expense claim, and insofar as the claim is partially allowed, Tessera is entitled to payment of the allowed portion of the claim from the funds in the account.[6] Any remaining funds for the disallowed portion of the claim will be returned to the general funds of the Reorganized Debtors.[7] Any interest or other earnings on the funds in the account shall likewise become general funds of the Reorganized Debtor.[8] Based upon the Confirmation Opinion, we respectfully submit that the Plan satisfies Section 1129(a)(9)(A) of the Bankruptcy Code. Indeed, we understand that this provision is acceptable to Tessera and all creditor constituencies.

Third, as the Confirmation Opinion instructs,[9] the Plan provides for a revised employee incentive compensation program ("Revised Equity Incentive Plan"), which at least two experts have opined is demonstrably reasonable.[10] In fact, both the Debtors' expert, Pearl Meyer of Steven Hall & Partners, and the Senior Noteholders' expert, Todd McGovern of Hewitt Associates, have confirmed that the Revised Equity Incentive Plan is consistent with the incentive plans adopted by the ***very companies*** that the Ad Hoc Committee of Convertible Noteholders (the "Convert Committee") presented to this Court (Ex. CDEM-11) when objecting to original equity incentive plan.[11] Copies of the Steven Hall & Partners and Hewitt reports are annexed hereto as Exhibits A and B, respectively.

---

[4] Confirmation Opinion at 50.

[5] *See* Plan 4.2(1)(c).

[6] *See Id.*

[7] *See id.*

[8] *See id.*

[9] *See* Confirmation Opinion at 38.

[10] *See* Plan § 7.3.

[11] Ex. A at 6, 8-9; Ex B at 7-8. Notably, the proposed Joint Plan of Reorganization for Debtors Dated April 13, 2010, submitted by the Convert Committee and the Ad Hoc Equity Committee ("Equity Committee") appears to adopt the Revised Equity Incentive Plan, including the revised number of shares of New Spansion Stock for issuance. *See* The Ad Hoc Committee of Convertible Noteholders' and the Ad Hoc Equity Committee's (I) Joint Objection to Debtors' Motion for an Order Extending Exclusive Period, (II) Joint Motion to Terminate Exclusive Period, and (III) Joint Objection to Confirmation of Debtors' Second Amended Joint Plan of Reorganization Dated April 7, 2010, Ex. A, § 7.3. We understand that prior to the submission of this proposed plan all other creditor constituencies had consented to the Revised Equity Incentive Plan. Thus, if the Convert Committee and Equity Committee are in fact willing to adopt the Revised Equity Incentive Plan, all creditor constituencies will have consented to the new equity incentive plan.

B.  The Joint Objection

By the Joint Objection, the Ad Hoc Committees seek an order (1) denying the Debtors' request to extend exclusivity, (2) terminating the Debtors' current exclusive periods and (3) denying confirmation of the Plan so that the Ad Hoc Committees may seek confirmation of an alternative plan of reorganization. For the reasons set forth below, the Joint Objection and the accompanying Alternative Proposal (as defined below) should be viewed for what they are: yet another ploy undertaken by the Ad Hoc Committees to derail the confirmation process and the conclusion of these cases.

First, the Joint Objection is simply a rehashing of the Ad Hoc Committee's already lodged objections about valuation and subordination that were expressly overruled by the Court in its Confirmation Opinion – the Senior Noteholders are left to assume that the Ad Hoc Committees simply did not hear Your Honor's clear statement at the hearing on April 6, 2010 that the Court would not retry these issues. Because the Ad Hoc Committees have not demonstrated any cause to justify the termination of exclusivity, the Senior Noteholders respectfully request that the Court approve the Debtors' motion to extend exclusivity and deny the Ad Hoc Committee's motion to terminate exclusivity.

Second, the alternative plan of reorganization (the "Alternative Proposal") filed with the Joint Objection should be rejected. Upon information and belief, we understand that creditors in Class 5B will object to the Alternative Proposal on the grounds that it unfairly discriminates amongst similarly situated creditors in contravention of Section 1129(b) of the Bankruptcy Code. Specifically, under the Alternative Proposal, creditors in Class 5A receive cash, while creditors in Class 5B having the same priority as those in Class 5A, receive equity. To the extent that creditors in Class 5B assert that such unfair discrimination renders the Alternative Proposal per se unconfirmable, the Senior Noteholders will be unfairly required to bear the execution risk associated with the Alternative Proposal.

