NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## **OPINION**

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| SPANSION INC., et al., | : Case No. 09-1069 (KJC) |
| | : |
| Reorganizing Debtors. | : Jointly Administered |
| | : |
| APPLE, INC., | : |
| | : On Appeal from the U.S. Bankruptcy |
| Appellant, | : Court for the District of Delaware |
| | : |
| v. | : Civil No. 10-252 (RBK) |
| | : |
| SPANSION, INC., et al., | : |
| | : |
| Appellees. | : |
| | : |
| SPANSION, INC., et al., | : |
| | : On Appeal from the U.S. Bankruptcy |
| Cross-Appellants, | : Court for the District of Delaware |
| | : |
| v. | : Civil No. 10-554 (RBK) |
| | : |
| APPLE, INC., | : |
| | : |
| Cross-Appellee. | : |

**KUGLER**, United States District Judge:

Before the Court are two appeals from decisions by the Bankruptcy Court. Both appeals relate to the Bankruptcy Court's application of 11 U.S.C. § 365, which permits a reorganizing debtor to reject executory contracts that it entered into before petitioning for bankruptcy. Pursuant to § 365, the Bankruptcy Court granted Spansion, Inc., et al.'s ("Spansion") motion to

1

reject a letter agreement between Spansion and Apple, Inc. ("Apple"). Apple subsequently moved pursuant to § 365(n), which permits a party to retain any intellectual property rights secured by an executory contract that the reorganization debtor rejected, to retain a patent license contained in the letter agreement. The Bankruptcy Court denied Apple's motion, but found that Spansion's rejection of the Letter Agreement did not terminate the Letter Agreement. Both parties appealed. Apple appeals the Bankruptcy Court's denial of its motion to retain the patent license. Spansion appeals the Bankruptcy Court's ruling that the Letter Agreement is not terminated. For the reasons discussed below, the Court denies Spansion's appeal, grants Apple's appeal, and remands this matter to the Bankruptcy Court for a rehearing regarding Apple's motion to retain the patent license.

## I. BACKGROUND

In November 2009, before Spansion filed for Bankruptcy, Spansion commenced litigation against Samsung Electronics Co. ("Samsung"). Samsung is a primary competitor of Spansion in the market for flash memory chips. Spansion filed a complaint in the United States District Court for the District of Delaware alleging that Samsung infringed certain of Spansion's patents related to flash memory. Spansion also filed a complaint against Samsung with the International Trade Commission ("ITC"), seeking an order barring importation of numerous consumer electronic products that use Samsung flash memory chips. In addition to naming Samsung as a respondent in the ITC action, Spansion also named numerous purchasers of Samsung memory chips, including Apple. Spansion sought to prevent Apple from importing to the United States certain very popular Apple products because those products contained Samsung memory chips.

2

Apple purchases memory chips from many suppliers, including Samsung and Spansion. Because Spansion's litigation strategies frustrated Apple's ability to bring its products to market in the United States, Apple considered ending its business relationship with Spansion. (See Br. of Appellant Apple Inc. at 3) ("Apple prefers not to do business with suppliers that sue it"). However, Apple and Spansion negotiated an agreement. On February 10, 2009, the parties executed the Letter Agreement, which provides:

> Spansion is willing to dismiss the ITC action against Apple, and will not re-file the ITC action or another action related to one or more of the same patents against Apple, in consideration of the following:
>
> Provided that neither Spansion nor any successor in interest to any of the patents being asserted in the referenced ITC action do not bring an action of any nature asserting any such patent before any legal, judicial, arbitral, administrative, executive or other type of body or tribunal that has, or claims to have, authority to adjudicate such action in whole or in part against Apple or any Apple product, Apple agrees Spansion will not be disbarred as an Apple supplier as a result of the referenced ITC action.
>
> Spansion will remain primary supplier on current platforms where Spansion is qualified for the life-time of the product and will also be considered for future platforms given the following:
>
> o Spansion possess [sic] or develops the products Apple requests to meet design, qualification, and production schedules
> o Spansion provides best commercial terms (Quality, Delivery, Pricing, etc.)

