UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | : | CHAPTER 11 |
|  | : |  |
| **SPANSION, INC.**, *et al.*[1] | : |  |
| Debtors | : | Case No. 09-10690 (KJC) |
|  | : |  |

# MEMORANDUM[2]

**BY:   KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE**

Currently before the Court is the Claim Agent's Second Omnibus Objection to Non-Liability and Satisfied Claims Pursuant to 11 U.S.C. §502(b), Fed.R.Bankr.P. 3007 and Del. Bankr. L.R. 3007-1 (the "Claim Objection") (D.I. 3771), which includes an objection to claim number 1193 filed by John Darilek.  Mr. Darilek, a former employee of the Debtors, filed proof of claim number 1193, in the amount of $23,557, for payment of a retention bonus and asserted that part of the claim ($10,950) is entitled to priority treatment under Bankruptcy Code §507(a)(4) (the "Claim").[3]

The Claim Objection seeks to disallow and expunge the Claim in full since Mr. Darilek was no longer employed by the Debtors on the date bonus awards were paid.  Mr. Darilek filed a *pro se* response to the Claim Objection (the "Response") (D.I. 3870), arguing that the Debtors

---

[1] The Debtors that were jointly administered in this bankruptcy case are: Spansion, Inc., a Delaware corporation; Spansion Technology, LLC, a Delaware limited liability company; Spansion LLC, a Delaware limited liability company; Cerium Laboratories, LLC, a Delaware limited liability company; and Spansion International, Inc., a Delaware corporation (the "Debtors" or "Spansion").

[2] This Memorandum constitutes the findings of fact and conclusions of law required by Fed.R.Bankr.P. 7052. This Court has jurisdiction to decide the motion before it pursuant to 28 U.S.C. § 1334 and §157(a).  This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(B).

[3] Proof of claim number 1193 amended proof of claim number 661 filed by John Darilek.  Both claims seek *pro rata* recovery of the bonus payment and are in the same amount.

were required to pay the retention bonus because his termination was part of the Debtors' reduction in workforce, rather than Mr. Darilek's voluntary termination of employment. A hearing on the Claim Objection was held on June 4, 2012. At the hearing, the Debtor introduced four exhibits (Exhibits A through D), that were admitted into evidence, in support of the Claim Objection.[4] Mr. Darilek appeared by telephone and offered argument in opposition to the Claim Objection.

For the reasons set forth herein, the Claim Objection will be sustained as to Mr. Darilek's Claim and claim number 1193 will be disallowed and expunged in full.[5]

## Background

The facts in this matter are not disputed. Prior to the bankruptcy filing, Mr. Darilek was employed by the Debtors at their facility in Austin, Texas. By a memo dated March 13, 2008, the Debtors notified Mr. Darilek that he was eligible to participate in The Centurion Program, a "special program to reward and retain a select group of approximately 100 employees Spansion believes to be critical to its future success." Exhibit B. The memo advised that participants in the program would receive (i) a cash bonus in March 2009 of $25,000, and (ii) a stock option award of 2,500 shares. *Id.* The memo further instructed that the recipients should "review the Terms and Conditions below for further details." *Id.* The Terms and Condition provided, in

---

[4] At the hearing, counsel for the Reorganized Debtors appeared and argued in support of the Claims Objection. (D.I. 4472).

[5] The Debtors scheduled two claims for Mr. Darilek, (i) a priority claim of $230 for flex benefits, and (ii) a "vacation and bonus" claim in the amount of $16,934.48, of which $5,751.97 is a priority claim and $11,182.51 is a general unsecured claim. Exhibit C. The Debtors' Exhibit D was introduced to correct the characterization of the scheduled "vacation and bonus" claim by showing that it does not include a "bonus" amount, but was based entirely upon the amount of vacation pay outstanding as of the Petition Date. The Debtors agree that disallowance of Claim number 1193 does not in any way affect allowance of the two scheduled claims.

relevant part:

> **Bonus**
> The bonus, subject to all required withholdings, will be paid on the first pay date following March 1st, 2009, provided you meet the following terms:
>
> 1) You are actively employed by Spansion on the date awards are paid, and
> 2) Your performance for this period must remain at an acceptable level, as determined by your management.
>
> If you terminate employment from Spansion prior to the payment date, you will not be eligible to receive this bonus.

*Id.* On or about February 23, 2009, the Debtors implemented a reduction in work force ("RIF"). Mr. Darilek was one of 736 employees terminated in the RIF.

On March 1, 2009, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On April 16, 2010, this Court entered an order (D.I. 3334) confirming the Debtor's Second Amended Joint Plan of Reorganization dated April 7, 2010 (as amended) (the "Plan") (D.I. 3250). Section 9.2 of the Plan appointed a Claims Agent with, *inter alia*, authority to evaluate and prosecute objections to disputed claims. The Plan's effective date was May 10, 2010. The Claim Objection was filed on June 25, 2010. The Response was filed on July 21, 2010.

## Discussion

Bankruptcy Code §502(b)(1) disallows any claim that is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. §502(b)(1). *Travelers Cas. And Sur. Co. Of America v. Pacific Gas and Elec. Co.*, 549 U.S. 443, 450, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007). The *Travelers* Court further explained:

3

> [W]e have long recognized that the "'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having 'generally left the determination of property rights in the assets of the bankrupt's estate to state law.'" *[Raleigh v. Illinois Dept. Of Revenue*, 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000)] quoting *Butner v. United States*, 440 U.S. 48, 57, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); citation omitted). Accordingly, when the Bankruptcy Code uses the word "claim" - - which the Code itself defines as a "right to payment," 11 U.S.C. §101(5)(A) - - it is usually referring to a right to payment recognized under state law. As we stated in *Butner*, "[p]roperty interests are created and defined by state law," and "[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." 440 U.S., at 55, 99 S.Ct. 914; accord, *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161, 67 S.Ct. 237, 91 L.Ed. 162 (1946) ("What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law").

