IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SPANSION INC., et al.,[1] | ) | Case No. 09-10690 (KJC) |
| | ) | (Jointly Administered) |
| Debtors. | ) | (Re: D.I. 3826, 3830) |

## MEMORANDUM ORDER[2]

**BY:   KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE**

On July 9, 2010, the Ad Hoc Committee of Equity Security Holders of Spansion Inc. ("Ad Hoc Equity Committee") and the Ad Hoc Committee of Convertible Noteholders (the "Ad Hoc Convert Committee") (together the "Committees") each filed a motion ("Motion" or "Motions") seeking payment for professional fees and expenses incurred by the Committees based on asserted substantial contributions made in connection with this chapter 11 proceeding. (D.I. #3826. D.I.#3830). The Ad Hoc Equity Committee seeks payment of $1,778,700.55 and the Ad Hoc Convert Committee seeks payment of $3,456,958.40 in professional fees and expenses.[3] The Debtors objected to the payments requested in the Motions. (D.I. #4184). A hearing was held on

---

[1] The Reorganized Debtors in these cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, are: Spansion Inc., a Delaware corporation (8239); Spansion Technology LLC, a Delaware limited liability company (3982); Spansion LLC, a Delaware limited liability company (0482); Cerium Laboratories LLC, a Delaware limited liability company (0482), and Spansion International, Inc., a Delaware corporation (7542). The mailing address for each Reorganized Debtor is 915 DeGuigne Dr., Sunnyvale, CA 94085. As used herein, the term "Debtors" shall mean the Reorganized Debtors prior to the effective date of the *Debtors' Second Amended Joint Plan of Reorganization Dated April 7, 2010 (as Amended)* [D.I. 3250] (the "Plan").

[2] This Memorandum Order constitutes the findings of fact and conclusions of law required by Fed. R. Bankr. P 7052. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 157(b)(2)(A) and (B).

[3] In its Motion, the Ad Hoc Equity Committee suggests that, even after denial of its request for the appointment of an official equity committee, it was led to believe that it would receive a substantial contribution award. Nothing in the record made then or thereafter supports such a notion. No discussion by the Court or otherwise relieved the Ad Hoc Equity Committee from having to prove its entitlement to a substantial contribution award according to applicable standards.

the Motions. For the reasons which follow, the Ad Hoc Convert Committee's motion will be granted in part and the Ad Hoc Equity Committee's motion will be denied.

## FACTS

The facts of this matter are not disputed.[4] On March 1, 2009, the Debtors filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code. The Debtors continued to manage their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. An official committee of unsecured creditors was appointed in March 12, 2009. Subsequent to the Debtors' filing the Joint Plan of Reorganization (the "First Plan") on October 26, 2009, the ad hoc committees formed and began to take an active role in the chapter 11 cases. (D.I.#1477) The Debtor subsequently filed the Second Amended Joint Plan of Reorganization (the "Second Plan") on December 16, 2009. (D.I. #2032).

By Memorandum and Order dated December 19, 2009, the Court denied a request to appoint an official equity committee, *In re Spansion, Inc.*, 421 B.R. 151, 163 (Bankr. D. Del. 2009), in which I found that the record did not support a conclusion that equity security holders were substantially likely to receive a distribution from the Debtors.

Ultimately, after a contentious confirmation hearing, I fixed the Debtors' enterprise value between $872 million and $944 million and overruled most of the confirmation objections. The Debtors were then left with the relatively simple task of altering three aspects of the plan: (1) adjusting the Equity Incentive Plan; (2) limiting the Plan's release clause; and (3) providing an

---

[4] The case history is extensive and so will not be repeated here. A comprehensive case history, upon which I rely, in large part, in determining whether to grant the relief requested in the Motions, is found in my decision denying confirmation of the Second Plan. I will quote only selectively from that opinion. *In re Spansion, Inc.*, 426 B.R. 114 (Bankr. D. Del. 2010) *appeal dismissed In re Spansion Inc.*, CIV. 10-369 RBK, 2011 WL 3420441 (D. Del. Aug. 4, 2011).

escrow for Tessera's administrative claim. These fixes were then embodied in a revised plan (the "Third Plan") filed by the Debtors on April 7, 2010 and confirmed on April 16, 2010. (D.I. #3252, D.I. #3334).

## DISCUSSION

All parties agree that under Sections 503(b)(3) and (4) of the Bankruptcy Code, a court is authorized to award compensation to a creditor or creditors' committee if they make a "substantial contribution" in the case. While the term "substantial contribution" is not defined in the Bankruptcy Code, courts have narrowly tailored instances under which a creditor can be paid from the estate for assisting the overall reorganization. The contribution must result in actual and demonstrable benefit to the debtors' estates and the creditors. *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944 (3d Cir. 1994). In *In re Summit Metals, Inc.*, 379 B.R. 40, 51 (Bankr. D. Del. 2007) *aff'd*, 406 F. App'x 634 (3d Cir. 2011), I described the factors and context in which a creditor could be paid when I ruled that:

> [c]ourts have examined several factors to determine whether [an] applicants' efforts have substantially contributed, including: "whether the services were provided to benefit the estate itself or all of the parties in the bankruptcy case; whether the services conferred a direct benefit upon the estate; and whether services were duplicative of services performed by others." Additionally, courts have considered the motivation of the applicant, holding that applicants who act "*primarily* to serve their own interests and ... [who would have acted] absent an expectation of reimbursement from the estate" cannot be compensated under section 503(b)(3)(D). If the benefit received by the estate was incidental "arising from activities the applicant has pursued in protecting his or her own interests[,]" courts have found an applicant's contribution insubstantial.

*Id.* (citations omitted).