Third, the Alternative Proposal and Joint Objection are both premised on the false assertion that the Alternative Proposal pays the Senior Noteholders in full.[12] The plain language of the Alternative Proposal, however, belies this statement:

1) The Alternative Proposal explicitly provides that Senior Noteholders receive no recovery on account of their claims against the holders of Exchangeable Debentures for original issue discount unless such claims are allowed by the Court.[13] The Debtors' Plan, by contrast, correctly provides a recovery on account of such claims.

2) The Alternative Proposal establishes a brand new disputed claims reserve to cover claims of Senior Noteholders that are disputed by the members of the Ad Hoc Committees.[14]

---

[12] *See* Alternative Proposal, n.2; Joint Objection at ¶3.

[13] *See* Alternative Proposal, n.3.

[14] *See* Alternative Proposal, Section 8.12(8).

Such a disputed claims reserve is proof positive that the Alternative Proposal does not in fact pay Senior Noteholders' claims in full.

3) Making matters worse, the provision in the Alternative Proposal establishing the new disputed claims reserve includes a new defined term – "Admitted Accrued and Unpaid Interest" – which is ***nowhere*** defined in the Alternative Proposal. Accordingly, it is impossible to decipher what, if any, claims for interest are not disputed by the Ad Hoc Committees.

4) Consistent with the foregoing indeterminacy, the Alternative Proposal specifically leaves in ***brackets and blank*** the amount of the Senior Noteholders' claims that are not disputed by Ad Hoc Committees.[15]

5) As further proof that Senior Noteholders' claims for pre- and post-petition interest are not paid in full and in fact are left completely unliquidated, the Alternative Proposal explicitly provides that the amount of "Accrued and Unpaid Interest" owed to Senior Noteholders shall be "determined by the Bankruptcy Court after the Effective Date."[16] The Alternative Proposal does not pay Senior Noteholders in full and, therefore, Senior Noteholders have every reason to support the current Plan over the Alternative Proposal.

Fourth, pursuant to the procedures authorized by the Court, the rights issued under the Debtors' rights offering are expressly non-transferable and non-revocable.[17] Nonetheless, the Alternative Proposal requires the forced transfer of the rights purchased by the Senior Noteholders. Thus, the Ad Hoc Committees ask the Court to approve a forced sale of the Senior Noteholders' claims and rights in these chapter 11 cases in direct violation of a previous Court order, let alone basic due process which requires that a sale have a willing seller.

Fifth, the Alternative Proposal should be dismissed because it would significantly (if not indefinitely) delay the confirmation of these cases. Specifically, the Alternative Proposal materially amends the Plan, including the treatment provided to certain creditors, and thereby would necessitate a new disclosure statement, resolicitation and a new confirmation hearing. Such delay would, among other things, (1) substantially harm the Debtors' businesses (especially given that most of the Debtors' key vendors and customers have been working on the assumption that the Debtors will exit chapter 11 in the very near-term), (2) cause the Debtors and their estates to unnecessarily incur additional professional fees, interest charges on outstanding debt and other costs of administering their chapter 11 proceedings and (3) jeopardize the Barclays and Bank of America debt financing. Indeed, the Debtors' estates have already been forced to pay significant fees to preserve their exit financing commitments. Those commitments will terminate in early May 2010 unless the Debtors agree to pay additional fees, which may very well be even more significant given the uncertainty of these cases should the Alternative Proposal be allowed to go forward.

---

[15] *See* Alternative Proposal, n.3.

[16] *See* Alternative Proposal, Section 1.1(3).

[17] *See* Plan, Section 6.11(7).

4

The Debtors, in their business judgment, should be permitted to set the business on a course designed to maximize these estates, and should not be required to put at risk their successful emergence from chapter 11 in pursuit of an unconfirmable plan. The Senior Noteholders, accordingly, respectfully request that the Court confirm the Plan and overrule the Joint Objection.

                                                  Respectfully Submitted,

                                                  /s/ Sean E. O'Donnell____

                                                  Sean E. O'Donnell

cc: All counsel

Attachment