(A. 78-79).[1]

After entering the Letter Agreement, but before taking any steps to dismiss the ITC action against Apple, Spansion initiated reorganization proceedings in the Bankruptcy Court. During the Bankruptcy proceedings, Spansion and Samsung negotiated a settlement agreement regarding the ITC action. However, the Bankruptcy Court rejected the settlement. Thus, in June

---

[1] All record citations are to the Appendix to the Brief of Appellant Apple, Inc. ("A _") unless otherwise noted.

2009, Spansion resumed its efforts in the ITC action against all respondents, including Samsung and Apple.

In July 2009, Spansion moved pursuant to 11 U.S.C. § 365 for an order authorizing it to reject the Letter Agreement as an executory contract. See 11 U.S.C. § 365 (providing that a bankruptcy trustee may petition the court to assume or reject any executory contract of the debtor). Apple opposed Spansion's motion, and the Bankruptcy Court held a hearing. At the hearing, Spansion's Chief Executive Officer testified that Spansion was "presently supply[ing] Apple with certain products" and that Spansion "ha[d] continued to supply Apple since the filing of the motion." (A. 119). Nevertheless, Spansion argued that Apple's continued business was not worth dismissing Apple from the ITC action. In other words, Spansion made a business determination that it was more beneficial to sue Apple regarding Samsung's alleged infringement of Spansion's patents than secure Apple's continued business.

The Bankruptcy Court granted Spansion's motion and signed an Order drafted by Spansion's counsel. The Order provides, among other things:

> ORDERED, that the Agreement, to the extent it is an executory contract, is hereby rejected; and it is further
>
> ORDERED, that the filing and service of the Motion and this Order upon Apple, Inc. shall constitute adequate written notice of termination thereof.

(A. 179).

After the Bankruptcy Court granted Spansion's rejection motion, Apple moved pursuant to 11 U.S.C. § 365(n) to retain all intellectual property rights secured by the Letter Agreement. Apple's motion papers explained that the Letter Agreement constituted a license to the patents at issue in the ITC action because Spansion promised not to sue Apple regarding infringement of those patents. Apple therefore argued that because 11 U.S.C. § 365(n) permits parties to a

4

rejected executory contract to move to retain intellectual property rights secured by the contract, Apple was entitled to retain the patent license notwithstanding Spansion's rejection.

In response to Apple's motion, Spansion moved to "enforce" the Bankruptcy Court's September 1, 2009 Order. Spansion argued that relief under § 365(n) is proper only if the underlying contract is "rejected" and the Bankruptcy Court had "terminated" the Letter Agreement in its September 1, 2009 Order. Thus, according to Spansion, Apple was not permitted to seek relief under § 365(n). Apple opposed Spansion's motion to enforce the Court's September 1, 2009 Order. Apple argued that Spansion moved pursuant to 11 U.S.C. § 365, which provides for "rejection" of executory contracts and that § 365(n) specifically precludes a debtor from unilaterally terminating an intellectual property license. The Bankruptcy Court held a hearing. At the hearing, the Bankruptcy Court noted that its September 1, 2009 Order was problematic because it referred to termination of the Letter Agreement. The Court suggested that Apple separately move for relief from the Order.

Apple subsequently moved for clarification of the Court's September 1, 2009 Order pursuant to Federal Rule of Civil Procedure 60(b). Apple argued that the Court's reference to "termination" was improper because: (1) Spansion's motion requested "rejection" – not "termination" – of the Letter Agreement; (2) the Order was ambiguous, and (3) it would be contrary to § 365(n) to permit Spansion to unilaterally terminate Apple's patent license under the Letter Agreement. Spansion opposed Apple's motion.

At the hearing regarding Apple's motion to clarify the Bankruptcy Court's September 1, 2009 Order, Spansion's counsel represented to the Bankruptcy Court that Apple had ceased purchasing memory chips from Spansion because Spansion refused to honor the Letter Agreement. Apple's Counsel later requested an opportunity to supplement the record because he

5

believed that Spansion's counsel misrepresented the nature of Apple and Spansion's business relationship. The Bankruptcy Court did not permit Apple's counsel to supplement the record. (A. 429).