*Travelers*, 549 U.S. at 450-51. The parties, here, agree that this matter is governed by Texas law.

Under Texas law, bonus payments are due according to the terms of an agreement between the employee and employer. Tex. Labor Code Ann. §61.015(a). In reviewing Texas state law regarding contract interpretation, the Fifth Circuit Court of Appeal has written:

> Under Texas law, courts enforce an unambiguous written contract according to its own terms. *U.S. Fire Ins. Co. v. Confederate Air Force*, 16 F.3d 88, 91 (5th Cir. 1994). In interpreting a written contract, "[t]he court's primary concern is to enforce the parties' intent as contractually expressed, and an unambiguous contract will be enforced as written." *Interstate Contracting Corp. v. City of Dallas*, 407 F.3d 708, 712 (5th Cir. 2005). An ambiguity in a contract is a question of law which "arises only after the application of established rules of construction leaves an agreement susceptible to more than one [reasonable] meaning." *DeWitt Cty. Elec. Coop., Inc. v. Parks,* 1 S.W.3d 96, 100 (Tex. 1999).

*Wilson v. Noble Drilling Servs., Inc.*, 405 Fed. Appx. 909, 915 (5th Cir. 2010).

The Debtors argue that the facts of *Wilson* are on point and support the Claim Objection. In that case, Wilson's employment was terminated on February 22, 2008 after he failed to follow

office protocol and was "dismissive and unapologetic" about it. *Id.* at 911. The employer (Noble) paid bonuses under its Short-Term Incentive Plan ("STIP") for the 2007 year on February 27, 2008. *Id.* The STIP required that an employee had to be employed on February 27, 2008 to be eligible to receive a 2007 bonus. *Id.* Wilson argued that, despite his termination before February 27, 2008, Noble breached its contract by failing to pay him bonus compensation earned in 2007. Wilson did not argue that the STIP contract was ambiguous. *Id.* at 915. The Court decided:

> [T]he written contract between Wilson and Noble expressly states that Wilson is entitled to the STIP bonus *only* if he is employed on the date that the STIP bonus is distributed. Because the contract is unambiguous and an unambiguous contract is enforced as written, Wilson is not entitled to the 2007 STIP bonus.

*Id.* (emphasis in original). The Debtors argue that the Terms and Conditions of the Centurion Program Award are unambiguous and provide clearly that only employees who are actively employed by Spansion on the date awards are paid (i.e., the first pay date following March 1, 2009) are eligible to receive the bonus. Because it is undisputed that Mr. Darilek was not employed on the first pay date after March 1, 2009, the Debtors argue that he is not entitled to a bonus payment.

Mr. Darilek contends that the intent of the Centurion Program was to retain valuable employees. He argues that an employee is not eligible for the bonus only if the *employee* terminates his employment prior to the award payment date, because the Terms and Conditions include the following statement: "If you terminate employment from Spansion prior to the payment date, you will not be eligible to receive this bonus." Exhibit B. *See Enstar Corp. v. Bass*, 737 S.W.2d 890 (Tex. App. 1987) (Employees, who were terminated after the employer was acquired by another company, were entitled to receive bonuses earned under a four-year

5

incentive program, despite language in the contract requiring "employment on December 31 of a "program year." The contract provided that employees would forfeit their incentive payments if they "terminated employment . . . for any reason other than death, retirement or permanent disability," but the contract did not address situations in which the *company* terminated employment).

Mr. Darilek argues that the Terms and Conditions address only an *employee's* termination of employment and, therefore, become ambiguous when applied to a "reduction in workforce" situation. Mr. Darilek further argues that the agreement should be construed against the drafter, Spansion. *See AT&T Corp. v. Rylander*, 2 S.W.3d 546, 559 (Tex. App. 1999) ("As a general rule, writings are construed strictly against the author and in a manner so as to reach a reasonable result that is consistent with the intent of the parties. . . . However, this rule only applies after the document is found to be ambiguous.").

In this case, the plain language of the Terms and Conditions for the Centurion Program is not ambiguous. It specifies two conditions for payment of the bonus: (i) the employee must be actively employed by Spansion on the date awards are paid (i.e., the first pay date following March 1, 2009), and (ii) the employee's performance for the period must remain at an acceptable level. Exhibit B. The language following the two requirements (stating that an employee who voluntarily terminates employment prior to the payment date is not eligible for the bonus) does not limit the specific requirements or create an ambiguity. Instead, it advises employees how their actions could affect eligibility for the bonus. The contract language will be enforced as

written.[6]

It is undisputed that Mr. Darilek does not meet one of the specific Terms and Conditions: he was not actively employed by Spansion when awards were paid. Because Texas law requires unambiguous contract to be enforced as written, I conclude that Mr. Darilek is not entitled to the bonus payment and Claim number 1193 should be disallowed and expunged in full.

An appropriate order follows.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: February 4, 2013

---

[6] I recognize that this may seem a harsh result, since Mr. Darilek was terminated only days before he would have been entitled to payment of a bonus award. But, for Mr. Darilek's view of the bonus award program to prevail, the Court would be required to find that the company adopted a program covering approximately 100 employees, whose employment *it could not terminate* prior to the first pay date following March 1, 2009 without incurring an obligation to pay the bonus award. The company's view of the terms of the Centurion Plan is the more reasonable interpretation.