3

At a five-day hearing ("Confirmation Hearing"), a combined record was made for the following matters:

> (i) The request for confirmation of the Debtors' Second Amended Joint Plan of Reorganization (as amended);
>
> (ii) The *Ad Hoc* Committee of Convertible Noteholders' Emergency Motion for Order (a) Vacating Order Approving Debtors' Disclosure Statement Pursuant to Fed. R. Bankr. P. 9024 and Adjourning Confirmation Hearing and (b) Directing Appointment of Trustee or Examiner Pursuant to 11 U.S.C. §§ 1104(a)(1) and (2) and 1104(c)(2) (D.I. 2391) (the "Motion to Vacate"); and
>
> (iii) The Plaintiff's Motion for Summary Judgment in *U.S. Bank Nat'l Association, as Trustee v. Wilmington Trust Company et al.* (Adv. No. 09-52274) (D.I. 14) (the "Summary Judgment Motion").

*Spansion*, 426 B.R. at 118.

The Committees' objections to confirmation of the Second Plan included:

> (i) whether the Plan proponents have under-valued the Debtors, thereby unfairly impairing unsecured creditors and violating § 1129(a)(3) and § 1129(b)(1) and (2);
>
> (i) whether the Equity Incentive Plan provides too much value to the management and employees of the Reorganized Debtors, at the expense of unsecured creditors, especially when the value of the Equity Incentive Plan is determined in light of a proper valuation of the Debtors, thereby violating § 1129(a)(3) and § 1129(b)(1) and (2);
>
> (ii) whether the Debtors wrongfully refused to consider the Alternative Rights Offering proposed by the Convert Committee, which would provide greater recovery to unsecured creditors, thereby violating § 1129(a)(3) and § 1129(b)(1) and (2);
>
> (iii) whether the Debtors provided false and misleading information in the Plan and Disclosure Statement regarding the Debtors' future prospects, thereby violating § 1129(a)(2); [footnote omitted]

>   (iv)   whether the proposed Plan Releases violate applicable bankruptcy law, thereby violating § 1129(a)(1).

*Spansion,* 426 B.R. at 129.

Many of the Committees' arguments "raised at the Confirmation hearing, were considered and rejected during the hearing on approval of the Disclosure Statement." *Id.* at 124. At bottom, the Committees, whose overlapping membership consisted of equity holders and/or holders of subordinated debt, engaged in conduct "unmistakably aimed at slowing down the confirmation process and gaining leverage to enhance or create recoveries" for their constituents. *Id.* at 127 n. 23 quoting *In re Erickson Retirement Communities, LLC,* 425 B.R. 309, 315 (Bankr. N.D.Tex. 2010).

Notwithstanding its litigious litigation strategy, the Ad Hoc Convert Committee did contribute benefit to the estate. The Ad Hoc Convert Committee assisted the Court in determining the enterprise value of the Debtors: it questioned aggressively the methodology and presumptions of the Debtors' experts, while at the same time proposing its own methodology and resulting value. This alternative range of value proposed by the Ad Hoc Convert Committee was in excess of $1 billion and, at the low end of its range, was more than $200 million greater than the Debtor's highest valuation. These factors influenced, in part, the Court's determination that the enterprise value was between $872 million and $944 million. But the Ad Hoc Convert Committee's proposal was not the only one that influenced the valuation decision. The Debtors' expert and the expert offered by the ad hoc group of Senior Noteholders also provided methodologies and value ranges to the Court. The value assigned to the Debtors by the Court was derived from all three reports. For these reasons, the precise benefit to the estate that can be attributed solely to the efforts of the Ad Hoc Convert Committee is hard to determine. What is not

in question is that, absent the Ad Hoc Convert Committee's challenge of the Debtors' valuation, this Court might have assigned a lower value to the enterprise.

The Ad Hoc Equity Committee similarly argues that it added value to the estate by contesting the Debtors' valuation. While included in the record (imported from the record on the Ad Hoc Equity Committee's motion to appoint an official equity committee), the Ad Hoc Equity Committee's asserted valuation played virtually no role in determining the value of the assets or of the enterprise value. *Spansion,* 426 B.R. at 131 n. 27. The Ad Hoc Equity Committee did not make a substantial contribution to the estate.

A court must also consider "whether the services were duplicative of services rendered by attorneys for the committee, the committees themselves, or the debtor and its attorneys." *In re Worldwide Direct, Inc.,* 334 B.R. 112, 122 (Bankr. D. Del. 2005) (citing *In re Buckhead Am. Corp.,* 161 B.R. 11, 15 (Bankr. D. Del.1993)). The Ad Hoc Equity Committee's actions were almost completely duplicative of the Ad Hoc Convert Committee's efforts.[5]

## CONCLUSION

For the reasons given above, it is hereby **ORDERED** that:

(1) the Ad Hoc Convert Committee's Motion (D.I. #3826) is GRANTED, IN PART, to allow a substantial contribution award for its professional fees and expenses solely in connection with enterprise valuation (which it claims to be $228,142.50) in an amount to be set by further Order of this Court;

(2) The Ad Hoc Equity Committee's Motion (D.I. #3830) is DENIED;

(3) The parties are directed to confer and determine whether they can agree that $228,142.50 is the appropriate amount of an award to the Ad Hoc Convert Committee

---

[5] Both Committees were well represented; by this ruling, the Court intends no disparagement of the quality of services provided by the Committees' respective representatives.

for professional fees and expenses incurred solely in connection with enterprise valuation; if agreement is reached, the parties should submit an order under certification consistent with this Memorandum. Otherwise, the parties should so inform the Court, and a further hearing will be set to determine the appropriate award to the Ad Hoc Convert Committee.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: May 14, 2014

cc:   Michael R. Lastowski, Esquire [6]

---

[6] Counsel shall serve a copy of this Memorandum Order upon all interested parties and file a Certificate of Service with the Court.