On February 5, 2010, the Bankruptcy Court held a telephonic conference and announced its decision regarding Apple's motion to retain its intellectual property rights pursuant to § 365(n). The Bankruptcy Court found as follows:

> [T]he Court concludes that there is no ambiguity in the September 1, 2009 order authorizing rejection of the February 10, 2009 agreement between Spansion and Apple. I conclude secondly that there is insufficient evidence in the record before me, including any arguments and factual record made at the September 1 hearing, to conclude that the provision in the February 10, 2009 agreement to dismiss Apple from the ITC action gave rise to a license sufficient to trigger any Section 365(n) right in favor of Apple. And even if the February 10, 2009 agreement did give rise upon rejection to a theoretical right to Apple under Section 365(n), there is insufficient evidence in the record before me upon which to conclude that there remains any post rejection life to any such license due to the apparent cessation of business between Spansion and Apple to which any license is necessarily related. Therefore, the Debtor's motion to enforce this Court's September 1, 2009 order will be granted. To the extent that it asks Apple's notice of election under Section 365(n) be stricken.

(A. 442). Regarding the "termination" issue, the Bankruptcy Court found:

> [W]ith respect to Apple's request for relief under [Fed. R. Civ. P.] 60(b)(6) because Spansion did not allege any fact in its motion to reject the February 10, 2009 agreement in support of any right to terminate that agreement and did not argue any right to termination at the September 1 hearing on the motion, this Court's September 1 order will be amended to provide that such order is without prejudice to the issue of whether, under the applicable state law, the February 10, 2009 agreement has been or can be terminated by Spansion.

(A. 442-43).

6

After the Bankruptcy Court issued its decision, the Administrative Law Judge ("ALJ") in the ITC action ruled in favor of Samsung, Apple, and the other respondents. However, the ALJ rejected Apple's defense that it had a license to use Samsung's memory chips even if Samsung's chips infringed Spansion patents. The ALJ rejected that defense by Apple based on the doctrine of issue preclusion. The ALJ found that the Bankruptcy Court previously determined that the Letter Agreement did not create a patent license, and that he was bound by that determination.

Apple now appeals to this Court from the Bankruptcy's Court's February 5, 2010 decision denying Apple's motion to retain the patent license. Apple argues that the Letter Agreement created a valid patent license, and, because § 365(n) permits a party to retain patent licenses notwithstanding a reorganizing debtor's rejection of the underlying executory contract, the Bankruptcy Court erred in denying Apple's motion. Spansion opposed Apple's appeal and cross-appealed regarding the Bankruptcy Court's modification of the September 1, 2009 Order. According to Spansion, Apple did not satisfy its burden for modification of a judgment under Federal Rule of Civil Procedure 60(b), and this Court should find that the September 1, 2009 Order terminated the Letter Agreement. Consequently, Spansion argues that Apple's appeal should be denied because the Letter Agreement is no longer operative.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction over Apple and Spansion's appeals pursuant to 28 U.S.C. § 158(a). See 28 U.S.C. § 158(a) (granting jurisdiction to district courts over appeals from "final judgments, orders, and decrees" of "bankruptcy judges"). A District Court reviewing a decision of a Bankruptcy Court "review[s] the Bankruptcy Court's legal determinations de novo, its factual findings for clear error, and its exercise of discretion for abuse thereof." In re O'Brien Envtl. Energy, Inc., 188 F.3d 116, 122 (3d Cir. 1999). For mixed questions of law and fact, the

7

Court "accept[s] the Bankrucpty Court's findings of 'historical or narrative facts unless clearly erroneous,'" but "'exercise[s] plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" In re Genesis Health Ventures, Inc., 340 B.R. 729, 732 (D. Del. 2006) (quoting Mellon Bank, N.A. v. Metro Comm'n, Inc., 945 F.2d 635, 642 (3d Cir. 1991)). "A bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts." Stonington Partners v. Lernout & Hauspie Speech Prods. N.V., 310 F.3d 118, 122 (3d Cir. 2002) (internal quotation marks and citation omitted).

### III. DISCUSSION

#### A. Whether the Bankruptcy Court Properly Amended its September 1, 2009 Order

The Bankruptcy Court amended the September 1, 2009 Order to "provide that such order is without prejudice to the issue of whether . . . the February 10, 2009 agreement has been or can be terminated by Spansion." (A. 442-43). Spansion argues that the Bankruptcy Court abused its discretion in amending the Order because Apple failed to satisfy the stringent standard for altering a judgment under Rule 60(b)(6).

Rule 60(b) provides, in pertinent part:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

8

"The general purpose of Rule 60(b) . . . is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." Boughner v. Sec'y of Health, Educ. & Welfare, 572 F.2d 976, 977 (3d Cir. 1978) (quoted in Coltec Industries, Inc. v. Hobgood, 280 F.3d 262, 271 (3d Cir. 2002)).

> A motion filed pursuant to Rule 60(b) is addressed to the sound discretion of the trial court guided by accepted legal principles applied in light of all the relevant circumstances. Rule 60(b), however, "does not confer upon the district courts a standardless residual of discretionary power to set aside judgments. Rather, relief under Rule 60(b) is available only under such circumstances that the overriding interest in the finality and repose of judgments may properly be overcome. The remedy provided by Rule 60(b) is extraordinary, and only special circumstances may justify granting relief under it.

Tischio v. Bontex, Inc., 16 F. Supp. 2d 511, 533 (D.N.J. 1998) (internal quotation marks and citations omitted). Relief is available only in cases evidencing extraordinary circumstances. See Ackermann v. United States, 340 U.S. 193,201-02 (1950); Stradley v. Cortez, 518 F.2d 488, 493 (3d Cir. 1975). To establish extraordinary circumstances, the moving party must show "extreme and unexpected hardship." Talley v. City of Atlantic City, 406 F. App'x. 584, 585 (3d Cir. 2011). A motion under Rule 60(b)(6) "must be fully substantiated by adequate proof and its exceptional character must be clearly established." FDIC v. Alker, 234 F.2d 113, 116-17 (3d Cir. 1956).

When reviewing a lower court's application of Rule 60(b), a reviewing court "will not interfere with the [lower court's] exercise of discretion unless there is a definite and firm conviction that the court . . . committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." Welch & Forbes, Inc. v. Cendant Corp., 234 F.3d 166, 170 (3d Cir. 2000) (internal quotation marks and citation omitted).

The Court finds no reason to disturb the Bankruptcy Court's ruling. The Bankruptcy Court determined, based on Spansion's submissions and appearances before the Bankruptcy Court, that "termination was not an issue that was discussed in any fashion." (A. 417). Thus, the Court amended its Order so as to make no finding regarding Spansion's right to terminate the Letter Agreement. In essence, the Bankruptcy Court found that it was appropriate to amend the September 1, 2009 Order because Spansion had not requested termination. Additionally, the Bankruptcy Court found that even if Spansion had requested termination "Spansion did not allege any fact . . . in support of any right to terminate the agreement." (A. 442-43).

A review of the record confirms that Spansion did not assert a contractual right to terminate the Letter Agreement. Rather, Spansion moved only to "reject" the Letter Agreement pursuant to 11 U.S.C. § 365, which operates independently of any common-law right to terminate the Letter Agreement.[2] (See A. 69) (captioning Spansion's motion as: "Motion of the Debtors for an Order Pursuant to 11 U.S.C. § 365 Authorizing the Rejection of an Executory Contract Between Spansion Inc. and Apple, Inc."). Indeed, Spansion explained its reason for moving for rejection of the Letter Agreement as follows:

> The Debtors have determined, in the existence of their sound business judgment, that the Agreement is no longer in the best interests of the debtors' estates and should be rejected. The reasons underlying the Debtor's business judgment include the fact that Spansion's business relationship with Apple is sufficiently profitable to justify Spansion's dismissing Apple from the ITC Action. The Debtors believe the rejection of the Agreement is in the best interest of the Debtors' creditors because the Agreement provides no continuing benefit to the Debtor's estates.

---

[2] Section 365 does not give reorganizing debtors a right to terminate contracts. Eastover Bank for Sav. v. Sowashee Venture, 19 F.3d 1077, 1082 (5th Cir. 1994) ("the trustee may reject any of these contracts, but termination does not occur except at the other party's option"). Thus, Spansion's right to terminate the Letter Agreement (if any) comes from general contract law principles, which the parties never addressed and the Bankruptcy Court did not invoke.

10

(A. 70-71). Clearly, Spansion moved to obtain relief from the Letter Agreement pursuant to 11 U.S.C. § 365 and not because it believed that it had a contractual right to terminate the Letter Agreement. Thus, the Bankruptcy Court properly amended its September 1, 2009 Order to clarify that it was "without prejudice as to the issue of whether, under applicable state law, the February 10, 2009 agreement has been or can be terminated by Spansion." (A. 443).

Spansion nevertheless argues that the Bankruptcy Court erred because Apple has not established "extreme and unexpected hardship." Talley, 406 F. App'x. at 585. That argument is specious. The Bankruptcy Court found that Spansion had not requested a determination from the Court regarding its right to terminate the Letter Agreement. Apple would certainly suffer an "extreme and unexpected" hardship if Spansion was able to obtain relief beyond the scope of its motion and the substance of the Court's ruling by including an errant reference to "termination" in an order that it drafted for the Court's signature. Spansion seeks to gain a substantive ruling regarding an issue that it never placed before the Court and never gave Apple fair notice of. The Bankruptcy Court correctly amended its September 1, 2009 Order to confine the Order's scope to the subject of Spansion's motion.

**B. Whether the Bankruptcy Court Properly Denied Apple's Motion Pursuant to 11 U.S.C. § 365(n) to Retain Intellectual Property Rights**

Apple argues that the Bankruptcy Court erred in at least two respects when it denied Apple's motion pursuant to 11 U.S.C. § 365(n). First, Apple argues that the Bankruptcy Court incorrectly concluded that the Letter Agreement did not grant Apple a license to Spansion's patents. Second, Apple argues that the Bankruptcy Court incorrectly found that even if the Letter Agreement created a license, Apple could not retain that license under § 365(n) because of the "cessation of business between Spansion and Apple." (A. 442). The Court agrees, reverses

the Bankruptcy Court's ruling, and remands this matter for a rehearing regarding Apple's motion to retain the patent license.

### 1. The Letter Agreement Gave Apple a License to Spansion's Patents

A patent grants the right to exclude others from practicing the patented invention. TransCore, LP v. Elec. Transaction Consultants Corp., 563 F.3d 1271, 1275 (Fed. Cir. 2009); see 35 U.S.C. § 154(a)(1). The Federal Circuit has held that a patent license is "nothing more than a promise by the licensor not to sue the licensee." Spindelfabrik Suessen-Schurr, Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft, 829 F.2d 1075, 1081 (Fed. Cir. 1987). No special language is required to create a patent license. De Forest Radio Tel. Co. v. United States, 273 U.S. 236, 241 (1927) ("No formal granting of a license is necessary in order to give it effect. Any language used by the owner of the patent, or any conduct on his part exhibited to another from which that other may properly infer that the owner consents to his use of the patent in making or using it, or selling it, upon which the other acts, constitutes a license and a defense to an action for a tort."). The Federal Circuit has "on numerous occasions explained that a non-exclusive patent license is equivalent to a covenant not to sue." TransCore, LP, 563 F.3d at 1275. "The real question, then, is not whether an agreement is framed in terms of a 'covenant not to sue' or a 'license.' That difference is only one of form, not substance – both are properly viewed as 'authorizations.' Rather, the pertinent question . . . is . . . what the . . . agreement authorizes." Id. at 1276 (emphasis added).

Here, it is clear that Apple negotiated with Spansion for Spansion's promise not to sue Apple regarding patents that Samsung allegedly infringed. Spansion sued Apple in the ITC action because some of Apple's consumer electronics contained Samsung memory chips that Spansion believed to infringe its patents. Spansion sought an order barring Apple from

12

importing those products into the United States. Apple responded to Spansion's litigation strategy by threatening that it would stop purchasing memory chips directly from Spansion for use its in products. In order to remain as one of Apple's suppliers, Spansion agreed to not sue Apple regarding any of the patents that Samsung allegedly infringed. In other words, in exchange for Apple's promise not to "disbar" Spansion as an Apple supplier, Spansion granted Apple a non-exclusive license regarding the disputed patents.[3] The Letter Agreement is a valid patent license.[4]

The Bankruptcy Court nevertheless concluded: "[T]here is insufficient evidence in the record before me, including any arguments and factual record made at the September 1 hearing, to conclude that the provision in the [Letter Agreement] to dismiss Apple from the ITC action gave rise to a license . . . ." (A. 442). That conclusion was error. The Letter Agreement provides: "Spansion is willing to dismiss the ITC against Apple, and will not refile the ITC action or another action related to one or more of the same patents against Apple, in consideration of" Apple's promise to, among other things, not disbar Spansion as an Apple supplier. (A. 78-79). Because both parties agreed to those terms, the Letter Agreement created a valid patent license. No other facts or arguments were necessary to determine whether Spansion granted Apple a valid license. Additionally, the Bankruptcy Court's reasoning suggests (and Spansion argues) that Spansion's dismissal of Apple from the ITC action and Apple's continued purchase of memory chips from Spansion are conditions precedent to creation of the license. That is also incorrect. The Letter Agreement's clear language demonstrates that the parties

---

[3] Although Spansion argues that the Court's September 1, 2009 Order terminated the Letter Agreement, neither party contests that the Letter Agreement was a valid and binding contract when formed on February 10, 2009.

[4] The Court notes that Spansion argued before the Bankruptcy Court that a covenant not to sue is a patent license. (See A. 33). Principles of judicial estoppel prevent Spansion from now arguing to the contrary regarding the Letter Agreement.

entered into a valid contract by exchanging promises to act or refrain from acting. In exchange for Apple's promise to refrain from disbarring Spansion as an Apple supplier, Spansion agreed to withdraw its claims against Apple in the ITC action and forbear from suing Apple in any other forum regarding the same patents. That exchange of promises was valuable consideration that created a binding patent license agreement. The Bankruptcy Court erred in finding that the Letter Agreement did not amount to a patent license.

### 2. § 365(n) Entitles Apple to Retain its Patent License

The Bankruptcy Court found that even if the Letter Agreement was a patent license, Apple was not entitled to retain its rights under the Letter Agreement pursuant to § 365(n) because the parties had ceased their business relationship. Specifically, the Bankruptcy Court found that the purported license was "necessarily related" to Spansion's supply of memory chips to Apple and that the license did not have any "post rejection life." Apple argues that the Bankruptcy Court misconstrues the nature of the Letter Agreement, and that § 365(n) applies. The Court agrees.

Section 365 permits a reorganizing debtor to reject certain executory contracts in order to facilitate the "ultimate rehabilitation of the debtor. See In re Exide Techs., 607 F.3d 957, 962 (3d Cir. 2010) (quoting Nicholas v. United States, 384 U.S. 678, 687 (1966)); see also In re Phila. Newspapers, LLC, 599 F.3d 298, 316 (3d Cir. 2010) (discussing the general purpose of Chapter 11 as "preserv[ing] the Debtor as a viable economic entity postreorganization."). However, § 365(n) provides that if a debtor "rejects an executory contract under which the debtor is a licensor of a right to intellectual property," the licensee under the contract may elect "to retain its rights . . . under such contract and under any agreement supplementary to such

contract, to such intellectual property . . . as such rights existed immediately before the case commenced." 11 U.S.C. § 365(n).

Congress enacted § 365(n) in response to "industry concerns that . . . any patent . . . licensor could go into Chapter 11 and invalidate a license perfectly valid under contract law." In re Exide Techs., 607 F.3d at 965 (Ambro, J., concurring) (internal quotation marks and citation omitted); see also S. Rep. 100-505, at 9 (1988), reprinted in, 1988 U.S.C.C.A.N. 3200, 3206. "Through this provision, Congress sought 'to make clear that the rights of an intellectual property licensee to use the licensed property cannot be unilaterally cut off as a result of the rejection of the license pursuant to Section 365 in the event of the licensor's bankruptcy.'" Id. (quoting S. Rep. No. 100-505, at 1 (1988), reprinted in 1988 U.S.C.C.A.N. 3200, 3206). "Thus, in the event that a bankrupt licensor rejects an intellectual property license, § 365(n) allows a licensee to retain its licensed rights – along with its duties – absent any obligations owed by the debtor-licensor." Id. at 966.

Here, the Bankruptcy Court granted Spansion's motion to reject the Letter Agreement pursuant to § 365. Apple responded by making an appropriate motion pursuant to § 365(n) to retain its license under the Letter Agreement. Because, as discussed above, the Letter Agreement includes a patent license, § 365(n) permits Apple to retain its contractual rights (and obligations) under the Letter Agreement insofar as those rights and obligations relate to the patent license.

The Bankruptcy Court nevertheless denied Apple's motion because there was "insufficient evidence in the record before [the Bankruptcy Court] upon which to conclude that there remains any post rejection life to any such license due to the apparent cessation of business

15

between Spansion and Apply to which any license is necessarily related." (A. 442). The Bankruptcy Court's reasoning is flawed.

First, the Third Circuit has held that for purposes of § 365, "'[t]he time for testing whether there are material unperformed obligations on both sides is when the bankruptcy petition is filed.'" In re Exide Techs., 607 F.3d at 962 (quoting Enterprise Energy Corp. v. United States, 50 F.3d 233, 240 (3d Cir. 1995)). Thus, for purposes of determining what obligations a debtor may reject under § 365, and, consequently, what intellectual property rights a licensee may move to retain under subsection (n), the court must look to the status of the parties' relationship at the time of the bankruptcy petition. Here, when Spansion filed for bankruptcy, Apple and Spansion were both bound by the Letter Agreement. Apple was bound to refrain from disbarring Spansion as an Apple supplier, and Spansion was barred from pursuing any claims against Apple related to the patents that Samsung allegedly infringed. Thus, § 365(n) permits Apple to retain those rights and obligations, and the Bankruptcy Court erred in striking Apple's motion for relief under § 365(n).

Second, the "cessation of business between Spansion and Apple" does not necessarily provide Spansion with a substantive defense to enforcement of the patent license. Section 365(n) requires both Spansion and Apple to fulfill their respective contractual obligations related to the patent license. See 11 U.S.C. § 365(n). In this case, Apple agreed not to disbar Spansion as an Apple supplier in exchange for a patent license from Spansion. Thus, if Apple disbars Spansion, it breaches the Letter Agreement, and Apple may be excused from its obligation under the patent license. However, the Bankruptcy Court did not determine whether Spansion was permitted to terminate the Letter Agreement under common-law contract principles as a result of Spansion's purported failure to perform under the Letter Agreement. Instead, it concluded that because the

16

parties were not currently conducting business, there was no need for the patent license, and, consequently, no need for relief under § 365(n). That conclusion was erroneous. The patent license remains valuable to Apple so long as Apple purchases memory chips from Samsung. The purpose of the patent license was to ensure that Spansion would not obstruct Apple's ability to sell products that contained Samsung memory chips. Apple bargained for that continuing assurance in exchange for its promise to not disbar Spansion as a supplier.[5] Apple's purchase of memory chips from Spansion is irrelevant regarding the license's "post-rejection life."

The Bankruptcy Court erred in striking Apple's motion pursuant to § 365(n). The Letter Agreement includes an enforceable patent license, and Apple properly moved to retain its rights to the license pursuant to § 365(n). However, because the Bankruptcy Court granted Spansion's motion to enforce the September 1, 2009 Order and strike Apple's motion to retain the patent license, the Court remands this matter for rehearing of Apple's motion to retain the patent license consistent with this Opinion.

### IV. CONCLUSION

For the reasons discussed above, the Court upholds the Bankruptcy Court's amendment to the September 1, 2009 Order and reverses the Bankruptcy Court's denial of Apple's motion to retain the patent license. The Court remands this matter to the Bankruptcy Court for a rehearing regarding Apple's motion to retain the patent license pursuant to § 365(n), and for such other relief as is consistent with this Opinion.

---

[5] Spansion ultimately lost the ITC action. However, the judgment in the ITC action did not render this case moot. Pursuant to the Letter Agreement, Spansion agreed to "dismiss the ITC against Apple, and [to] not re-file the ITC action or another action related to one or more of the same patents against Apple." (A. 78). Thus, the license pertains not only to the ITC action, but also to any future actions that Apple may initiate regarding Apple's use of Samsung's memory chips. The Letter Agreement therefore provides continuing protection to Apple from any suit by Spansion regarding Samsung's alleged infringement of Spansion's patents. Moreover, the ITC judgment did not address the merits of Apple's claim that it held a license to the disputed patents. Indeed, the ALJ expressly declined to address the merits of Apple's claim and relied instead on the Bankruptcy Court's erroneous conclusion that the Letter Agreement did not constitute a patent license. Thus, the ITC judgment does not have any preclusive effect regarding Apple's claim to a patent license based on the Letter Agreement.

17

Dated: 7/28/2011             /s/ Robert B. Kugler
            ROBERT B. KUGLER
            United States District Judge